IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 07-2304 (RBW) |
| | ) |
| EXTREME FLOORING, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT
## AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF

Plaintiffs, by their attorneys, and in accordance with Federal Rule of Civil Procedure 55(b)(2), move this Court to enter a default judgment in favor of the Plaintiffs and against Defendants in the amount of $3,931.00, and an Order enforcing Plaintiffs' right to conduct an audit of Defendants' books and records in order to determine any additional amounts which may be owed for work covered by the Collective Bargaining Agreements to which Defendants are bound and find that Defendants Extreme Flooring and Nationwide Flooring Services, Inc. ("Nationwide Flooring") are alter egos and jointly and severally liable for any amounts determined owed the IPF, IMI and/or Local 7 Benefit Funds by Defendants, on the ground that default has been entered against Defendants for failure to answer the Complaint of Plaintiffs. This motion is supported by the Declarations of David F. Stupar, attached hereto as Exhibit A, and Ira R. Mitzner, attached hereto as Exhibit B. The certificate of the Clerk of this Court declaring Defendants in default is attached hereto as Exhibit C. A copy of the Complaint filed by Plaintiffs is attached hereto as Exhibit D.

## FACTS

Plaintiffs, John Flynn, et al., filed the Complaint in this case on December 21, 2007. On January 9, 2008 and January 2, 2008, respectively, Service of the Summons and Complaint was performed on Defendants. Defendants have failed to file an Answer to the Complaint. On March 12, 2008, default was entered by the Clerk of this Court against Defendants, Extreme Flooring and Nationwide Flooring Services, Inc.

Upon information and belief, based on Counsels' investigation, Extreme Flooring and Nationwide Flooring are and were, at all relevant times, alter egos in that, *inter alia,* they were under common control, and some or all of them operated from the same building, engaged in the same business, shared some of the same employees, members, officers, and owners, were operated and controlled by the same individual(s), and/or intermingled assets. See Exhibit 1 to Declaration of Ira R. Mitzner.

## ARGUMENT

Rule 55 of the Federal Rules of Civil Procedure provides that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the clerk shall enter the party's default and "the party entitled to a judgment by default shall apply to the court therefor." Defendants have failed to answer the Complaint, default has been entered by the Clerk, and Plaintiffs are entitled to judgment. Accordingly, Plaintiffs' motion for a default judgment should be granted. *See, e.g., Trustees of the Local 306, United Ass'n. Health & Welfare Fund v. Am. Testing & Inspection, Inc.*, No-88-2274-OG, 1988 WL 134942, *1 (D. D.C. Nov. 30, 1988) (entering default judgment where "defendant has failed to respond at any step of these proceedings or otherwise enter an appearance"); *Sanderford v. Prudential Ins. Co. of Am.*,

2

902 F.2d 897, 901 (11th Cir. 1990) (affirming entry of default judgment as "[n]either the text of the Federal Rules, nor judicial interpretation placed in the rules by the Federal Courts contemplate that a party may totally ignore pleadings and notices it receives").

## CONCLUSION

For the foregoing reasons, a default judgment in favor of Plaintiffs and against Defendants in the amount of $3,931.00, an Order enforcing Plaintiffs' right to conduct an audit of Defendants' books and records in order to determine any additional amounts which may be owed for work covered by the Collective Bargaining Agreements to which Defendants are bound and that Defendants Extreme Flooring and Nationwide Flooring are alter egos and jointly and severally liable for any additional amounts determined owed the IPF, IMI and/or Local 7 Benefit Funds by Defendants should be entered.

Date: April ___//___, 2008                    Respectfully submitted,

                                              By _____
                                                 Ira R. Mitzner (D.C. Bar No. 184564)
                                                 DICKSTEIN SHAPIRO LLP
                                                 1825 Eye Street, N.W.
                                                 Washington, DC  20006
                                                 (202) 420-2234

                                              Counsel for Plaintiffs

3

DSMDB-2422243

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, et al.,     ) | |
| ) | |
| ) | |
| Plaintiffs,     ) | |
| ) | Civil Action No. 07-2304 (RBW) |
| v.     ) | |
| ) | |
| EXTREME FLOORING, et al.,     ) | |
| ) | |
| Defendants.     ) | |
| ) | |

**DECLARATION OF DAVID F. STUPAR IN SUPPORT
OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, DAVID F. STUPAR, hereby declare as follows:

1.    I am the Executive Director of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and am also an authorized representative to effect collections on behalf of the International Masonry Institute ("IMI") as specified in the General Collection Procedures of the Central Collection Unit ("CCU") of the Bricklayers and Allied Craftworkers ("Collection Procedures" or "Procedures") (attached at Exhibit 1). I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth below.

2.    The IPF is a multiemployer employee benefit plan subject to ERISA. The IPF is governed by an equal number of employer-appointed and union-appointed Trustees, pursuant to the Taft-Hartley Act. Benefits under the plan are funded by contributions from participating employers.

3.    The Fund provides pension and other benefits to employees who work in the construction industry under contracts negotiated between Bricklayer local unions and employers.

2419777

Pursuant to these contracts, the employers are obligated to make contributions to the Fund in order to fund the benefits provided to the beneficiaries. The Trustees of the Fund have a fiduciary duty under ERISA to collect delinquent employer contributions, and the Trustees can be held personally liable for their failure to do so. 29 U.S.C. §§ 1104, 1109, 1132(g)(2). The Fund is administered in the District of Columbia.

4.     The Trustees adopted the CCU Collection Procedures governing the collection of employer contributions and reports.

5.     Under these Procedures, contributions and reports are due on or before the 15th day of the month ("Due Date") following the month in which work is performed. Once contributions are delinquent, the Procedures authorize the assessment of interest at 15 percent per annum and an additional amount, the greater of 15 percent per annum or 20 percent of the delinquent contributions, in the form of an additional computation of interest or liquidated damages.

6.     I am personally familiar with the account of Extreme Flooring. I am also personally familiar with the account of Nationwide Flooring Services, Inc. ("Nationwide Flooring,")(collectively "Defendants").

7.     Extreme Flooring, acting through its authorized agent or officer, signed a collective bargaining agreement ("Extreme Agreement") with Local Union No. 7 of the International Union of Bricklayers and Allied Craftsmen ("BAC") New York and New Jersey ("Local 7 NY/NJ"), which obligated Extreme Flooring to submit monthly reports and payments to the IPF and IMI on behalf of its covered employees pursuant to the foregoing Procedures.

2

8.  Extreme Flooring has performed work in the jurisdiction of Local 7 NY/NJ, which is covered by the Extreme Agreement.

9.  Nationwide Flooring, acting through its authorized agent or officer, signed a collective bargaining agreement ("Nationwide Agreement") with BAC Local No. 32 Michigan affiliate ("Local 32 MI"), which obligated Nationwide Flooring to submit monthly reports and payments to the IPF and IMI on behalf of its covered employees pursuant to the foregoing Procedures.

10.  Nationwide Flooring has performed work in the jurisdiction of Local 32 MI, which is covered by the Nationwide Agreement.

11.  Defendants have failed to properly submit required reports and contributions for hours worked pursuant to their respective Agreements. Extreme Flooring failed to submit required reports and contributions from the period of October 2004 through the present. Nationwide Flooring failed to submit required reports and contributions from the period of March 2006 through the present.

12.  In the absence of injunctive relief, there is no adequate remedy to determine the amounts due and owing Plaintiffs.

13.  The audit fees in an amount to be determined upon completion of the audits are recoverable under ERISA Section 502(g)(2)(D), and the terms of the Collection Procedures.

14.  Under the terms of the Plan and Trust Agreement adopted by the IPF and IMI Board of Trustees, Plaintiffs are entitled to recover any delinquent contributions found due by the audit, as well as interest, calculated at 15 per cent per annum, and the greater of either

2419777

liquidated damages, calculated at 20 percent, or an additional computation of interest, on the aforementioned delinquent contributions.

15. The court fee of $350.00 for filing this action is recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures.

16. The process server's cost of $400.00 for serving the summons and Complaint on Extreme Flooring and $80.00 for serving the summons and Complaint on Nationwide Flooring is recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures.

17. Attorney's fees of $3,101.00, which are recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures, have been incurred by the Plaintiffs in their attempt to conduct an audit on Defendants' books and records. An accounting of the attorney's fees incurred in this action is presented in the Declaration of counsel to the IPF, which accompanies this Motion for Default Judgment.

18. The total amount owed the IPF and IMI by Defendants in Court filing fee, process server's fee and attorney's fees is $3,931.00.

I declare under penalty of perjury that the foregoing is true and correct.

Date: April __11__, 2008

David F. Stupar
Executive Director

4

2419777

**Exhibit 1**

5/13/02

## GENERAL COLLECTION PROCEDURES OF
## THE CENTRAL COLLECTION UNIT OF
## THE BRICKLAYERS AND ALLIED CRAFTWORKERS

These General Collection Procedures govern the collection of delinquencies by the Central Collection Unit of the Bricklayers and Allied Craftworkers ("CCU") on behalf of the following participating entities: Bricklayers and Allied Craftworkers International Union ("BAC"); Bricklayers and Trowel Trades International Pension Fund ("IPF"); Bricklayers and Allied Craftworkers International Health Fund ("IHF"); International Masonry Institute ("IMI"); Bricklayers and Allied Craftworkers Political Action Committee ("BACPAC"); and Local Officers and Employees Pension Fund ("LOEPF") (collectively "CCU Entities"). IHF and BAC SAVE are covered by Special Collection Procedures. Such Special Collection Procedures shall control when in conflict with these General Procedures.

I.      REPORTS AND PAYMENTS TO CCU ENTITIES

    A.      Due Date

        1.      Contributions and reports to the CCU Entities are due on or before the 15th day of the month following the month for which the contributions are being paid ("Due Date"), unless the collective bargaining agreement imposes a different Due Date.

        2.      Reports of participating employers must be filed each month even if no contributions are due for that month. All participating employers, whether submitting contributions directly or through a local administrator or local union, must use the standard CCU report form.

        3.      Employer reports will be date-stamped on the day received in the CCU Office, or in the case of local administrators or local unions, on the day received by the local. The stamped date will be the controlling date with regard to these Collection Procedures.

        4.      If any controlling date under these Collection Procedures falls on a weekend or legal holiday, the applicable date will be the next working day.

5.    The IPF is authorized by other CCU Entities to act on their behalf in litigation.  All references to "CCU Office" in these Collection Procedures may also refer to "IPF Office," as applicable.

B.    Notice Of Delinquency

1.    If the CCU Office has not received payment by the last day of the month of the Due Date, the CCU Office will send a Reminder Notice to the employer.  If payment has not been received 30 days after the Reminder Notice, a Notice of Delinquency will be sent to the employer.

2.    The Notice of Delinquency will advise the employer that required contributions were not received by the Due Date and warn that if the contributions are not received within 15 days (60 days following the Due Date), the employer will be considered delinquent ("Delinquent Date") and will be assessed interest at 15% per annum (retroactive to the Due Date) and may be required to pay Liquidated Damages of 20% of the delinquent amount.  The Notice of Delinquency will require the employer to notify the CCU Office within five (5) days of the date of notice if the employer believes that the Notice of Delinquency was sent in error.

C.    Notice Of Referral To Counsel

1.    If the CCU Office has not received payment within 15 days of the Notice of Delinquency, the CCU Office will send to the employer a Notice of Referral to Counsel.

2.    The Notice of Referral to Counsel will advise the employer that payments were not received by the Delinquent Date and that payments for contributions and interest are due and owing.  Unless all sums owed are received by the CCU Office within 10 days following the Notice of Referral to Counsel, liquidated damages up to 20% of the delinquent contributions or statutory interest may be imposed and the matter automatically will be referred to counsel.  The Notice of Referral to Counsel also will state that counsel will be instructed to seek all sums recoverable, including contributions, interest, liquidated damages or statutory interest, and all attorneys' fees.

2

II.    COUNSEL

    A.    Procedures

        1.    If CCU has not received the contributions and applicable interest within 10 days of the Notice of Referral to Counsel, the matter automatically will be referred to counsel no later than 15 days from the due date.

        2.    Within 10 days of referral, counsel will send a letter to the employer advising that if payment of contributions, interest and other damages is not received within 10 days, suit will be instituted.

        3.    Suit thereafter will be instituted.

    B.    CCU Policy Following Referral To Counsel

        1.    Following the referral of a matter to counsel, the CCU Office will have no authority to deal with an employer except to discuss computations.

        2.    Counsel shall file suit for all moneys recoverable, including damages that may be recoverable under Section 502(g)(2) of ERISA and also may seek remedies under applicable state law against individual corporate officers and/or shareholders.

        3.    The CCU is authorized to seek legal redress prior to the time that the above procedures are exhausted if, in his sole discretion, the Director concludes that the interests of affected participants require immediate action. If an employer fails to make payment when due, suit may be filed to collect all delinquent contributions, interest and other damages regardless of other exhaustion requirements in these Collection Procedures.

III.    AUDITS

Audits will be conducted to insure full compliance with employer obligations under collective bargaining agreements. Every employer can expect to be audited at some time. If a delinquency is discovered as the result of an audit, the employer will be assessed the cost of the audit.

3

A.     Detection Of Delinquent Employers Subject To Audit

      1.     At least once every year, the Executive Directors of the IPF and IHF will send information to participants reflecting contributions received from participating employers. The participants will be encouraged to report missing hours to the CCU.

      2.     The CCU will take steps to insure that delinquencies of participating employers are recovered.

B.     Audits Performed By Third Parties

      1.     The CCU will rely upon audits performed by third parties when CCU determines that they conform to auditing procedures contained in the CCU's Guidelines.

      2.     The CCU periodically will monitor the audits of third parties in order to confirm their reliability.

C.     Audits Performed On Employers Contributing Directly To The CCU

      1.     The CCU will coordinate with third parties who perform audits on employers contributing directly to CCU and will insure that such audits conform to CCU guidelines.

      2.     As to employers contributing directly to the CCU who are not subject to audits by third parties, CCU will perform two types of payroll audits on directly contributing employers in order to insure compliance.

         a.     <u>Random Audits</u> -- Audits may be conducted on any participating employer at any time, on a random basis, at the direction of the Director.

         b.     <u>Problem Audits</u> -- When the Director receives information from a local union, covered member or other source indicating that an employer may be delinquent, the Director may order that an audit be conducted.

D.     Notification Of Audit Delinquency

      1.     The CCU Office will send a Notice of Delinquency to audited employers found to be delinquent stating the amount of additional contributions owing as a result of the audit.

      2.     Any unsatisfied audit deficiency will be treated according to the CCU's Collection Procedures following the intervention of counsel.

E.     Form of Audits

2061050.01

1.   All audits will be carried out under procedures formulated by the Director.

2.   All employer books and records set forth in the audit procedures will be made available to the CCU auditor.

IV.   BONDS

The Director may, in his sole discretion, require an employer to post a cash or surety bond in an amount and under terms necessary to protect the interests of the applicable CCU Entity.

5

**Exhibit B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 07-2304 (RBW) |
| | ) |
| EXTREME FLOORING, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF IRA R. MITZNER IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

Pursuant to 28 U.S.C. § 1746, I, **IRA R. MITZNER**, hereby declare as follows:

1.  I am a partner with the firm of Dickstein Shapiro LLP and the counsel of record for the Plaintiffs John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H.J. Bramlett, Eugene George, Paul Songer, Charles Verlardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent Delazzero, and Benjamin Capp ("IPF"), and Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, ("IMI"), in the above-captioned case.  I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth below.

2.  Pursuant to a written Assignment of Claim the IPF also was authorized to file suit on behalf of certain affiliated Local Bricklayer funds: Local 7 Tile Industry Welfare Fund

and Local 7 Tile Industry Annuity Fund, Tile Layers Local Union 52 Pension Fund, and the BAC Local 7 Profit Sharing Plan ("Local Funds").

3.    On January 9, 2008, service of the Summons and Complaint in this action was made upon Extreme Flooring by delivering said documents at 5813 Middleton Court, Camp Springs, Maryland 20748 upon Christine Rohlfs, authorized to accept service on behalf of Extreme Flooring. A Declaration in Support of Service of Summons and Complaint was filed with the Court on March 12, 2008.

4.    On January 2, 2008 service of the Summons and Complaint in this action was made upon Nationwide Flooring Services, Inc. by delivering said documents at 6203 Kirby Road, Clinton, Maryland 20735 upon Sara Lanette, authorized to accept service on behalf of Nationwide Flooring Services, Inc. A Declaration in Support of Service of Summons and Complaint was filed with the Court on March 12, 2008.

5.    As of this date, no answer to the Complaint has been filed by Defendants.

6.    Upon information and belief, based on Counsels' investigation, Extreme Flooring and Nationwide Flooring Services are and were, at all relevant times, alter egos in that, *inter alia,* they were under common control, and some or all of them operated from the same building, engaged in the same business, shared some of the same employees, members, officers, and owners, were operated and controlled by the same individual(s), and/or intermingled assets. See Exhibit 1 hereto.

7.    As set forth in the accompanying Declaration of David F. Stupar, Defendants owes the following sums to Plaintiffs:

$    350.00    Filing fee (for U.S. District Court)

$    480.00    Process Server's fee

DSMDB-2419905

8.    Additionally, the Employee Retirement Income Security Act of 1974 ("ERISA") provides for the mandatory award of attorney's fees. ERISA Section 502(g)(2)(D). Plaintiffs' counsel has charged the Fund less than the firm's market rate in this matter for well-intentioned, public-spirited reasons. Counsel for Plaintiffs has offered this reduced fee in order to mitigate financial hardships to the Fund, which provides retirement benefits to members of the International Union of Bricklayers and Allied Craftworkers. We believe that our efforts help to ensure the viability of the Fund and, in turn, the welfare of those participants and beneficiaries who depend on their pensions for income after retirement.

9.    Counsel for the Funds, consistent with the decision of the United States Court of Appeals for the District of Columbia Circuit in *Board of Trustees of the Hotel and Restaurant Employees Local 25 and Employers' Health and Welfare Fund v. JPR, Inc.*, 136 F.3d 794, 800-808 (D.C. Cir. 1998), on remand, 1999 WL 1567733 (D.D.C Sept. 10, 1999), and for the reasons set forth in paragraph 5 above, therefore seeks to recover counsel's market rates in this action rather than the reduced fee charged to the Fund.

10.    Ira R. Mitzner is a partner with the firm of Dickstein Shapiro LLP and the counsel of record for the Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H.J. Bramlett, Eugene George, Paul Songer, Charles Verlardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent Delazzero and Benjamin Capp ("IPF"), and Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, (IMI"), in the above-captioned case.

11.    Mr. Mitzner has been in practice for thirty-five years and is the author of the book, *ERISA Litigation:  A Basic Guide,* which contains a chapter on collection of employer

3

DSMDB-2419905

delinquencies. He has spoken and written on the collection of employer delinquencies since ERISA was enacted in 1974. Mr. Mitzner has been inducted as a Fellow of the American College of Employee Benefits Counsel, an organization that is limited to lawyers with over 20 years of experience who demonstrate excellence in the quality of their practice and who seriously contribute to the public's understanding and appreciation of employee benefits. He has been counsel of record in some of the leading ERISA cases involving collection of employer delinquencies under ERISA in the District of Columbia, including *Flynn v. Dick Corp.*, 481 F.3d 824, 831 (D.C. Cir. 2007); *Flynn v. Ohio Building Restoration, Inc.,* 317 F. Supp. 2nd 22 (D D. C. 2004)*, appeal dismissed,* No. 04 CV 7091 (2005 U.S. App. LEXIS 12794 (D.C. Cir. June 27, 2005); *Flynn v. R.C. Tile,* 353 F.3d 953 (D.C. Cir. 2004); *Joyce v. Clyde Sandoz Masonry,* 871 F.2d 1119 (D.C. Cir.), *cert denied,* 493 U.S. 918 (1989); and *Joyce v. Silveri,* 66 F. Supp. 2d 1 (D.D.C. 1999). The hourly rate charged by the Firm for Mr. Mitzner's services reflects his expertise and extensive experience in ERISA litigation.

12.    Claudette Elmes has been employed as a paralegal with the firm of Dickstein Shapiro for more than twenty years and has assisted Mr. Mitzner in that capacity with collection litigation pursuant to ERISA for the past ten years. Ms. Elmes obtained a paralegal certificate in 1988 and a JD in 1995 from the George Washington University. The hourly rate charged by the Firm for the services of Ms. Elmes is commensurate with her educational background and many years of experience in the paralegal field.

13.    Evan Oxhorn has been employed as a paralegal with the firm of Dickstein Shapiro for 10 months. Mr. Oxhorn works under the close supervision of Mr. Mitzner and Ms. Elmes. Mr. Oxhorn received a Bachelor's degree with Honors from Georgetown University in 2005. The hourly rate charged by the Firm for the services of Mr. Oxhorn is commensurate with his educational background and supervision.

DSMDB-2419905

14.    The fees incurred in this action to date, calculated according to the normal billing rates for Dickstein Shapiro LLP in effect currently or at the time services were performed for IPF matters, are as follows:

|  |  | Hours | Per Hour | Total |
|---|---|---|---|---|
| Ira R. Mitzner (Partner) | 2007 2008 | .30 .70 | $535.00 $585.00 | $  160.50 $409.50 |
| Claudette Elmes (Paralegal) | 2008 | 1.10 | $240.00 | $  264.00 |
| Evan Oxhorn (Paralegal) | 2007 2008 | 6.60 10.40 | $115.00 $145.00 | $759.00 $1,508.00 |
| **Total** |  | **19.10** |  | **$3,101.00** |

15.    The default of Defendants for failure to answer was entered by the Clerk of this Court on March 13, 2008.

16.    We therefore pray for entry of default in favor of Plaintiffs in the total amount of $3,931.00.

17.    For an order directing Defendant Extreme Flooring to turn over to Plaintiffs' auditor its books and records for the time period October 2004 through the present including, but not limited to, payroll records and the general ledger(s).

18.    For an order directing Defendant Nationwide Flooring to turn over to Plaintiffs' auditor its books and records for the time period March 2006 through the present including, but not limited to, payroll records and the general ledger(s).

DSMDB-2419905

19.    For an order declaring that Defendants Extreme Flooring and Nationwide Flooring are alter egos and jointly and severally liable for any additional amounts determined owed the IPF, IMI and/or Local Funds by Defendants, which are not yet ascertainable until an audit is conducted.

I declare under penalty of perjury that the foregoing is true and correct.

Date: April __11__, 2008

Ira R. Mitzner

6

DSMDB-2419905

**Exhibit 1**

10-13-06 05:43 From-UBAC Case 1:07-cv-02204-RBW Document 5-3 Filed 03/11/2008 Page 9 of 32 T-246 P.004/022 F-756 PAGE 05

10/12/2006 15:32 8568486060 VANGUARD

# Paystub Detail

Extreme Flooring LLC
6200 Kirby Road
Clinton, MD 20745

Pay Period: 04/11/2005 - 04/19/2005

Check Date: 4/16/2005
Check No.:

## Personal Information

Carl J Ingram
13 2nd Avenue
Mt. Ephraim, NJ 60109

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

| Description | Qty | Rate | Current | YTD |
|---|---|---|---|---|
| Hourly Rate | 50.00 | 31.91 | 1,695.50 | 2,780.62 |
| Total | | | 1,695.50 | 2,780.62 |

**Earnings and Hours**

| Description | | | Current | YTD |
|---|---|---|---|---|
| Federal Withholding | | | -424.00 | -439.00 |
| Social Security Employee | | | -93.92 | -172.30 |
| Medicare Employee | | | -21.44 | -36.79 |
| Total | | | -239.36 | -313.09 |

**Taxes**

Deductions from gross

| | | |
|---|---|---|
| | 30.04 | -2.97 | -148.50 | -243.54 |
| Total | | -148.50 | -243.54 |

**Taxable Company Contributions**

Adjustments to Net Pay

### Summary

| | Current | YTD |
|---|---|---|
| Earnings | 1,695.50 | 2,780.62 |
| Deductions from gross | -148.50 | -243.54 |
| Taxes | -239.36 | -313.09 |
| Adjustments | 0.00 | 0.00 |
| NET PAY | 1,307.64 | 2,183.99 |

| | Used | Available |
|---|---|---|
| Sick | 0.00 | 0.00 |
| Vacation | 0.00 | 0.00 |

| Status | Allowances | Extra |
|---|---|---|
| Federal | Married | 8 |

10/12/2006 15:32 8568486060 VANGUARD COMPANY PRINTOUT

| 467 04113 | NATIONWIDE FLOORING INC | | | 8/25/06 PAGE 1 |
|---|---|---|---|---|

34 CARL J INGRAM 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 2006 EARNINGS RECORD

| PAY ENDED | W8 ST | UI ST | DEPT | PAY TYPE | RATE | REG | O/T 1 | O/T 2 | O/T 3 | PAY AMOUNT | TAX TYPE | AMOUNT | NET PAY | CHECK # LOC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/29 | NJ | NJ | 1 | REG HOURS | 40.17 | 40.00 | | | | 1606.80 | FED W/H | 117.94 | 1152.38 | 10194 |
| 5/21 | NJ | NJ | 1 | UNION DUES | 4.19 | 40.00 | | | | -167.60 | SOC SEC | 99.62 | | |
| | | | | | | | | | | | MEDICARE | 23.30 | | |
| | | | | | | | | | | | NJ W/H | 31.11 | | |
| | | | | | | | | | | | NJ SDI | 8.03 | | |
| | | | | | | | | | | | NJ SUI | 6.82 | | |
| 6/01 | NJ | NJ | 1 | REG HOURS | 40.17 | 39.00 | | | | 1566.63 | FED W/H | 111.92 | 1127.43 | 10211 |
| 5/28 | NJ | NJ | 1 | UNION DUES | 4.19 | 39.00 | | | | -163.41 | SOC SEC | 97.13 | | |
| | | | | | | | | | | | MEDICARE | 22.72 | | |
| | | | | | | | | | | | NJ W/H | 29.54 | | |
| | | | | | | | | | | | NJ SDI | 7.83 | | |
| | | | | | | | | | | | NJ SUI | 6.65 | | |
| 6/06 | NJ | NJ | 1 | REG HOURS | 40.17 | 32.00 | | | | 1285.44 | FED W/H | 69.74 | 1084.09 | 10223 |
| 6/04 | | | | | | | | | | | SOC SEC | 79.70 | | |
| | | | | | | | | | | | MEDICARE | 18.64 | | |
| | | | | | | | | | | | NJ W/H | 21.38 | | |
| | | | | | | | | | | | NJ SDI | 6.43 | | |
| | | | | | | | | | | | NJ SUI | 5.46 | | |
| 6/15 | NJ | NJ | 1 | REG HOURS | 40.17 | 40.00 | | | | 1606.80 | FED W/H | 123.94 | 1348.99 | 10238 |
| 6/11 | NJ | NJ | 1 | BONUS | | | | | | 40.00 | SOC SEC | 102.10 | | |
| | | | | | | | | | | | MEDICARE | 23.88 | | |
| | | | | | | | | | | | NJ W/H | 32.67 | | |
| | | | | | | | | | | | NJ SDI | 8.23 | | |
| | | | | | | | | | | | NJ SUI | 6.99 | | |
| 6/20 | NJ | NJ | 1 | REG HOURS | 40.17 | 38.00 | | | | 1526.46 | FED W/H | 105.89 | 1102.50 | 10247 |
| 6/18 | NJ | NJ | 1 | UNION DUES | 4.19 | 38.00 | | | | -159.22 | SOC SEC | 94.64 | | |
| | | | | | | | | | | | MEDICARE | 22.13 | | |
| | | | | | | | | | | | NJ W/H | 27.97 | | |
| | | | | | | | | | | | NJ SDI | 7.63 | | |
| | | | | | | | | | | | NJ SUI | 6.48 | | |
| 6/27 | NJ | NJ | 1 | REG HOURS | 40.17 | 39.00 | | | | 1566.63 | FED W/H | 111.92 | 1127.43 | 10266 |
| 6/25 | NJ | NJ | 1 | UNION DUES | 4.19 | 39.00 | | | | -163.41 | SOC SEC | 97.13 | | |
| | | | | | | | | | | | MEDICARE | 22.72 | | |
| | | | | | | | | | | | NJ W/H | 29.54 | | |
| | | | | | | | | | | | NJ SDI | 7.83 | | |
| | | | | | | | | | | | NJ SUI | 6.65 | | |
| 7/07 | NJ | NJ | 1 | REG HOURS | 40.17 | 39.00 | | | | 1566.63 | FED W/H | 111.92 | 1127.43 | 10274 |
| 7/02 | NJ | NJ | 1 | UNION DUES | 4.19 | 39.00 | | | | -163.41 | SOC SEC | 97.13 | | |
| | | | | | | | | | | | MEDICARE | 22.72 | | |
| | | | | | | | | | | | NJ W/H | 29.54 | | |
| | | | | | | | | | | | NJ SDI | 7.83 | | |
| | | | | | | | | | | | NJ SUI | 6.65 | | |
| 7/17 | NJ | NJ | 1 | REG HOURS | 40.17 | 24.00 | | | | 964.08 | FED W/H | 23.91 | 843.61 | 10287 |
| 7/09 | | | | | | | | | | | SOC SEC | 59.77 | | |
| | | | | | | | | | | | MEDICARE | 13.98 | | |
| | | | | | | | | | | | NJ W/H | 13.90 | | |
| | | | | | | | | | | | NJ SDI | 4.82 | | |
| | | | | | | | | | | | NJ SUI | 4.09 | | |
| 7/19 | NJ | NJ | 1 | REG HOURS | 40.17 | 40.00 | | | | 1606.80 | FED W/H | 117.94 | 1152.38 | 10295 |

Comprehensive Report

**Important:** The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state´s Department of State.

REPORT FOLLOWS

**Comprehensive Report**
**Date:** 08/01/07
**Reference Code:** b6450.0000.jd.oxhorn

**Report processed by:**
Dickstein Shapiro LLP
Attention Library
Washington, DC 200065403
(202) 420–2200 Main Phone
(202) 420–2201 Fax

**Report Legend:**
S – Shared Address
D – Deceased
✔ – Probable Current Address

**Subject Information**

Name: **RANDAL N LINETT**
Date of Birth: **06/08/1959**
Age: **48**
SSN: **213–80–xxxx** issued in **Maryland** between **01/01/1974** and **12/31/1975**

Others Associated with SSN:
(DOES NOT usually indicate any type of fraud or deception)
**LEAH LINNETT**
  Age:
**RONALD LINNETT**
  Age:

**AKAs (Names Associated with Subject)**

**RANDAL N LINETT**
  DOB: **06/08/1959** Age: **48** SSN: **213–80–xxxx**
**RANDAL N LINETT**
  DOB: **1958** Age: **49** SSN: **213–80–xxxx**
**RANDAL N LNETT**
  SSN: **213–80–xxxx**
**RANDY N LINETT**
  SSN: **213–80–xxxx**
**RANDY R LINETT**
  DOB: **06/1959** Age: **48** SSN: **213–80–xxxx**
**RANDALL LINETT**
  SSN: **213–80–xxxx**

**Indicators**

Bankruptcy: **No**
Property: **No**
Corporate Affiliations: **Yes**

**Address Summary**

**6203 KIRBY RD, CLINTON MD 20735–1335, PRINCE GEORGE´S COUNTY** (Jan 2001 – Jul 2007)
 Neighborhood Profile (2000 Census)
 Average Age: **35**   Median Household Income: **$73,854**   Median Home Value: **$155,200**   Average Years of Education: **13**

**5717 CHRIS MAR AVE # 5717, CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY** (Apr 1984 – Feb 2003)
 Phone at address: **(301) 856–6408  WASHINGTON A**
 Neighborhood Profile (2000 Census)
 Average Age: **38**   Median Household Income: **$69,083**   Median Home Value: **$157,800**   Average Years of Education: **13**

**PO BOX 1180, CLINTON MD 20735–5180, PRINCE GEORGE´S COUNTY** (Jun 2001)
 Neighborhood Profile (2000 Census)
 Average Age: **41**   Median Household Income: **$77,288**   Median Home Value: **$157,800**   Average Years of Education: **13**

**7474 GREENBELT RD, GREENBELT MD 20770, PRINCE GEORGE´S COUNTY** (Jan 2000)
 Neighborhood Profile (2000 Census)
 Average Age: **36**   Median Household Income: **$40,904**   Median Home Value: **$66,500**   Average Years of Education: **16**

**7587 COMMERCE LN, CLINTON MD 20735–1322, PRINCE GEORGE´S COUNTY** (Jan 1999)
 Neighborhood Profile (2000 Census)
 Average Age: **35**   Median Household Income: **$73,854**   Median Home Value: **$155,200**   Average Years of Education: **13**

**RT 5717 CHRIS MAR, CLINTON MD 20735, PRINCE GEORGE´S COUNTY** (Dec 1997 – Jan 1999)
 Neighborhood Profile (2000 Census)
 Average Age: **41**   Median Household Income: **$77,288**   Median Home Value: **$157,800**   Average Years of Education: **13**

**12314 SWEETBRIAR PL, WALDORF MD 20602–1430, CHARLES COUNTY** (Oct 1997)
 Phone at address: **(240) 607–9047  PORCHER EDWARD**
 Neighborhood Profile (2000 Census)
 Average Age: **29**   Median Household Income: **$70,035**   Median Home Value: **$142,400**   Average Years of Education: **14**

1

Comprehensive Report

**57117 CHRIS MAR AVE, CLINTON MD 20735, PRINCE GEORGE'S COUNTY** (Jan 1997)
Neighborhood Profile (2000 Census)
Average Age: **41**   Median Household Income: **$77,288**   Median Home Value: **$157,800**   Average Years of Education: **13**

**5717 CHRIS MARZ, FORT GEORGE G MEADE MD 20755, ANNE ARUNDEL COUNTY** (Jun 1993)
Neighborhood Profile (2000 Census)
Average Age: **20**   Median Household Income: **$35,284**   Median Home Value: **$95,000**   Average Years of Education: **15**

**2604 E MAXIMUM PL, KAILUA HI 96734, HONOLULU COUNTY** (Jun 1988)
Neighborhood Profile (2000 Census)
Average Age: **39**   Median Household Income: **$52,379**   Median Home Value: **$270,900**   Average Years of Education: **13**

**2604 E MAXIUM PL, KAILUA HI 96734, HONOLULU COUNTY** (Jan 1988)
Neighborhood Profile (2000 Census)
Average Age: **39**   Median Household Income: **$52,379**   Median Home Value: **$270,900**   Average Years of Education: **13**

**2604 MAXAM PL, KAILUA HI 96734–5427, HONOLULU COUNTY** (Apr 1984)
Phone at address: **(808) 206–9957  GABBERT STEVEN & TABITHA**
Neighborhood Profile (2000 Census)
Average Age: **21**   Median Household Income: **$36,130**   Median Home Value: **$19,400**   Average Years of Education: **14**

**7303 BERKSHIRE DR, CLINTON MD 20735–1304, PRINCE GEORGE'S COUNTY** (Jan 1983)
Neighborhood Profile (2000 Census)
Average Age: **35**   Median Household Income: **$73,854**   Median Home Value: **$155,200**   Average Years of Education: **13**

**PO BOX 8181, CAMP LEJEUNE NC 28547–8181, ONSLOW COUNTY** (Jan 1983)
Neighborhood Profile (2000 Census)
Average Age: **21**   Median Household Income: **$42,426**   Median Home Value: **$95,000**   Average Years of Education: **14**

**1180 POB 1180, CLINTON MD 20735, PRINCE GEORGE'S COUNTY**
Neighborhood Profile (2000 Census)
Average Age: **41**   Median Household Income: **$77,288**   Median Home Value: **$157,800**   Average Years of Education: **13**

**Others Associated With Subjects SSN:**
(DOES NOT usually indicate any type of fraud or deception)
   LEAH LINNETT  Age:
   213–80–xxxx issued in Maryland  between  01/01/1974  and  12/31/1975
   RONALD LINNETT  Age:
   213–80–xxxx issued in Maryland  between  01/01/1974  and  12/31/1975

**Comprehensive Report Summary:**
   Bankruptcies:
      None Found
   Liens and Judgments:
      None Found
   UCC Filings:
      None Found
   People at Work:
      2 Found
   Driver's License:
      1 Found
   Address(es) Found:
      0 Verified and 15 Non–Verified Found
   Possible Properties Owned:
      None Found
   Motor Vehicles Registered:
      5 Found
   Watercraft:
      None Found
   FAA Aircrafts:
      None Found
   Possible Criminal Records:
      4 Found
   Sexual Offenses:
      None Found

Comprehensive Report

Florida Accidents:
   None Found
Professional Licenses:
   None Found
Voter Registration:
   None Found
Possible Associates:
   4 Found

**Bankruptcies:**
   [None Found]

**Liens and Judgments:**
   [None Found]

**UCC Filings:**
   [None Found]

**People at Work:**
   Name: RANDY LINETT
   Title: REGISTERED AGENT
   SSN: 213–80–xxxx
   Company: NATIONWIDE FLOORING SERVICES, INC.
   Address: 6203 KIRBY RD, CLINTON MD 20735–1335
   Phone:
   FEIN:
   Dates: Jul 05, 2005
   Confidence: High

   Name: RANDAL N LINETT
   Title: OWNER
   SSN: 213–80–xxxx
   Company: COMPLETE CARPET SERVICES
   Address: 3382 COMMERCE AVE, BALTIMORE MD 21227
   Phone:
   FEIN:
   Dates: Jul 01, 2000 – Jun 01, 2001
   Confidence: Medium

**Driver´s License Information:**
Name: RANDAL NATHAN LINETT
DL Number: xxxxxxxxxxxxx
State: Maryland
License Address: 5717 CHRIS MAR AVE, CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY
DOB: 06/08/1959
SSN: 213–80–xxxx
Sex: M
Expiration Date: 06/08/2002
Height: 6´00
Weight: 195

**Address Summary:**
   6203 KIRBY RD, CLINTON MD 20735–1335, PRINCE GEORGE´S COUNTY (Jan 2001 – Jul 2007)
   5717 CHRIS MAR AVE # 5717, CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY (Apr 1984 – Feb 2003)
   PO BOX 1180, CLINTON MD 20735–5180, PRINCE GEORGE´S COUNTY (Jun 2001)
   7474 GREENBELT RD, GREENBELT MD 20770, PRINCE GEORGE´S COUNTY (Jan 2000)
   7587 COMMERCE LN, CLINTON MD 20735–1322, PRINCE GEORGE´S COUNTY (Jan 1999)
   RT 5717 CHRIS MAR, CLINTON MD 20735, PRINCE GEORGE´S COUNTY (Dec 1997 – Jan 1999)
   12314 SWEETBRIAR PL, WALDORF MD 20602–1430, CHARLES COUNTY (Oct 1997)
   57117 CHRIS MAR AVE, CLINTON MD 20735, PRINCE GEORGE´S COUNTY (Jan 1997)
   5717 CHRIS MARZ, FORT GEORGE G MEADE MD 20755, ANNE ARUNDEL COUNTY (Jun 1993)
   2604 E MAXIMUM PL, KAILUA HI 96734, HONOLULU COUNTY (Jun 1988)
   2604 E MAXIUM PL, KAILUA HI 96734, HONOLULU COUNTY (Jan 1988)
   2604 MAXAM PL, KAILUA HI 96734–5427, HONOLULU COUNTY (Apr 1984)
   7303 BERKSHIRE DR, CLINTON MD 20735–1304, PRINCE GEORGE´S COUNTY (Jan 1983)
   PO BOX 8181, CAMP LEJEUNE NC 28547–8181, ONSLOW COUNTY (Jan 1983)
   1180 POB 1180, CLINTON MD 20735, PRINCE GEORGE´S COUNTY

**Previous And Non–Verified Address(es):**
   RANDAL N LINETT  – 6203 KIRBY RD, CLINTON MD 20735–1335, PRINCE GEORGE´S COUNTY (Jan 2001 – Jul 2007)

3

Comprehensive Report

**Property Ownership Information for this Address**
 **Property:**
  Parcel Number – 0107–C3–000–000A–00003
  Lot Number – 3
  Owner Name 1 – WILKES STEPHEN F
  Address – 6203 KIRBY RD, CLINTON MD 20735–1335, PRINCE GEORGE´S COUNTY
  Owner´s Address – 316 E CUSTIS AVE, ALEXANDRIA VA 22301–1202, ALEXANDRIA CITY COUNTY
  Land Usage – SFR
  Subdivision Name – MONTAGUE & WILKES
  Total Value – $151,110
  Land Value – $72,420
  Improvement Value – $78,690
  Land Size – 28,246
  Year Built – 1938
  Exterior Walls – FRAME
  Roof Type – COMPOSITION SHINGLE
  Heating – HOT AIR
  Sale Price – $0
  Legal Description – SUB
  Data Source – A
 **Neighborhood Profile (2000 Census)**
  Average Age: 35
  Median Household Income: $73,854
  Median Owner Occupied Home Value: $155,200
  Average Years of Education: 13

RANDAL N LINETT – 5717 CHRIS MAR AVE # 5717, CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY (Apr 1984 – Feb 2003)
 WASHINGTON A   (301) 856–6408
 **Neighborhood Profile (2000 Census)**
  Average Age: 38
  Median Household Income: $69,083
  Median Owner Occupied Home Value: $157,800
  Average Years of Education: 13

RANDAL N LINETT – PO BOX 1180, CLINTON MD 20735–5180, PRINCE GEORGE´S COUNTY (Jun 2001)
 **Neighborhood Profile (2000 Census)**
  Average Age: 41
  Median Household Income: $77,288
  Median Owner Occupied Home Value: $157,800
  Average Years of Education: 13

RANDAL N LINETT – 7474 GREENBELT RD, GREENBELT MD 20770, PRINCE GEORGE´S COUNTY (Jan 2000)
 **Neighborhood Profile (2000 Census)**
  Average Age: 36
  Median Household Income: $40,904
  Median Owner Occupied Home Value: $66,500
  Average Years of Education: 16

RANDAL N LINETT – 7587 COMMERCE LN, CLINTON MD 20735–1322, PRINCE GEORGE´S COUNTY (Jan 1999)
 NATIONWIDE FLOORING   (301) 297–5100
 **Neighborhood Profile (2000 Census)**
  Average Age: 35
  Median Household Income: $73,854
  Median Owner Occupied Home Value: $155,200
  Average Years of Education: 13

RANDAL N LINETT – RT 5717 CHRIS MAR, CLINTON MD 20735, PRINCE GEORGE´S COUNTY (Dec 1997 – Jan 1999)
 **Neighborhood Profile (2000 Census)**
  Average Age: 41
  Median Household Income: $77,288
  Median Owner Occupied Home Value: $157,800
  Average Years of Education: 13

RANDAL N LINETT – 12314 SWEETBRIAR PL, WALDORF MD 20602–1430, CHARLES COUNTY (Oct 1997)
 PORCHER EDWARD   (240) 607–9047
 **Property Ownership Information for this Address**
  **Property:**
   Parcel Number – 0015 0012 0148 0000 0248
   Book – 004571
   Page – 000469

4

Comprehensive Report

    Lot Number – 248
    Owner Name 1 – DONG JEFFREY J
    Owner Name 2 – DONG KATHRYN A
    Address – 12314 SWEETBRIAR PL, WALDORF MD 20602–1430, CHARLES COUNTY
    Owner's Address – 12314 SWEETBRIAR PL, WALDORF MD 20602–1430, CHARLES COUNTY
    Land Usage – TOWNHOUSE/ROWHOUSE
    Subdivision Name – LAKEWOOD ESTATES
    Total Value – $298,600
    Land Value – $100,000
    Improvement Value – $198,600
    Land Size – 1,916
    Year Built – 1996
    Exterior Walls – ALUMINUM/VINYL
    Roof Type – COMPOSITION SHINGLE
    Air Conditioning – AC.SPLIT SYSTEM
    Heating – HEAT PUMP
    Garage – BUILT IN
    Sale Date – 01/23/2004
    Sale Price – $209,000
    Sellers Name 1 – SMITH GERALD & JACLYN
    Legal Description – LOT 248 PL 4 PAR D LAKEWOOD ESTATES SUB
    Lender Name – COUNTRYWIDE HM LNS INC
    Data Source – A
**Neighborhood Profile (2000 Census)**
    Average Age: 29
    Median Household Income: $70,035
    Median Owner Occupied Home Value: $142,400
    Average Years of Education: 14

RANDAL N LINETT  – 57117 CHRIS MAR AVE, CLINTON MD 20735, PRINCE GEORGE'S COUNTY (Jan 1997)
    **Neighborhood Profile (2000 Census)**
    Average Age: 41
    Median Household Income: $77,288
    Median Owner Occupied Home Value: $157,800
    Average Years of Education: 13

RANDAL N LINETT  – 5717 CHRIS MARZ, FORT GEORGE G MEADE MD 20755, ANNE ARUNDEL COUNTY (Jun 1993)
    **Neighborhood Profile (2000 Census)**
    Average Age: 20
    Median Household Income: $35,284
    Median Owner Occupied Home Value: $95,000
    Average Years of Education: 15

RANDAL N LINETT  – 2604 E MAXIMUM PL, KAILUA HI 96734, HONOLULU COUNTY (Jun 1988)
    **Neighborhood Profile (2000 Census)**
    Average Age: 39
    Median Household Income: $52,379
    Median Owner Occupied Home Value: $270,900
    Average Years of Education: 13

RANDAL N LINETT  – 2604 E MAXIUM PL, KAILUA HI 96734, HONOLULU COUNTY (Jan 1988)
    **Neighborhood Profile (2000 Census)**
    Average Age: 39
    Median Household Income: $52,379
    Median Owner Occupied Home Value: $270,900
    Average Years of Education: 13

RANDAL N LINETT  – 2604 MAXAM PL, KAILUA HI 96734–5427, HONOLULU COUNTY (Apr 1984)
    GABBERT STEVEN & TABITHA   (808) 206–9957
    **Neighborhood Profile (2000 Census)**
    Average Age: 21
    Median Household Income: $36,130
    Median Owner Occupied Home Value: $19,400
    Average Years of Education: 14

RANDAL N LINETT  – 7303 BERKSHIRE DR, CLINTON MD 20735–1304, PRINCE GEORGE'S COUNTY (Jan 1983)
    **Property Ownership Information for this Address**
    **Property:**
        Parcel Number – 0107–B3–000–000B–00014
        Book – 010697

Comprehensive Report

Page – 000574
Lot Number – 14
Owner Name 1 – FLOWERS RUDOLPH S
Owner Name 2 – FLOWERS GLORIA J
Address – 7303 BERKSHIRE DR, CLINTON MD 20735–1304, PRINCE GEORGE´S COUNTY
Owner´s Address – 7303 BERKSHIRE DR, CLINTON MD 20735–1304, PRINCE GEORGE´S COUNTY
Land Usage – SFR
Subdivision Name – CLOVER HOMES 01
Total Value – $205,020
Land Value – $70,590
Improvement Value – $134,430
Land Size – 9,919
Year Built – 1969
Homestead Exemption – YES
Exterior Walls – FRAME
Roof Type – COMPOSITION SHINGLE
Air Conditioning – AC.SPLIT SYSTEM
Heating – HOT AIR
Fireplace – 001
Garage – BASEMENT
Sale Date – 03/29/1996
Sale Price – $135,000
Sellers Name 1 – LINETT CHARLES & LEILA A
Legal Description – CLOVER HOMES
Lender Name – AAMES HM LNS
Interest Rate Type – ADJ
Data Source – A
**Neighborhood Profile (2000 Census)**
Average Age: 35
Median Household Income: $73,854
Median Owner Occupied Home Value: $155,200
Average Years of Education: 13

RANDAL N LINETT  – PO BOX 8181, CAMP LEJEUNE NC 28547–8181, ONSLOW COUNTY (Jan 1983)
**Neighborhood Profile (2000 Census)**
Average Age: 21
Median Household Income: $42,426
Median Owner Occupied Home Value: $95,000
Average Years of Education: 14

RANDAL N LINETT  – 1180 POB 1180, CLINTON MD 20735, PRINCE GEORGE´S COUNTY
**Neighborhood Profile (2000 Census)**
Average Age: 41
Median Household Income: $77,288
Median Owner Occupied Home Value: $157,800
Average Years of Education: 13

**Possible Properties Owned by Subject:**
[None Found]

**Motor Vehicles Registered To Subject:**
Vehicle:
Description: 1994 Ford Econoline Van Super E350 – Extended Cargo Van
License Plate: 08J787
License Plate Type: Commercial
VIN: 1FTJS34H8RHA39448
State of Origin: Maryland
Engine Size: 351
Number of Cylinders: 8
Body: Extended Cargo Van
Record Type: Historical
Expiration Date: 04/30/2002
*Registrant(s)*
Name: LINETT, RANDAL NATHAN
Address: 5717 CHRIS MAR AVE CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY

*Lien Holder*
Holder:
Lien Date:
Address:

Comprehensive Report

**Vehicle:**
Description: 1998 Toyota Avalon XL/XLS – Sedan 4 Door
License Plate: GRP757
License Plate Type: Private
VIN: 4T1BF18B8WU225721
State of Origin: Maryland
Title Number: 27078720
Title Date: 01/06/1998
Engine Size: 183
Number of Cylinders: 6
Body: Sedan 4 Door
Record Type: Historical
Expiration Date: 01/31/2002
*Owner(s)*
    Name: LINETT, RANDAL NATHAN DOB: 06/08/1959 Age: 48
        RANDAL NATHAN LINETT  SSN: 213–80–xxxx
    Address: 5717 CHRIS MAR AVE CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY

*Registrant(s)*
    Name: LINETT, RANDAL NATHAN DOB: 06/08/1959 Age: 48
        RANDAL NATHAN LINETT  SSN: 213–80–xxxx
    Address: 5717 CHRIS MAR AVE CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY

*Lien Holder*
    Holder:
    Lien Date:
    Address:

**Vehicle:**
Description: 1988 Ford Crown Victoria LX – Sedan 4 Door
License Plate: EVC161
License Plate Type: Private
VIN: 2FABP74F0JX155118
State of Origin: Maryland
Title Number: 26838947
Title Date: 10/23/1997
Engine Size: 302
Number of Cylinders: 8
Body: Sedan 4 Door
Record Type: Historical
Expiration Date: 10/31/2001
*Owner(s)*
    Name: LINETT, RANDAL NATHAN DOB: 06/08/1959 Age: 48
        RANDAL NATHAN LINETT  SSN: 213–80–xxxx
    Address: 5717 CHRIS MAR AVE CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY

*Registrant(s)*
    Name: LINETT, RANDAL NATHAN DOB: 06/08/1959 Age: 48
        RANDAL NATHAN LINETT  SSN: 213–80–xxxx
    Address: 5717 CHRIS MAR AVE CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY

*Lien Holder*
    Holder:
    Lien Date:
    Address:

**Vehicle:**
Description: 1999 Ford F350 Super Duty – Pickup
License Plate: 88G720
License Plate Type: Commercial
VIN: 1FTSF30F6XEB99288
State of Origin: Maryland
Title Number: 28598800
Title Date: 06/15/1999
Engine Size: 444
Number of Cylinders: 8
Body: Pickup
Record Type: Historical
Expiration Date: 06/30/2001

7

Comprehensive Report

*Owner(s)*
    Name: LINETT, RANDAL NATHAN DOB: 06/08/1959 Age: 48
        RANDAL NATHAN LINETT   SSN: 213–80–xxxx
    Address: 5717 CHRIS MAR AVE CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY

*Registrant(s)*
    Name: LINETT, RANDAL NATHAN DOB: 06/08/1959 Age: 48
        RANDAL NATHAN LINETT   SSN: 213–80–xxxx
    Address: 5717 CHRIS MAR AVE CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY

*Lien Holder*
    Holder:
    Lien Date:
    Address:

**Vehicle:**
    Description: 1988 Toyota Corolla FX – Liftback 3 Door
    License Plate: WFY243
    License Plate Type: Private
    VIN: 1NXAE82G1JZ549291
    State of Origin: Maryland
    Engine Size: 97
    Number of Cylinders: 4
    Body: Liftback 3 Door
    Record Type: Historical
    Expiration Date: 09/30/2000
    *Registrant(s)*
        Name: LINETT, RANDAL NATHAN DOB: 06/08/1959 Age: 48
            RANDAL NATHAN LINETT   SSN: 213–80–xxxx
        Address: 5717 CHRIS MAR AVE CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY

        Name: LINETT, REBECCA MARY
            REBECCA MARY LINETT   SSN: 239–33–xxxx
        Address: 5717 CHRIS MAR AVE CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY

    *Lien Holder*
        Holder:
        Lien Date:
        Address:

**Watercraft:**
    [None Found]

**FAA Aircrafts:**
    [None Found]

**Possible Criminal Records:**
    **Virginia Court:**
        Name: RANDAL NATHAN LINETT
        SSN: 213–80–xxxx
        State of Origin: Virginia
        DOB: 06/08/1959
        Race: WHITE CAUCASIAN (NON–HISPANIC)
        Sex: Male

        **Offenses:**
            **Offense #1**
            Case Number: 013GT0006763600
            Offense Date: 11/06/2000
            Arrest Level/Degree: INFRACTION
            Court Case Number: 013GT0006763600
            Court Offense: SPEEDING 60/45
            Court Disposition: PREPAID
            Court Disposition Date: 01/08/2001
            Court Level/Degree: INFRACTION

        **Court Activity:**
        [NONE FOUND]

Comprehensive Report

**Virginia Court:**
　　Name: RANDAL NATHAN LINETT
　　SSN: 213–80–xxxx
　　State of Origin: Virginia
　　DOB: 06/08/1959
　　Race: WHITE CAUCASIAN (NON–HISPANIC)
　　Sex: Male

　　**Offenses:**
　　　　**Offense #1**
　　　　Case Number: 113GT0700071600
　　　　Offense Date: 02/14/2007
　　　　Arrest Level/Degree: INFRACTION
　　　　Court Case Number: 113GT0700071600
　　　　Court Offense: 79/60 SP
　　　　Court Disposition: GUILTY IN ABSENTIA
　　　　Court Disposition Date: 03/20/2007
　　　　Court Level/Degree: INFRACTION

　　**Court Activity:**
　　　　[NONE FOUND]

**Virginia Court:**
　　Name: RANDAL NATHAN LINETT
　　SSN: 213–80–xxxx
　　State of Origin: Virginia
　　DOB: 06/08/1959
　　Race: WHITE CAUCASIAN (NON–HISPANIC)
　　Sex: Male

　　**Offenses:**
　　　　**Offense #1**
　　　　Case Number: 113GT0700071700
　　　　Offense Date: 02/14/2007
　　　　Arrest Level/Degree: INFRACTION
　　　　Court Case Number: 113GT0700071700
　　　　Court Offense: SAFETY BELT VIOLATION
　　　　Court Disposition: GUILTY IN ABSENTIA
　　　　Court Disposition Date: 03/20/2007
　　　　Court Level/Degree: INFRACTION

　　**Court Activity:**
　　　　[NONE FOUND]

**Maryland Court:**
　　Name: RANDAL NATHAN LINETT
　　SSN: 213–80–xxxx
　　State of Origin: Maryland
　　DOB: 06/08/1959
　　Race: CAUCASIAN
　　Sex: Male
　　Weight: 215

　　**Offenses:**
　　　　**Offense #1**
　　　　Case Number: 08K02000725
　　　　Case Type: JURY TRIAL–MOTOR VEHICLE
　　　　Component: 001
　　　　Court Case Number: 08K02000725
　　　　Court Offense: VEHICLE WHILE UNDER THE INFLUENCE
　　　　Court Disposition: JUDGMENT STAYED (PROBATIO
　　　　Court Disposition Date: 01/08/2003

　　　　**Offense #2**

9

Comprehensive Report

Case Number: 08K02000725
Case Type: JURY TRIAL–MOTOR VEHICLE
Component: 002
Court Case Number: 08K02000725
Court Offense: VEHICLE WHILE UNDER THE INFLUENCE P
Court Disposition: NOLLE PROSEQUI
Court Disposition Date: 01/08/2003

**Offense #3**
Case Number: 08K02000725
Case Type: JURY TRIAL–MOTOR VEHICLE
Component: 003
Court Case Number: 08K02000725
Court Offense: VEHICLE WHILE IMPAIRED BY ALCOHOL
Court Disposition: NOLLE PROSEQUI
Court Disposition Date: 01/08/2003

**Offense #4**
Case Number: 08K02000725
Case Type: JURY TRIAL–MOTOR VEHICLE
Component: 004
Court Case Number: 08K02000725
Court Offense: UNSAFE LANE CHANGING
Court Disposition: NOLLE PROSEQUI
Court Disposition Date: 01/08/2003

**Offense #5**
Case Number: 08K02000725
Case Type: JURY TRIAL–MOTOR VEHICLE
Component: 005
Court Case Number: 08K02000725
Court Offense: RECKLESS DRIVING
Court Disposition: NOLLE PROSEQUI
Court Disposition Date: 01/08/2003

**Court Activity:**
[NONE FOUND]

**Sexual Offenses:**
[None Found]

**Florida Accidents:**
[None Found]

**Professional License(s):**
[None Found]

**Voter Registration:**
[None Found]

**Possible Associates:**
MICHAEL P POHLFS    DOB: 11/03/1954 Age: 52
**Names Associated with Associate:**
MICHAEL ROHLFF Age:
505–76–xxxx issued in Nebraska between 01/01/1969 and 12/31/1970
MICHAEL P ROHLFS    Age:
MICHAEL PAUL ROHLFS DOB: 11/03/1954 Age: 52
505–76–xxxx issued in Nebraska between 01/01/1969 and 12/31/1970
MIKE ROHLFS    Age:
**Active Address(es):**
154 OAKRIDGE TRL, EUFAULA AL 36027–5065, BARBOUR COUNTY (Sep 1993 – Jul 2007)

ROHLFS CHRIS & MIKE   (334) 688–8664

**Previous And Non–Verified Address(es):**

Comprehensive Report

3420 BLACK OAK CT, HUNTINGTOWN MD 20639–2800, CALVERT COUNTY (Feb 1993 – Jun 2006)
705 CALHOUN DR, ABBEVILLE AL 36310–5641, HENRY COUNTY (Jun 2005 – Oct 2005)
5717 CHRIS MAR AVE, CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY (Apr 1984 – Feb 2004)

9307 SURRATTS MANOR DR, CLINTON MD 20735–3008, PRINCE GEORGE´S COUNTY (Apr 1985 – Feb 1993)
9307 SURRATTS MANOR DR # 2, CLINTON MD 20735–3008, PRINCE GEORGE´S COUNTY (Apr 1985 – Dec 1991)
3717 CHRISTMER AVE, CLINTON MD 20735, PRINCE GEORGE´S COUNTY (Nov 1984)
9006 PINE VIEW LN, CLINTON MD 20735–3227, PRINCE GEORGE´S COUNTY (Apr 1984)

CHRISTINA ROHLFF  Age:
213–80–xxxx issued in Maryland  between  01/01/1974  and  12/31/1975
    **Names Associated with Associate:**
    CHRISTINA ROHLFS  DOB: 1960 Age: 47
    213–80–xxxx issued in Maryland  between  01/01/1974  and  12/31/1975
    CHRISTINA E ROHLFS  DOB: 07/1960 Age: 47
    213–80–xxxx issued in Maryland  between  01/01/1974  and  12/31/1975
    CHRISTINA EVE ROHLFS    DOB: 07/23/1960 Age: 47
    CHRISTINA ROSS  Age:
    213–80–xxxx issued in Maryland  between  01/01/1974  and  12/31/1975
    **Active Address(es):**
    154 OAKRIDGE TRL, EUFAULA AL 36027–5065, BARBOUR COUNTY (Dec 2005 – Jul 2007)

        ROHLFS CHRIS & MIKE   (334) 688–8664

    **Previous And Non–Verified Address(es):**
    6301 STEVENSON AVE APT 301, ALEXANDRIA VA 22304–3512, ALEXANDRIA CITY COUNTY (Sep 2005 – Feb 2006)
    705 CALHOUN DR, ABBEVILLE AL 36310–5641, HENRY COUNTY (Jun 2005 – Oct 2005)
    3420 BLACK OAK CT, HUNTINGTOWN MD 20639–2800, CALVERT COUNTY (Feb 1993 – Jun 2006)
    9307 SURRATTS MANOR DR # 2, CLINTON MD 20735–3008, PRINCE GEORGE´S COUNTY (Apr 1985 – Dec 1992)
    9307 SURRATTS MANOR DR, CLINTON MD 20735–3008, PRINCE GEORGE´S COUNTY (Apr 1985)
    3717 CHRISTMER AVE, CLINTON MD 20735, PRINCE GEORGE´S COUNTY (Nov 1984)
    9006 PINE VIEW LN, CLINTON MD 20735–3227, PRINCE GEORGE´S COUNTY (Apr 1984)
    5717 CHRIS MAR AVE, CLINTON MD 20735–2310, PRINCE GEORGE´S COUNTY (Apr 1984)

    3240 BLACK OAK CT, HUNTINGTOWN MD 20639, CALVERT COUNTY

LEAH LINNETT  Age:
213–80–xxxx issued in Maryland  between  01/01/1974  and  12/31/1975
    **Previous And Non–Verified Address(es):**
    6203 KIRBY RD, CLINTON MD 20735–1335, PRINCE GEORGE´S COUNTY (Jun 2006 – Nov 2006)

RONALD LINNETT    Age:
    **Previous And Non–Verified Address(es):**
    6203 KIRBY RD, CLINTON MD 20735–1335, PRINCE GEORGE´S COUNTY (Jun 2006 – Nov 2006)

# CORPORATE CHARTER APPROVAL SHEET
## ** KEEP WITH DOCUMENT **

DOCUMENT CODE _02_    BUSINESS CODE _03_

\# _____

Close _____    Stock ✓_____    Nonstock _____

P.A. _____    Religious _____

Merging (Transferor) _____

_____

_____

_____

Surviving (Transferee) _____

_____

_____    New Name _____

_____

```
||||||||||||||||||||||||||||||||||||||||||||||
1000361991827126

ID # D10830859 ACK # 1000361991827126
LIBER: B00848 FOLIO: 1114 PAGES: 0007
NATIONWIDE FLOORING SERVICES, INC.


07/05/2005  AT 03:27 P WO # 0001079934
```

### FEES REMITTED _____

| | | |
|---|---|---|
| Base Fee: | _100_ | _____ Change of Name |
| Org. & Cap. Fee: | _20_ | _____ Change of Principal Office |
| Expedite Fee: | _____ | _____ Change of Resident Agent |
| Penalty: | _____ | _____ Change of Resident Agent Address |
| State Recordation Tax: | _____ | _____ Resignation of Resident Agent |
| State Transfer Tax: | _____ | _____ Designation of Resident Agent |
| _1_ Certified Copies | | and Resident Agent's Address |
| Copy Fee: | _25_ | _____ Change of Business Code |
| _____ Certificates | | _____ |
| Certificate of Status Fee: | _____ | _____ Adoption of Assumed Name |
| Personal Property Filings: | _____ | _____ |
| Mail Processing Fee: | _____ | _____ |
| Other: | _____ | _____ Other Change(s) |
| TOTAL FEES: | _145_ | _____ |

Credit Card _____    Check ✓_____    Cash _____    Code _____

Attention: _____

_____ Documents on _____ Checks

Approved By: _10_ _____

Keyed By: _____

COMMENT(S):

Mail Name and Address
RANDY LINETT
NATIONWIDE FLOORING SERVICES, INC.
6203 KIRBY RD
CLINTON                MD 20735-1335

```
CUST ID:0001636896
WORK ORDER:0001079934
DATE:07-05-2005 03:27 PM
AMT. PAID:$145.00
```

## ARTICLES OF INCORPORATION
### of
### NATIONWIDE FLOORING SERVICES, INC.

FIRST:  I, the undersigned RANDY LINETT, whose post office address is 6203 Kirby Road, Clinton, Maryland 20735, being at least eighteen years of age, do hereby form a corporation under the general laws of the State of Maryland.

SECOND:  The name of the corporation (which is hereinafter called the Corporation) is:

### NATIONWIDE FLOORING SERVICES, INC.

THIRD:  The purposes for which the corporation is formed are as follows:

(a) to engage in the business of providing flooring materials and installation services; to contract with corporations, individuals, partnerships, joint ventures or other entities;

(b) to do such acts and to carry on such business as may be permitted by the Corporations and Associations Article of the Annotated Code of Maryland;

©) to hold, invest in, and mortgage real estate; to conduct any lawful business activities; to lend and borrow money; to act as a fiduciary, receiver, trustee, executor, administrator; and to engage, without limitation, in any other business activities permitted to a regular corporation within the State of Maryland or elsewhere where the Corporation may qualify to conduct business.

```
CUST ID:0001636896
WORK ORDER:0001079934
DATE:07-05-2005 03:27 PM
AMT. PAID:$145.00
```

FOURTH:  The post office address of the principal office of the Corporation in

Maryland is:

6203 Kirby Road
Clinton, MD 20735

The name and post office address of the resident agent of the Corporation in Maryland are:

Randy Linett
6203 Kirby Road
Clinton, MD 20735

FIFTH:  The total number of shares of stock which the Corporation has authority to

issue is five thousand (5,000) shares of no-par stock, all of one class, having an aggregate

par value of zero dollars ($-0-).

SIXTH:  The number of directors of the Corporation shall be ONE (1) (as there shall

be only one stockholder of the Corporation), which number may be increased or decreased

pursuant to the bylaws of the Corporation, and so long as there are less than three (3)

stockholders, the number of directors may be less than three (3) but not less than the

number of stockholders, and the name of the directors who shall act until the first meeting

or until their successors be duly chosen and qualified are:

RANDY LINETT

SEVENTH:  The following provisions are hereby adopted for the purposes of

defining, limiting and regulating the powers of the corporation and the directors and

stockholders:

2

(a) the Board of Directors is hereby empowered to authorize the issuance from time to time of shares of stock of the Corporation whether now or hereafter authorized, or any security exchangeable for or convertible into such shares or any warrants or other instruments evidencing rights or options to subscribe for, purchase, or otherwise acquire such shares;

(b) The Board of Directors shall have the power to borrow or raise money, from time to time, without limit, and upon any terms, for any corporate purposes; and, subject to the Corporations and Associations Article of the Annotated Code of Maryland, as amended from time to time, to authorize the creation of, issuance of, assumption of, or guarantee of any bonds, notes, or other evidences of indebtedness for monies so borrowed to include therein such provisions as to redeemability, or convertibility, or such other provisions as the Board of Directors, in its sole discretion, may determine and to secure the payment of principal, interest, or sinking fund in respect thereof by mortgage upon, pledge of, or the conveyance or assignment in trust of, the whole or any part of the properties, assets, and goodwill of the Corporation then owned or thereafter acquired;

©) the Corporation reserves the right to amend its charter so that such amendment may alter the contract rights, as expressly set forth in the Charter, of any outstanding stock, and the objecting shareholder whose rights may be adversely affected shall not be entitled to the same rights as an objecting shareholder in the case of a consolidation, merger, share exchange, sale, lease, exchange or transfer of all or substantially all of the assets of the Corporation;

3

The enumeration and definition of a particular power of the Board of Directors included in the foregoing shall in no way be limited or restricted by reference to or by inference from the terms of any other clause of this or any other Article of this Charter of the Corporation, or construed as or deemed by inference or otherwise in any manner to exclude or limit any powers conferred upon the Board of Directors under the General Laws of the State of Maryland.

EIGHTH:  The duration of the Corporation shall be perpetual.

NINTH:  Notwithstanding any provisions of law to the contrary, the affirmative vote of a majority of all the votes entitled to be cast on the matter shall be sufficient, valid and effective, after due authorization, approval and/or advice of such action by the Board of Directors as required by law, to approve and authorize the following acts of the Corporation:

(a) the amendment of the Charter of the Corporation;

(b) the consolidation of the Corporation with one or more corporations to form a new consolidated corporation;

(c) the merger of the Corporation into another corporation or the merger of one or more other corporations into the Corporation;

(d) the sale, lease, exchange, or other transfer of all, or substantially all, of the property and assets of the corporation, including its goodwill and franchises;

(e) the participation of the Corporation in a share exchange (as defined in the Corporations and Associations Article of the Annotated Code of Maryland, as amended) as the corporation the stock of which is to be acquired; and

4

(f) the voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Corporation.

TENTH: (a) as used in this Article TENTH, any word or words that are defined in Section 2-418 of the Corporations and Associations Article of the Annotated Code of Maryland, or its successor section, as amended from time to time (the Indemnification Section) shall have the same meaning as provided in the Indemnification Section;

(b) the Corporation shall indemnify its present or former officers or directors in connection with any proceeding to the fullest extent permitted by and in accordance with the Indemnification Section;

(c) with respect to any corporate representative other than a present or former director or officer, the Corporation may indemnify such corporate representative to the fullest extent permitted by and in accordance with the Indemnification Section; provided, however, that to the extent that a corporate representative other than a present or former director or officer successfully defends on the merits or otherwise any proceeding referred to in subsections (b) or (c) of the Indemnification Section as presently enacted, or any claim, issue or matter raised in such proceeding, the Corporation shall not indemnify such corporate representative other than a present or former director or officer unless and until it shall have been determined and authorized in the specific case by (1) an affirmative vote at a duly constituted meeting of a majority of the Board of Directors who are not parties to the proceeding; or (2) an affirmative vote, at a duly constituted meeting of a majority of all of the votes cast by the stockholders who were not parties to the proceeding that the indemnification of such corporate representatives other than a present or former

5

officer or director is proper under the circumstances.

ELEVENTH: The Corporation reserves the right to amend, alter, change or repeal any provisions contained in these Articles of Incorporation in the manner now or hereafter prescribed by law, and all rights and powers conferred herein on shareholders, directors and officers are subject to this reserved power.

IN WITNESS WHEREOF, I have signed these Articles of Incorporation on April 28, 2005 and I acknowledge the same to be my act.

RANDY LINETT

6

# TRADE NAME APPROVAL SHEET
## ** KEEP WITH DOCUMENT **

\# _____



**ID # T00180281 ACK # 1000361987581853**
**LIBER: B00436 FOLIO: 0845 PAGES: 0002**
**EXTREME FLOORING**

**10/11/2002   AT 09:24 A WO # 0000653109**

| TRANSACTION TYPE | FEES REMITTED |
|---|---|
| TN - Trade Name Registration | _12.00_ |
| TA - Amendment | _____ |
| TA1 - Amendment Owner Added | _____ |
| TA2 - Amendment Owner Deleted | _____ |
| TA3 - Amendment Owner Name Change | _____ |
| TA4 - Amendment Location Added | _____ |
| TA5 - Amendment Location Deleted | _____ |
| TA6 - Amendment Location Changed | _____ |
| TC - Cancellation | _____ |
| TR - Renewal | _____ |

_____ Certified Copies

Copy Fee: _____

_____ Certificates

Certificate of Fact Fee: _____

_____ Other Change(s)

TOTAL FEES: _12.00_

## NO FEE TRANSACTION TYPES

99T - Departmental Action
99TA - Departmental Action - Name Change
220T - Void Non-Payment
220TA - Departmental Action - Amendment
220TA1 - Departmental Action - Owner Added
220TA2 - Departmental Action - Owner Deleted
220TA3 - Departmental Action - Owner Name Change
220TA4 - Departmental Action - Location Added
220TA5 - Departmental Action - Location Deleted
220TA6 - Departmental Action - Location Changed
220TC - Departmental Action - Cancellation

Code _____

Attention: _____

Mail to Address:

**CHRISTINE R. ROHLFS**
**5805 AUTH RD**
**SUITLAND                    MD 20746-3870**

Credit Card _____     Check _____     Cash _____

_____ Documents on _____ Checks

Approved By: _____

Keyed By: _____

COMMENT(S):

Stamp Work Order and Customer Number HERE

**CUST ID:0000081986**
**WORK ORDER:0000653109**
**DATE:10-17-2002 08:36 PM**
**AMT. PAID:$12.00**

CUST ID:0000981968
WORK ORDER:0000653109
DATE:10-17-2002 08:36 PM
AMT. PAID:$12.00

State of Maryland
**DEPARTMENT OF**
**ASSESSMENTS AND TAXATIC**

Charter Division

RUS N. GLENDENING
*Governor*

RALD W. WINEHOLT
*Director*

AUL B. ANDERSON
*Administrator*

## TRADE NAME APPLICATION

TRADE NAME: *Extreme Flooring*                    OCT 09 2002

ADDRESS(ES) WHERE NAME IS USED: *5805 Auth Rd   Suitland Md 20746*

FULL LEGAL NAME OF OWNER OF BUSINESS USING THE TRADE NAME: *(Extreme Flooring)*

★ *Christine Robin Bohlfs*

If the owner is an individual or general partnership, does it have a personal property account (an "L" number)?    YES    NO

If YES, what is that number? L *0 7 0 6 7 3 4 7*
If NO, see instruction 7 on the other side of this form.

ADDRESS OF OWNER: *5805 Auth Rd Suitland Md 20746*

ZIP:

DESCRIPTION OF BUSINESS: *Commercial Flooring. installation tile, Carpet, base, and wood floors.*

I AFFIRM AND ACKNOWLEDGE UNDER PENALTIES OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

_____
SIGNATURE OF OWNER

_____
SIGNATURE OF OWNER

_____
SIGNATURE OF OWNER

_____
SIGNATURE OF OWNER

Room 801 - 301 West Preston Street - Baltimore, Maryland 21201
Phone: (410) 767-1350 - Fax: (410) 333-7097 - TTY users call Maryland Relay 1-800-735-2258
Toll Free in MD: 1-888-246-5941 - web site: http://www.dat.state.md.us

Revised 5/00

**Exhibit C**

Default - Rule 55A (CO 40 Revised-DC 02/00)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, ET AL.,

       Plaintiff(s)

    V.

Civil Action No.  07-2304 RBW

EXTREME FLOORING, ET AL.,

       Defendant(s)

RE:  DEFENDANTS
EXTREME FLOORING and
NATIONWIDE FLOORING SERVICES, INC.,

### DEFAULT

It appearing that the above-named defendant(s) failed to plead or otherwise defend this action though duly served  with summons and copy of the complaint    on      1/9/08     , and an affidavit on behalf of the plaintiff having been filed, it is this 13th  day of _____March_____, 2008 declared that  defendant(s) is/are in default.

NANCY MAYER-WHITTINGTON, Clerk

By: _____/s/ Tawana Davis_____

Deputy Clerk

**Exhibit D**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, JAMES BOLAND, GERALD
O'MALLEY, KEN LAMBERT, GERARD SCARANO,
H. J. BRAMLETT, EUGENE GEORGE, PAUL
SONGER, WILLIAM MCCONNELL, CHARLES
VELARDO, MATTHEW AQUILINE, GREGORY R.
HESS, MICHAEL SCHMERBECK, VINCENT
DELAZZERO,
and BENJAMIN CAPP,
as Trustees of, and on behalf of, the
BRICKLAYERS & TROWEL TRADES
INTERNATIONAL PENSION FUND
    620 F Street, N.W.
    Washington, DC 20004
    (202) 783-3788,

JIM ALLEN, MATTHEW AQUILINE, LON BEST,
JAMES BOLAND, TED CHAMP, RAYMOND
CHAPMAN, VINCENT DELAZZERO, BRUCE
DEXTER, JOHN FLYNN, EUGENE GEORGE,
GREGORY HESS, FRED KINATEDER, DAN
KWIATKOWSKI, KEN LAMBERT, SANTO
LANZAFAME, DICK LAUBER, WILLIAM
MCCONNELL, EDWARD NAVARRO, GERALD
O'MALLEY, JOHN PHILLIPS, CHARLES RASO,
MARK ROSE, KEVIN RYAN, GERARD SCARANO,
MICHAEL SCHMERBECK, PAUL SONGER, JOSEPH
SPERANZA, and FRED VAUTOUR
as Trustees of, and on behalf of, the
INTERNATIONAL MASONRY INSTITUTE
    620 F Street, N.W.
    Washington, DC 20004
    (202) 783-3788,

    and,

                Plaintiffs,

                v.

EXTREME FLOORING
    5805 Auth Road
    Suitland, Maryland 20746,

Case: 1:07-cv-02304
Assigned To : Walton, Reggie B.
Assign. Date : 12/21/2007
Description: Labor-ERISA

Civil Action No.



and                                                          )
                                                             )
                                                             )
NATIONWIDE FLOORING SERVICES, INC.                           )
    6203 Kirby Road                                          )
    Clinton, Maryland, 20735,                                )
                                                             )
                        Defendants.                          )
                                                             )
_____                     )

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of

the Defendant, allege as follows:

### CAUSE OF ACTION
### Jurisdiction and Venue

1.      This is an action brought by the fiduciaries of the Bricklayers &

Trowel Trades International Pension Fund ("IPF" or "Fund"), and the fiduciaries of the

International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust

Agreements adopted by the IPF and IMI and the provisions of the Employee Retirement

Income Security Act of 1974, as amended ("ERISA"). This action arises under the laws

of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA,

29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145. Pursuant to Section 502(e)(1) of ERISA,

29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims

brought on behalf of the IPF and IMI.

2.      The IPF and IMI are administered in the District of Columbia. Venue

for the claims asserted by the IPF and IMI are conferred on this Court pursuant to

Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

DSMDB-2295121

(2)  Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

### Parties

3.      Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, William McConnell, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Ben Capp, Jr., are Trustees of, and sue on behalf of, the IPF.  The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  Plaintiffs bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.      The IPF also is authorized to effect collections on behalf of the IMI, pursuant to written Assignments of Claim and the Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers ("Collection Procedures").

5.      Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI.  The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of

DSMDB-2295121

Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

6.    Pursuant to a written Assignment of Claim the IPF also is authorized to file suit on behalf of certain affiliated Local Bricklayer funds: Local 7 Tile Industry Welfare Fund and Local 7 Tile Industry Annuity Fund, Tile Layers Local Union 52 Pension Fund, and the BAC Local 7 Profit Sharing Plan ("Local Funds").

7.    Defendant, Extreme Flooring is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Maryland.

8.    Defendant, Nationwide Flooring Services, Inc. ("Nationwide Flooring") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Maryland.

9.    Defendants are building and construction industry employers. Defendants employ or have employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

### Violation Charged

10.    Extreme Flooring acting through its authorized agent or officer, executed a collective bargaining agreement with the Union. That collective bargaining agreement is annexed hereto as Exhibit A.

11.    Nationwide Flooring acting through its authorized agent or officer, executed a collective bargaining agreement with the Union. That collective bargaining agreement is annexed hereto as Exhibit B.

4

12.    Exhibits A and B are hereinafter referred to as "the Agreements." Pursuant to the Agreements, Defendants agreed to make certain payments to the IPF, IMI and Local Funds on behalf of covered employees of Defendants.

13.    Having submitted some contributions pursuant to the agreements, Defendants have demonstrated an awareness of the obligation to make those payments.

14.    Upon information and belief, Defendants have failed to properly submit required reports and contributions for hours worked pursuant to the Agreement.

15.    Plaintiffs seek to conduct an audit of Defendants' books and records in order to determine any amounts which may be owed for work covered by the Agreement.

16.    Under the terms of the Plan and Trust Agreement adopted by the IPF and IMI Board of Trustees, the CCU Procedures and Supreme Court precedent, Plaintiffs are entitled to conduct an audit of the books and records of Defendants to determine whether contributions have been made in compliance with Defendants' obligations.

17.    Under the terms of the Plan and Trust Agreement adopted by the IPF and IMI Board of Trustees, Plaintiffs are entitled to recover any delinquent contributions found due by the audit, as well as interest, calculated at 15 per cent per annum, and the greater of either liquidated damages, calculated at 20 percent, or an additional computation of interest, on the aforementioned delinquent contributions.

18.    Despite several requests by the IPF and IMI, or a representative of the IPF and IMI, for access to Defendants' books and records so that the IPF and IMI auditor can determine whether contributions have been made in compliance with Defendants' obligations, Defendants have failed to grant the IPF and IMI auditor such access to their books and records.

DSMDB-2295121

19.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendants' failure to make contributions in accordance with the terms and conditions of the Agreement.

20.    Upon information and belief, Extreme Flooring and Nationwide Flooring, parties to Union collective bargaining agreements, are and were, at all relevant times, alter egos in that, *inter alia,* they were under common control, and some or all of them operated from the same building, engaged in the same business, shared some of the same employees, members, officers, and owners, were operated and controlled by the same individual(s), and/or intermingled assets.

21.    As alter egos, Defendants are jointly and severally liable for each other's debts and obligations, including any and all contributions and other amounts that should have been paid to the IPF, IMI, and/or Local Funds for covered work performed by Defendants' employees and/or subcontractors.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    For an order directing Defendant Extreme Flooring to turn over to Plaintiffs' auditor its books and records for the time period October 2004 through the present including, but not limited to, payroll records and the general ledger(s). Plaintiffs will suffer irreparable injury in the absence of such injunctive relief and there is no adequate remedy at law.

DSMDB-2295121

2.    For an order directing Defendant Nationwide Flooring to turn over to Plaintiffs' auditor its books and records for the time period March 2006 through the present including, but not limited to, payroll records and the general ledger(s). Plaintiffs will suffer irreparable injury in the absence of such injunctive relief and there is no adequate remedy at law.

3.    Plaintiffs seek an order granting them:

a.  Preliminary injunctive relief and

b.  Permanent injunctive relief.

4.    For an order declaring that Defendants Extreme Flooring and Nationwide Flooring are alter egos and jointly and severally liable for any amounts determined owed the IPF, IMI and/or Local Funds by Defendants, which are not yet ascertainable until an audit is conducted.

a.  any additional unknown amounts, and/or additional interest, or liquidated damages owed to Plaintiffs by Defendants;

b.  for the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

5.    In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

DSMDB-2295121

6.    That Defendant be directed to comply with its obligations to correctly report and to contribute to the IPF, IMI and Local Funds all additional reports and contributions due and owing, and to pay the costs and disbursements of this action.

7.    Such other relief as this Court deems appropriate, including judgment for any contributions and/or interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: _December 21_____, 2007

By: _____

Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

*Attorney for Plaintiffs*

DSMDB-2295121

# Exhibit A



NY 0358

# A G R E E M E N T S

*between*

*THE GREATER NEW YORK AND NEW JERSEY TILE*

*CONTRACTORS ASSOCIATION, INC.,*

*and*

*THE BUILDING CONTRACTORS ASSOCIATION OF*

*ATLANTIC COUNTY, INC.*

*and*

*THE TILE SETTERS AND TILE FINISHERS UNION OF*

*NEW YORK and NEW JERSEY, LOCAL UNION NO. 7 OF*

*THE INTERNATIONAL UNION OF BRICKLAYERS AND*

*ALLIED CRAFTWORKERS*



RECEIVED
MAY 24 2004
COLLECTIVE BARGAINING SERVICES

*Dated: June 2, 2003*

# TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE I: | The Bargaining Unit ........................... | 1 |
| ARTICLE II: | Territory................................................ | 2 |
| ARTICLE III: | Working Conditions.............................. | 2 |
| ARTICLE IV: | Preparations ........................................ | 8 |
| ARTICLE V: | Union Security ..................................... | 9 |
| ARTICLE VI: | Employment and Hiring Procedures ... | 10 |
| ARTICLE VII: | Traveling Contractors .......................... | 12 |
| ARTICLE VIII: | Affiliated and/or Related Companies... | 13 |
| ARTICLE IX: | Hours, Wages and Fringe Benefits ..... | 14 |
| ARTICLE X | Residential/Other Reduced Rate Work | 21 |
| ARTICLE XI: | Shift Work............................................. | 22 |
| ARTICLE XII: | Holidays ............................................... | 23 |
| ARTICLE XIII: | Foremen ............................................... | 23 |
| ARTICLE XIV: | Shop Stewards ..................................... | 24 |
| ARTICLE XV: | Apprentices .......................................... | 24 |
| ARTICLE XVI: | Notice of Execution of Contract .......... | 25 |
| ARTICLE XVII: | Assignment of Contract/Subcontracting | 26 |
| ARTICLE XVIII: | Contract or Piece Work ....................... | 26 |
| ARTICLE XIX: | Strikes and Lockouts ........................... | 27 |
| ARTICLE XX: | Grievance-Arbitration ......................... | 28 |
| ARTICLE XXI: | Clothing and Tools ............................... | 30 |
| ARTICLE XXII: | International Masonry Institute ......... | 31 |
| ARTICLE XXIII: | BAC PAC and Local PAC Check-off .... | 31 |
| ARTICLE XXIV: | Payment Bonds ..................................... | 32 |
| ARTICLE XXV: | Work and Safety Methods ................... | 32 |
| ARTICLE XXVI: | Promotion Fund ................................... | 33 |
| ARTICLE XXVII: | Taft Hartley Benefit Funds.................. | 33 |
| ARTICLE XXVIII: | Employer Principals ............................ | 34 |
| ARTICLE XXIX: | Validity ................................................ | 34 |
| ARTICLE XXX | Most Favorable Employer.................... | 35 |
| ARTICLE XXXI: | Renewal ................................................ | 35 |
| ARTICLE XXXII: | Retroactivity ........................................ | 36 |
| ARTICLE XXXIII: | Term of Agreement .............................. | 36 |
| ARTICLE XXXIV: | Complete Arrangement ....................... | 36 |
| ARTICLE XXXV: | Benefit .................................................. | 37 |
| ARTICLE XXXVI: | Effectuating Clause ............................. | 37 |

Attachments: A) Wage Schedules
             B) Listing of Current Affiliates of the Associations
             C) Rider to Agreement for South Jersey-Route 33
             D) Rider to Agreement for Independent Contractors

TRADE AGREEMENTS between THE GREATER NEW YORK and NEW JERSEY TILE CONTRACTORS ASSOCIATION, INC., and THE BUILDING CONTRACTORS ASSOCIATION OF ATLANTIC COUNTY, INC. hereinafter referred to as the ("Associations" or the applicable Association as the "Employer") on their behalf and on behalf of their respective members, who are members at the time of the execution of this Trade Agreement or may become members during the life of this Trade Agreement and any extension or renewals thereof, and the TILE SETTERS AND TILE FINISHERS UNION OF NEW YORK & NEW JERSEY OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSMEN, LOCAL UNION NO. 7, 45-34 Court Square, Long Island City, New York 11101 (hereinafter referred to as "Local 7" or the "Union").

WHEREAS, the Associations are comprised of tile contractors engaged in the installation of tile and related materials in New York City, New Jersey, Long Island, and certain other counties, identified below, within in the State of New York.

WHEREAS, the Union is an unincorporated association of Setters and Finishers employed in the tile industry, performing the labor described herein.

Now, therefore, the parties agree as follows:

## ARTICLE I
## The Bargaining Unit

The Employer recognizes the Union, pursuant to Section 9 (a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within the bargaining unit, on all present and future job sites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employees exclusive bargaining representative as a result of a National Labor Relations Board ("NLRB") election requested by the employees. The Employer agrees that it will not request an NLRB election.

The Union agrees and hereby recognizes the applicable Association as the exclusive bargaining agent for all tile contractors who are members of the applicable Association as their bargaining representative.

The Union agrees not to negotiate individually or to enter into any agreement, understanding or practice with any member of the Association or with any Employer represented by the Association for the term of this Collective Bargaining Agreement or any extension thereof.

## ARTICLE II
### Territory

The Employer recognizes the Union as the sole collective bargaining agent for Tile Setters and Apprentices (hereinafter referred to collectively as "Tile Setters") employed by the Employer within New York City, the State of New Jersey including Mercer county, Long Island and the following additional counties in the State of New York: Westchester, Rockland, Putnam, Orange, Sullivan, Dutchess and Ulster.

## ARTICLE III
### Working Conditions

**Section 1.**

Tile Setters work includes, but is not limited to, the work defined as:

(A)   The cutting, or setting of all tile where used for floors, walls, ceilings, walks, promenade roofs, exterior veneers, stair treads, stair risers, facings, hearths, fireplaces and decorative inserts, together with any marble plinths, thresholds or window stools used in connection with any tile work; also to prepare and set all concrete, cement, brickwork, or other foundations or material that may be required to properly set and complete such work.

(B)   The application of a float coat or coats of portland cement mortar prepared to proper tolerance to receive tile on floors, walls and ceilings regardless of whether the portland cement mortar coat is wet or dry at the time the tile is applied to it.

(C)   The setting of all tile bonded with portland cement mortar, where the bed is floated, screeded, slabbed or buttered and where joints are not filled in the same operation.

(D)   The setting of all tile by the adhesion method with organic and/or inorganic thin-bed bonding materials where such bonding material is applied to the backing surface and/or the back of tile units or sheets of tile.

(E)   The setting of tile as herein provided shall include the installation of accessories and the insertion of decorative tile inserts in other materials.

(F)    The mounting, setting, sealing and installation of prefabricated tile panels in the shop and at the job.

(G)   The setting of accessories when built into tile walls.

(H)   The setting of decorations, mantels and counters.

(I)    The patching of old and new work.

2

(J)   Thin-set waterproofing.

(K)   All work usually and customarily performed by Tile Setters and Tile Finishers.

Section 2.

"TILE" is herein defined as the following products, which are not limited in size or thickness:

(A) All burned clay products as used in the tile industry, either glazed or unglazed,

(B) All composite materials, marble tiles, glass, mosaics, brickettes, terra cotta, glass mosaics, and all substitute materials for tile made in tile like units, and

(C) All materials in the tile like forms of cement, metals, plastics and other materials, that are made for or intended for use as a finished floor surface, stair treads, promenade floors, walks, walls, ceilings, swimming pools and all other locations where tile is used to form a finished interior or exterior surface for practical use, sanitary finish or decorative purposes.

(D) Flooring:   On all jobs involving marble and granite, and/or natural and man made, stone-type floor tile of two (2) centimeters thickness or three quarters of an inch (¾") thickness, the work shall be assigned to and performed by a composite crew as follows:  The Employer shall select the first two (2) teams (setter with finisher) from either the two (2) tile locals or the two (2) marble locals or one (1) team from each. Thereafter, if more teams are required, the Employer shall select the next two (2) teams from the other two (2) locals or if the first two (2) teams are from tile and marble, then the next two (2) teams shall also be tile and marble. For example, if the Employer selects the first two (2) teams from the tile locals, then, the next two (2) teams, if required, shall be selected from the marble locals. Thereafter, if more teams are required, the Employer shall alternate between the two (2) groups of locals, one (1) team at a time.  For example, if the fifth (5th) team is selected from the tile locals, the next team shall be selected from the marble locals.

All jobs involving marble and granite, and/or natural and man made, stone-type floor tile of less than two centimeters thickness or ¾" thickness, shall be assigned to and performed by tile setters and/or tile finishers.  All jobs involving marble and granite, and/or natural and man made, stone-type floor tile of more than two (2) centimeters thickness or ¾" thickness, shall be assigned to and performed by marble setters and/or marble helpers.

(E) Tops: On all jobs involving marble and/or granite and/or natural and man made, stone-type tops ("vanity, kitchen, etc.") or miscellaneous pieces, the work shall be assigned to and performed by a composite crew as follows: The Employer shall select the first (1st) team, at its option, from either the two (2) tile locals or the two (2) marble locals. Thereafter, the next team, if required, shall be selected from the other pair of locals. For example, if the Employer selects the first (1st) team from the tile locals, then the next team, if required, shall be selected from the marble locals.

(F) It is agreed that the hours of employment, wages, fringe benefit contributions and all other terms and conditions of employment shall be pursuant to the terms and conditions of this collective bargaining agreement. It is expressly understood and agreed that the Employer is not bound to the terms and conditions of any existing marble locals' collective bargaining agreements. The marble locals, however, shall be entitled to re-allocate wage and fringe benefit contributions provided that the total wages and fringe benefit contributions package does not exceed the total wage and fringe benefit contributions package of the respective tile locals collective bargaining agreements

(G) The Employer shall not use Tile Setters or Tile Finishers to perform anchoring marble or granite work.

**Section 3.**
Tile Finishers work includes, but is not limited to, the work and terms defined below:

The ratios of the number of Tile Finishers to the number of Tile Setters shall be as follows:

1. On mortar jobs, each Tile Setter shall be helped by one (1) Tile Finisher, except under the following circumstances:

(a) On adhesive work, the Tile Finisher will help three (3) Tile Setters, providing no grouting is required. On thin set work, the Tile Finisher will help two (2) Tile Setters, and the Tile Finisher is to grout up to two hundred and fifty (250) square feet of floors or walls per day. Notwithstanding the foregoing, if the Employer decided to do a thin-set or adhesive job on a one (1) Tile Setter one (1) Tile Finisher basis, then the Tile Finisher is to do all the grouting of the work, including catching up on the last day of the Tile Setters' work on the job.

(b) On unglazed wall installation, where one (1) Finisher is helping two (2) Tile Setters, he will grout one hundred (100) square feet of tile per day.

(c) On unglazed floor tile, the Finisher will grout two hundred (200) square feet

per day when helping two (2) Tile Setters.

(d) On epoxy work, the Tile Finisher may be required to help two (2) Tile Setters, but in no event shall the Tile Finisher be required to do any grouting regardless of whether the Tile Finisher is helping one (1) or two (2) Tile Setters. On a one-to-one basis, on a lata poxy installation only, the Finisher will do some grouting.

(e) On pre-grouted tile installations and on tile installations that do not require grout, the ration of Finishers to Tile Setters shall be determined by agreement between the Business Agent and the Employer.

(f) On mortar jobs, the float coat shall be done on a one (1) Tile Finisher to one (1) Tile Setter basis. The setting of tile or marble on the float coat shall be on a one (1) Tile Finisher to one (1) Tile Setter or one (1) Tile Finisher to two (2) Tile Setters basis at the Employer's discretion.

(g) On a thin set specialty type installation, the Tile Finisher will help three (3) Tile Setters and do the grouting of the installation up to ninety (90) square feet per Tile Setter per day or up to a total of two-hundred seventy (270) square feet among the three (3) Tile Setters per day.

(h) On a specialty type installation on Mud (Mortar), the Tile Finisher will help three (3) Tile Setters and do the grouting of the installation, up to forty-five (45) square feet per Tile Setter per day or up to a total of one hundred thirty-five (135) square feet among three (3) Tile Setters.

(i) On marble baths, the Tile Finisher will help two (2) Tile Setters and grout three (3) hop-ups or two-hundred fifty (250) square feet, whichever is greater.

2. Tile Finishers are required to grout when switching from helping two (2) Tile Setters to helping one (1) Tile Setter or when switching from helping one (1) Tile Setter to helping two (2) Tile Setters or when switching from thin set floors to walls or walls to floors. The amount of grouting to be done on the first (1st) day of each of the above situations shall be the same as required on succeeding days according to the terms herein.

3. (a) On the first (1st) day that a Tile Finisher is assigned to a job that has grouting required to be done (NOT FRESH WORK), that Tile Finisher shall complete at least one hundred (100) square feet of grouting if that Tile Finisher is helping one (1) Tile Setter. If the Tile Finisher is helping two (2) Tile Setters, the Tile Finisher is not required to grout on the first (1st) day. After the first (1st) day the grouting required to be completed by any Tile Finisher shall be as set forth

5

herein.

(b) Tile Finishers shall do the cleaning of tile, unpacking of all tile, and shall handle all materials, such as sand, cement, tile, lime, all types of tile panels, prefabricated tile units, and any other form of tile or material that may be used by the Tile Setters, after being delivered on the job. The Tile Finisher shall do all the work pertaining to the protective covering of all tile.

(c) Caulking required when pre-grouted tile is used, or caulking required to be done by the Employer around door bucks, fixtures or internal corners after tile is installed, shall be done by Tile Finishers. Specialty caulking done as part of the tile installation procedure is not included. The Employer retains the right to subcontract caulking to a Union contractor. The Finisher shall do any/all work related to sealers and caulking. Article XVI regarding Subcontracting shall apply.

(d) Tile Finishers shall do the grouting of tile work, as set forth in this Agreement provided:

. (1) That all material is placed on the floors by extra Tile Finishers, or

(2) That material is placed on the floors by the regular Tile Finisher, working before 8:00 A.M. or after 3:30 P.M., or

(3) That material is placed on the floors by the regular Tile Finisher, working between 12:00 noon and 1:00 P.M. and receiving overtime pay as provided for in another paragraph of this Article.

(4) Tile Finishers may be required to obtain water for grouting and/or cleaning from one (1) floor up or down. Such condition, or reasonable requests to obtain incidental materials from other areas of the job shall not eliminate the requirement that Tile Finishers do the grouting of tile set forth in the Agreement.

(e) The Employer is to furnish suitable pails, sponges, hoe blades and mixing drills for L & M Laticrete Epoxy and similar setting materials to the Tile Finishers and the Tile Finishers shall be held strictly accountable for the return of such pails, sponges, hoe blades and mixing drills.

(f) In all buildings over four (4) stories in height, Employers shall furnish a block and fall, or other proper facilities for hoisting materials. No more than six (6) teams shall be required to use a single block and fall on regular mortar installations. Whenever materials are to be pulled beyond a distance of six (6) stories the Employer shall provide for one (1) additional Tile Finisher for each block and fall.

(g) All Tile Finishers are to handle and distribute all materials between 12:00 noon and 1:00 P.M. when directed by the Foreman on the job. Each Tile Finisher, assigned to help a Tile Setter, and performing such work, shall be paid double time for the period 12:00 noon and 1:00 P.M., and, in addition, his regular straight time

pay starting at 12:30 P.M., so that such a Tile Finisher shall receive nine (9) hours pay over the span of a working day from 8:00 A.M. to 3:30 P.M.; and any other Tile Finisher, not assigned to a Tile Setter, performing such work, shall be paid double time only for the period of 12:00 noon to 12:30 P.M. so that such a Tile Finisher shall receive eight (8) hours pay over the span of a working day from 8:00 A.M. to 3:30 P.M. Should fifty percent (50%) or more of the Tile Workers who are so employed on any job refuse to work the noon hour when ordered, it shall be considered a violation of the Agreement, which is distinctly understood that Local 7 will not countenance. The times stated herein shall be adjusted to conform to an adjusted starting time stated in Article IX.

No Tile Finisher shall be required to report to the shop at night for orders after hours, and not before 7:30 A.M. Any Tile Finisher who is sent to a job to work and is not able to perform work solely because of the Employer's fault shall be paid four (4) hours per day.

(h) The parties hereto shall use their best efforts in the industry's and public's interest to increase production and reduce costs by maintaining maximum man hour output and to use all machinery, tools, appliances or methods which may be practical.

(i) The Employer shall use its best efforts to provide and make available for the employees proper and suitable scaffolds, fit and safe for use.

(j) The following shall apply to patch work: Tile Finishers shall accompany Tile Setters on the job where it is clearly in the interest of economy in the judgment of, and in the discretion of the Employer. This rule applies to patch work only and is defined as follows:

(1) PATCHING (OLD WORK): Cutting out old work and repairing due to alterations or remodeling of room. Where all of the old tile is to be replaced with new materials, the new installations shall be done by a Tile Setter and a Tile Finisher. This shall not be considered patch work.

(2) PATCHING (NEW WORK): On any new tile installation where work cannot be completed at the time of installation, such as patching to doors or window trims still to be set, or on account of any other work to be done by other trades.

(3) No wall space however, in excess of thirty (30) square feet shall be deemed work that can de done more economically without a Tile Finisher.

(4) PATCHING DOES NOT MEAN that if at the end of the work day, there is still some extra work to be done in a room where no other trade is delaying

completion, and which the Tile Setter can finish that next morning that this room can be finished by another Tile Setter without a Tile Finisher.

(k) No Employer shall close down a job or declare the day before or after one (1) of the Holidays listed in Article XII as an additional holiday or day off without pay without the prior consent of a majority of all the Tile Setters and the Tile Finishers working on the last working day prior to the additional day or days off voted to be taken off without pay.

(l) The parties agree that Tile Finishers shall do a fair day's work in all cleaning of tile in accordance with the following schedule:

- Twenty-four (24) average sized bathroom floors per day on regular tile installations.
- One thousand (1,000) square feet per day on commercial installations.
- Glazed tiles of any type are not required to be cleaned.

(m) With respect to the grouting of all epoxy, the Tile Finishers who do the grouting shall be paid ten dollars ($10.00) additional for each day's work for such grouting. There will be no restrictions on production for such work.

## Section 4.

All setters must be pre-certified by the Union for all mud work. Tile Finishers may spread and make cuts for setters provided they complete their daily Tile Finisher responsibilities.

## ARTICLE IV
## Preparations

### Section 1.

All preparations for tile walls, ceilings and floors must be properly prepared with sand and cement, plumb and true and scored. The portland cement float coat must be properly prepared, plumb and true and shall be the exclusive work of the Tile Setters. The Union shall have the right to bring to the attention of the Employer any and all preparations that may be considered detrimental to proper and durable installation of work. It is understood that precautions to insure and guarantee the proper and durable installation of work are to conform with accepted practice in the industry. It is understood that preparations for adhesive installations are to be plumb and true and are to conform with accepted practice in the industry. Subsurface is to be dry, firm and clean for proper bond with adhesive. Rooms and any other work shall be cleaned to the proper level for the installation of the tile. Tubs shall also be cleaned of debris for the proper installation of the tile.

## Section 2.

Both parties signing this Agreement do not recognize that any particular grade of tile should call for any special grade of installation, but all installations regardless of quality or kind of tile, should be made in a first class manner, provided Tile Setters/Tile Finishers are supplied with proper working equipment such as soaking tubs, mortar boards, scaffolds wherever required, straight edges, floating strips, mixing boxes, sufficient light and heat to insure proper installation of tile work and such materials as are specified by the Architect for the job in question, and providing the principles of the trade as to proper installation and durability are adhered to.

Existing elevators shall be made available to Tile Setters/Tile Finishers where the building is over seven (7) stories in height.

## Section 3:

Finishers shall be held responsible for all imperfect work pertaining to their work. Upon the first (1st) occurrence of imperfect work, the employee will be required to repair the work on their own time. For the third (3rd) such occurrence, the employee will be disciplined by the Union. The Employer shall provide to the Union proof of its docking for the first (1st) occurrence.

## ARTICLE V
## Union Security

## Section 1.

(a) It shall be a condition of employment after notification to the Union by the Employer in writing by regular mail or _via_ facsimile, that each employee on or after the eighth (8th) day following the commencement of employment in the industry, or the date of execution of this Agreement, whichever is later, shall be, become and remain a member in good standing in Local 7, and that all employees who are members of Local 7 on the date of execution of this Agreement shall remain members of Local 7. If there is a violation of the foregoing provisions because of a failure by an employee to tender periodic dues and the initiation fee uniformly required by Local 7, or upon failure of the employee to satisfy a duly fine imposed on him/her by Local 7, then upon request of the Union, the Employer shall terminate the employment of such employee.

(b) In the event that Congress shall amend or change the applicable law so as to provide for Union Security more favorable to the Union and its members than herein above set forth, then the provisions of such new or amended law, when

effective, shall automatically be incorporated herein.

(c) Authorized representatives of the Union shall be allowed to visit jobs and to interview the Employer and employees covered by this Agreement, but shall in no way interfere with or hinder the progress of work.

## ARTICLE VI
### Employment and Hiring Procedures

Section 1.

(A) It is agreed that on all jobs the Employer shall elect (exclusive of any non-working foreman) the first two (2) Tile Setters required and the Union shall designate, the next two (2) Tile Setters. Thereafter, if more Tile Setters are required, the job shall be manned alternately with the fifth (5th) Tile Setter designated by the Employer and the sixth (6th) Tile Setter provided by the Union, and the remaining additional Tile Setters on the job, if any, shall be manned in the same alternate manner. If the Union does not assign a Tile Setter to the job, the Employer may assign a Tile Setter. The Union agrees that for the duration of the job, it will not require that a Tile Setter assigned to the job by the Employer be replaced by a Tile Setter designated by the Union. Both parties agree that the Employer shall have the right to determine the number of Tile Setters to be employed on any job. Both parties further agree it is the right of any Employer to discharge any Tile Setter that in its opinion is unsatisfactory.

Section 2.

Employers shall be at liberty to employ and discharge whomsoever they see fit and Tile Setters/Tile Finishers shall be at liberty to work for whomsoever they shall see fit, subject to the decision of the Joint Arbitration Board when workmen or Employers are on charges.

Section 3.

In the event the Union fails to refer necessary men within three (3) working days after notice in writing by an Employer to the Union and to the Joint Arbitration Board, the Employer may employ men to perform the work from any other source.

Section 4.

(a) All Tile Finishers employed by the Employer pursuant to this Agreement shall be from among persons who are on a list, to be known as the Qualified Tile Finishers List. The Qualified Tile Finishers List shall be made up of all Tile Finishers having the necessary skill and experience to carry out the duties of this job. Tile Finishers who, within two (2) years prior to the date they seek employ-

ment, have been employed for at least one (1) year by an Employer who is under contract with the Union, shall be presumed to meet the general requirements of skill and experience and shall be placed on such Qualified List. All others seeking to be placed on such Qualified List must pass a fair comprehensive examination to be given by a Joint Union-Employer examining committee consisting of four (4)

persons, two (2) appointed by the Union and two (2) appointed by the Employers. Each applicant must be notified of the results of the examination.

(b) It is the objective of the Employer and the Union to provide employment opportunities for all Tile Finishers on the Qualified Tile Finishers List. On each job the Employer shall select the first two (2) Tile Finishers. When additional Tile Finishers are required for the job, the Employer shall notify the Union and the Union shall refer the next two (2) Tile Finishers to the job. As the job requires additional Tile Finishers, the distribution shall be one (1) Tile Finisher selected by the Employer and one (1) Tile Finisher referred by the Union making the number of days worked equally proportioned as the work progresses.

On work consisting of cleaning of tile, the designation of Tile Finishers shall be on a one-to-one basis throughout.

1. Whenever additional Tile Finishers are required for a job, the Employer must notify the Union and the Union shall refer fifty percent (50%) of the Tile Finishers required. If the Union cannot refer Tile Finishers when requested by the Employer, then the Employer may assign Tile Finishers to the job. If a Tile Finisher referred to the job by the Union is not acceptable to the Employer, or is not able to do the work required, then the Union shall have the opportunity to replace this Tile Finisher.

2. If the Employer has complied with hiring procedures set forth in this Article, the Union agrees that it will not require that a Tile Finisher assigned to the job be replaced by a different Tile Finisher.

3. If the Employer has not complied with the hiring procedures set forth within this Article, then the Union may require that all Tile Finishers, except the Tile Finishers working with the Working Foreman Tile Setter, be replaced by the Tile Finishers referred by the Union.

4. In no event can the Union require that the Tile Finishers designated by the Employer to work with the Working Foreman Tile Setter be replaced by a Tile Finisher referred by the Union.

5. Jobs that require two (2) Tile Finishers to be on the job simultaneously to complete the entire installation including grouting, are exempt from the above until

twenty-five (25) Tile Finisher days have been expended. Thereafter, the Union shall be requested to assign Tile Finishers to complete fifty percent (50%) of the remaining installation and grouting work.

(c) Listing applicants on the Qualified Tile Finishers List, the referral of applicants to jobs and all hiring done by Employers shall be on a nondiscriminatory basis and shall not be based on, or in any way, affected by, Union membership, bylaws, rules, regulations, constitutional provisions or any other aspect or obligation of Union membership, policies or requirements.

(d) The Employer retains the right to reject any job applicants referred by the referral hall. Any Tile Finishers who are referred to a job in accordance with the provisions of this Article, and remains ready and willing to work, shall be guaranteed the first (1st) four (4) hours of a day's pay, irrespective of whether he is actually permitted to work the first four (4) hours.

(e) The Employer and the Union agree there will be no discrimination against any employee, with respect to race, creed, color, national origin, sex, age, handicap, marital status, sexual orientation or affectional preference in all employment decisions, including, but not limited to, recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, downgrading, transfer, layoff and termination, and all other terms and conditions of employment, except as provided by law.

## ARTICLE VII
### Traveling Contractors

**Section 1.**

When the Employer has any work specified in Article III of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an Agreement with another affiliate of the International Union of Bricklayers and Allied Craftsworkers, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the jobsite area. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in the annexed wage schedules, but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed, plus all contributions specified in the jobsite local Agreement. The Employer shall in all other matters be governed by the provisions established in the jobsite local Agreement. If employees are sent to work on a project in an area where there is no Local Agreement covering the work specified in Article III of this Agreement, the full terms and conditions of this Agreement shall apply.

## Section 2.

The provisions under this Traveling Contractors clause shall cover the following areas: New York, New Jersey, Connecticut, Massachusetts, Pennsylvania and Rhode Island.

## ARTICLE VIII
### Affiliated and/or Related Companies

## Section 1.

No Tile Setter and Tile Finisher shall work for any Employer, corporation, partnership, joint venture or individual who has failed to sign an Agreement with the Union or does not comply with the terms and conditions of employment in said Agreement.

## Section 2.

In order to protect and preserve, for the employees covered by this Agreement all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: if and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation company, partnership, or any other business entity, including a joint venture wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

## Section 3.

All charges by the Union of violations of Section 4 of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance, with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XX of this Agreement. As a remedy for violations of this Section, the arbitration body provided for in Article XX is empowered, at the request of the Union, to require an Employer to: (1) pay to affected employees covered by this Agreement the equivalent of wages lost by such employees as a result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union or such joint trust funds for violation of this Section; nor does it make the same or other remedies unavailable to the Union or such joint trust funds for violations of other sections or Articles of this Agreement.

### Section 4.

If, as a result of violation of this Article, it is necessary for the Union to institute court action to enforce an award rendered in accordance with Article XX, or to defend an action which seeks to vacate such an award, or for the Trustees of the joint trust funds to institute court action in the first instance to enforce Section 4 above, the Employer shall pay any accountant's and attorney's fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action in accordance with ERISA should the Union and /or the Funds prevail.

### ARTICLE IX
### Hours, Wages and Fringe Benefits

### Section 1.: Hours

(A) Seven (7) hours will constitute a regular day's work except that eight (8) hours will constitute a regular day's work where the specific job is performed in the territory of upstate New York and South of Route 33, New Jersey.

(B) For those employees governed by a seven (7) hour day, the following rules shall apply:

(1) Regular working hours are Monday through Friday from 8:00 A.M. to 12:00 noon and from 12:30 P.M. to 3:30 P.M. When a specific job requires a 9:00 A.M. starting time, the regular seven (7) hours are Monday through Friday from 9:00 A.M. to 1:00 P.M., and from 1:30 P.M. to 4:30 P.M.

(2) No work is to be done or paid for between the hours of 7:00 A.M. and 8:00 A.M. or 3:30 P.M. to 4:30 P.M. except in an emergency. When no emergency is involved, a starting time of 7:00 A.M. and ending at 2:30 p.m. for the normal workday for a specific job will be approved by the Union based on the Employer providing evidence of this requirement.

(3) Should a Tile Setter/Tile Finisher leave a job by his own volition before 12:00 noon or before 3:30 P.M., his pay for that day shall be proportionately reduced. The Employer must deduct the proportioned hourly amount from such employee's pay for that day.

(4) Tile Setter/Tile Finishers may be laid off as of 12:00 noon or 3:30 P.M. When laid off, a Tile Setter/Tile Finisher shall be notified of such action no later than one (1) hour before the time of such lay off and paid in full not later than one-half (1/2) hour before quitting time. Failure of the Employer to notify the Tile Setter/Tile Finisher of lay off and to pay wages in full as herein prescribed, will obligate the Employer to continue the Tile Setter/Tile Finishers in his employ another one-half (1/2) day or to pay the equivalent in waiting time be it 12:00 noon or 3:30 P.M.

(5) Any Tile Setter/Tile Finisher who is sent to a job to work and is not ready solely because of the Employer's fault shall be paid one-half (1/2) day's pay.

(6) No Tile Setter/Tile Finisher shall be required to report to the Shop after regular working hours or before 7:30 A.M.

As to the Tile Finishers only, anything in the Agreement to the contrary notwithstanding, the Employer has the absolute right to change the normal time period for Tile Finishers hired to load, unload and handle materials, by commencing the starting time at 7:00 A.M. and ending at 2:30 P.M.

The Employer shall have the right to utilize a workday shift other than the regular seven (7) hour shift where job conditions require it upon notice to the Union.

All employees are to start work on all jobs in the jurisdiction of Local No. 7 at 8:00 a.m. and to remain on the job until 3:30 p.m., except when the starting and ending times are adjusted as provided above. All employees shall remain on the job until quitting time. If an employee leaves the job early, the employee will be docked for the first (1st) such occurrence. For the second (2nd) such occurrence, the employee shall be discharged. The Employer shall provide to the Union proof of docking for the first (1st) occurrence.

Section 2.: Wages

(A) The Union in its sole and absolute discretion reserves the right to allocate any of the wage increases on the Wage Schedules attached herein or any of the Fringe Benefit Funds. All allocations shall be subject to all IRS regulations including, but not limited to, the IRS twenty five (25%) rule. The Employers are to be notified of the allocation thirty (30) days prior to the effective date of the increase. The Employers agree not to unreasonably withhold their consent to any Union proposal allocating any portion of the said increases to Fund contributions. Such proposal shall be made in writing within a reasonable time. There shall be full itemization of all deductions on a weekly and year to date basis where Employer's payroll system permits.

(B) Wage payments made by check must be made no later than 3:30 P.M. each Wednesday, and if not so made, then shall be paid in cash no later than 3:30 P.M. the following day provided, however, if an employee consents thereto, payment by check may be made on Thursday. All wage payments shall be for the payroll week closing on the Sunday preceding the payment. In the event a payroll check is returned for insufficient funds, the Employer shall be required to pay two (2) additional days wages to the Employee as a penalty.

(C) For those employees governed by a seven (7) hour regular day, overtime is to be paid at the rate of one and one-half (1½) times the regular rate of pay for work performed after 3:30 P.M. on any job that commences at 8:00 A.M. and is not

completed by 3:30 P.M. For those employees governed by a eight (8) hour regular day, overtime is to be paid at the rate of one and one-half (1½) times the regular rate of pay for work performed after 4:30 P.M. on any job that commences at 8:00 A.M. and is not completed by 4:30 P.M.

(D) Double time shall be paid for work performed on Sundays and Holidays except as otherwise provided in Article XI (Shift Work).

(E) Tile Setter/Tile Finishers who are required to work on Saturday shall receive one and one half (1½) times the regular straight time rate to pay for all hours worked that day except as otherwise provided in Article XI (Shift Work).

(F) All Setters that float three hundred (300) square feet of mud walls and/or float and cover two hundred (200) square feet of mud floors in one (1) day are to receive four dollars ($4.00) per hour of extra pay. Tile Finishers shall work one (1) hour early in the morning on a mud job day to prepare. Overtime rates shall apply.

(G) Any new Tile Apprentice Finishers to the trade shall not make more than seventy-five percent (75%) of a Tile Setter's wage as of June 1, 2005.

## Section 3.: Fringe Benefit Funds

(A) All Funds have been established, approved and operated jointly by the Union and each of the Associations.

(B) These Funds are for the benefit of the Tile Setters and Tile Finishers, and are to be used for the established purposes only.

(C) All fringe benefit fund contributions shall be paid on the basis of Tile Setter /Tile Finisher hours paid, except that IPF, IMI, Tile Promotion and Local Pensions shall be paid on the basis of hours worked.

(D) Elected full time officers of the Union and Employees of the Union may participate in the Funds and the International Union of Bricklayers and Allied Crafts Pension Fund (I.U. Pension Fund) provided contributions are paid to these Funds on their behalf in the same manner as other covered Employees.

(E) Employers shall provide for the coverage of Tile Setters/Tile Finishers in their employ with disability insurance in accordance with the requirements of the law of the State in which they are employed.

(F) Payments by Employers to all Funds shall be submitted via contribution receipts under the contribution receipt system (CRS") administered by the Fund Administrator on behalf of the Trustees of the respective Funds, containing such data as the Trustees may from time to time determine in their discretion to be necessary. Employers must file contribution receipts whether or not Employees are

performing Tile Setters/Tile Finishers work during any particular period. Payments to the Funds shall be remitted to the Funds or such other representative as the Trustees may select. Payments to the I.U. Pension Fund shall be remitted to the I.U. Pension Fund, or such other representative as the I.U. Pension Fund may select.

(G)   The books and records of the Employer shall be made available at all reasonable times for inspection, copying and audit by, but not limited to, the accountant, outside independent auditors or other representatives of the Trustees of the Funds. The Employer shall be required to disclose upon such audits all pertinent records as determined by the Union and/or the Trustees in its possession and/or control, such as, office payrolls, yard payrolls, New York payrolls, New Jersey payrolls, Connecticut payrolls, computer payroll printouts, W-2 forms, Quarterly Federal payroll tax returns (Form 941), quarterly state payroll tax returns (Forms WRS-2 and WRS-30), annual Federal and State tax returns, cash disbursements, journals, purchase journals, New York State employment records, insurance company reports, Employer remittance reports, payroll and supporting checks, ledgers, vouchers, 1099 Forms, evidence of unemployment disability insurance premiums, certification of workers compensation coverage, checks in support hereof and any other documentation concerning payrolls. In addition, the aforementioned books and records of any alter ego and/or single employer company proved to be performing bargaining unit work of the Employer shall also be made available at all reasonable times for inspection and audit by, but not limited to, the accountants, outside independent auditors or other representatives of the Trustees of the Funds. There will be a two-tiered audit program consisting of random audits and targeted audits that will be operated pursuant to the Trustees' direction.

(H)  The Employer shall retain, for a minimum period of six (6) years, payroll and related records necessary for the conduct of a proper audit in order that a designated representative of the Trustees may make periodic review to confirm that contributions, owed pursuant to this Agreement are paid in full. In the event, after the Trustees have made a request, the Employer fails to produce its books and records necessary for a proper audit, the Trustees of the Funds in their sole discretion, may determine that the Employer's monthly hours subject to contributions for each month of the requested audit period are the highest number of Tile Setter/Tile Finisher hours for any month during the twelve (12) preceding months audited, or during the last twelve (12) months for which reports were filed, whichever monthly number of hours is greater. Such determination by the Trustees shall constitute presumptive evidence of delinquency. Prior to making such determination, the Trustees shall mail a final seven (7) day written notice to the Employer advising him that such determination shall be made if the Employer does not schedule a prompt audit. Nothing herein shall mean that the Funds relinquish their right to commence legal proceedings to compel an examination of the Employer's books and records for audit.

(I)   If the Employer seeks the protection and/or intervention of the bankruptcy

17

court, nothing herein shall mean that the Funds relinquish their right to commence legal proceedings to compel an examination of the Employer's books and records at any time, nor shall this section limit the Trustees' rights as creditors under the United States Bankruptcy Code.

(J)  When auditors are sent to audit the books and records of the Employer and a definite appointment is scheduled and the auditor cannot start at the appointed time and date and must return, or when complete payroll records requested herein are not furnished, then the Employer shall be penalized and pay the sum of two hundred fifty dollars ($250.00) per auditor per day, to cover the expense of the auditor.

(K)  It shall be a violation of this Agreement for any Employer to fail to furnish proper payroll records when requested for the purpose of completing an audit. The Union shall have the right to remove all its members from the offending Employer provided that three (3) days notice of intention to remove Tile Setters or Tile Finishers from a job is given to the Employer by the Union by certified mail, return receipt requested. If such members who are removed remain on the jobsite during regular working hours, they shall be paid for lost time.

(L)  If contributions are not received in the Fund Office by the 15th of the month following the month that the work is performed, the Administrator will send the Employer a letter soon thereafter stating that saying the Employer must pay within ten (10) days.  Interest on the delinquent amount will accrue from the 16th of the month when the contributions were due. The Union is authorized to pull the men off of the job for any Employer that does not remit the required contributions when due.  If the Fund Office does not receive the contribution within the ten (10) days allotted, the matter will be turned over to Fund Counsel. Fund Counsel will send a letter stating that if the Fund Office does not receive payment within seven (7) days, a lawsuit will commence and the Employer shall be liable for all costs for collection of payments due, including (A) the unpaid contributions, (B) interest on the unpaid contributions at 10% per annum, or (C) liquidated damages in the amount of twenty percent (20%) of the contribution delinquency, (D) reasonable attorneys' fees, and such other costs and penalties as may be assessed by a court as provided under ERISA.

(M)  Any Employer who is found upon regular or special audit ordered by the Trustees of the Funds and/or I.U. Pension Fund to be more than three (3) months delinquent in excess of one thousand dollars ($1,000.00) shall be charged the full cost of such audit.

(N)  Where payment is made or an audit is conducted pursuant to a judgment or court order, the Employer recognizes the right of the Trustees of the Funds to seek an Order enjoining the Employer and its agents, representatives, directors, officers, stockholders, successors and assigns, for the remaining term of this Agreement from failing, refusing or neglecting to submit the required contribution receipts and/or to

pay the required contributions to the Funds, and requiring the Employer to cooperate in an audit in accordance with the provisions of this Agreement.

(O) The Employer recognizes that when payment of contributions to the Funds pursuant to this Agreement is made by check or other negotiable instrument which is returned uncollected, the Funds incur additional cost and expense. The Employer hereby agrees that in the event any payment to the Funds by check or other negotiable instrument results in the check or negotiable instrument being returned without payment after being duly presented, the Employer shall be liable for additional damages in the amount of one hundred dollars ($100.00) to cover such additional costs, charges and expenses. Nothing herein is intended, nor shall it be interpreted, to mean that the Funds or the Union waive any other liquidated damages required to be paid pursuant to this Agreement in the event Employer contributions to the Funds are not timely paid in full.

(P) Any Employer who is delinquent in paying its contributions to the Funds shall pay the prime interest rate on all late payments or such amount of interest as the U.S. Department of Labor or the Internal Revenue Service may require Trustees of Employee Benefit Funds to collect for late payments of contributions, or ten percent (10%) per annum, whichever amount is greater.

(Q) If Tile Setters/Tile Finishers are withdrawn from any job in order to collect contributions to the Funds and the I.U. Pension Funds, the Tile Setters/Tile Finishers who are affected by such stoppage of work shall be paid for lost time, provided that three (3) days notice of the intention to remove Tile Setters/Tile Finishers from a job is given to the Employer by the Union by certified mail, return receipt requested.

(R) The Employer hereby agrees to be bound by and to the Agreements and Declarations of Trusts of the Funds, as though it had actually signed the individual documents and further agrees to be bound by all actions taken by the Funds pursuant to said Agreements and Declaration of Trusts, as amended, and their respective Plans, as amended, and by all By-Laws, rules and resolutions adopted to regulate each of the Funds.

Section 4:

The Employer shall deduct from wages in the amount certified by the Union of the gross salary for each hour paid or any additional sums per hour thereafter specified by the Union. The amount so deducted shall be remitted to the Union as dues check-off. The sums transmitted shall be accompanied by a statement, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid. The Employer and the Union further acknowledge that the Employer has agreed to make such deductions provided that at the time of such deductions, the Employers have received written authorizations executed by the Employee. The Employer and the Union further acknowledge that

the Trustees have agreed to make such deductions provided that at the time of such deductions there is in possession of the Trustees proper written authorization executed by the Employee. The Employer and the Union further acknowledge that the Union has agreed to indemnify and hold harmless the Trustees from any and all claims, actions and proceedings arising out of said payment.

Section 5.: International Union of Bricklayers and Allied Crafts Pension Fund

(A) The Employer acknowledges that the Union has elected to participate in the I.U. Pension Fund.

(B) The Employer hereby agrees to be bound by and to the Agreements and Declarations of Trusts for the I.U. Pension Fund as though it had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of this fund pursuant to said Agreements and Declarations of Trusts.

(C) The Employer hereby irrevocably designates as its representatives on the I.U. Pension Fund Board of Trustees, such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

(D) For the purpose of this section, each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to the I.U. Pension Fund.

(E) Contributions shall be paid on behalf of all covered employees starting with the employee's first (1ˢᵗ) day of employment in a job classification covered by this Agreement. This includes, but is not limited to journeymen, apprentices, helpers, trainees and probationary employees. There shall be no contributions for pre-apprentices for a period of three (3) months from the first day of the Apprentice Program while attending the twelve(12) week pre-job training program.

(F) All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the I.U. Pension Fund. Any Employer found, as a result of an audit ordered by the Trustees of one (1) of the I.U. Pension Fund, to have been substantially inaccurate in reporting shall be charged the full costs of such audit.

(G) If the Employer fails to make any contribution specified in this section, within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due including (A) the unpaid contributions, (B) interest on

the unpaid contributions at 10% per annum, or (C) liquidated damages in the amount of twenty percent (20%) of the contribution delinquency, (D) reasonable attorneys' fees, and such other costs and penalties as may be assessed by a court as provided under ERISA. The Employer's liability for payment under this Article shall not, at the Union's sole option, be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in this Agreement.

## ARTICLE X
### Residential and Other Reduced Rate Work

"B Rate" for Setters and Finishers

Section 1.

   This Article shall apply to all Fast Food free standing and Fast Food type work, three (3) story Garden Apartments and Apartment type work, and Single Family Houses and Single Family Unit types (e.g., individual condominium or coop apartments). Such work shall be referred to as "B Rate" Work.

Section 2.

   (A) Employees working under this Article shall not be eligible to work on standard rate jobs, except as stated below.

   (B) "B Rate" Finisher shall be eligible to move up to become a "B Rate" Setter after a period of two (2) years should he/she be qualified, but not before this time.

   (C) A "B Rate" Setter may be eligible to move up to become an "A Rate" Setter after a period of five (5) years and not before such time. Should the Setter wish to become an "A Rate" Setter, he/she shall first meet with the Union to obtain approval. The Union shall notify the current Employer and the Association in writing, ninety (90) days prior to moving a "B Rate" Setter up to "A Rate" Setter. The Employer need not accept the employee as an "A Rate" Setter if the Employer does not have need for an additional "A Rate" Setter; nor shall the employee be assigned to "B Rate" work after his/her status has been changed to "A Rate" work.

   (D) A days work will consist of a seven (7) hour day- 8:00 A.M. to 3:30 P.M. or 7:00 A.M. to 2:30 P.M. Lunch to be from 12:00 Noon to 12:30 P.M.

Section 3.

   (A) Overtime and shift work rates shall be governed by the respective Articles and Sections of this Agreement.

   (B) Hiring conditions: At this time, there is no referral hall. The parties agree

that they shall discuss the mechanics of the workings of a referral hall for "B Rate" workers, once there is a sufficient supply of manpower for the Union to have a pool of employees to choose from.

(C) Payment of benefits shall be governed by the attached wage schedules.

(D) The Labor – Management Committee shall meet in or about January, 2006 to review this Article.

## ARTICLE XI
### Shift Work

Section 1.

Shift work is defined as a seven (7) hour workday starting outside of the normal starting times as defined in Article IX, Section 1, paragraphs (B)(1) & (B)(2).

Shifts starting between the hours of:

(A) 12:01 A.M. Monday through 12:00 midnight Friday shall be paid at one and one quarter (1¼) times the straight time rate of pay for wages and fringe benefit contributions for the duration of the seven (7) hour shift.

(B) 12:01 A.M. Saturday through 12:00 midnight Saturday shall be paid one and one half (1½) times the straight time rate of pay for wages and fringe benefit contributions for the duration of the seven (7) hour shift.

(C) 12:01 A.M. Sunday through 12:00 midnight Sunday shall be paid at double time the straight time rate of pay for wages and fringe benefit contributions for the duration of the seven (7) hour shift.

(D) Any work that is performed after the normal seven (7) hour shift is completed will revert to the normal overtime schedule as stated in Article IX, Section 2.

Section 2.

The provisions of this Article cover all of New York and North of Route 33, New Jersey.

## ARTICLE XII
## Holidays

Section 1.

| | |
|---|---|
| NEW YEAR'S DAY | VETERAN'S DAY |
| PRESIDENT'S DAY | THANKSGIVING DAY |
| GOOD FRIDAY | (& THE DAY AFTER) |
| MEMORIAL DAY | CHRISTMAS DAY |
| INDEPENDENCE DAY | LABOR DAY |
| COLUMBUS DAY | |

Section 2.

No work within the trade and geographic jurisdiction of the Tile Setters Union or the Tile Finishers Union shall be performed on Labor Day.

Section 3.

When Tile Setters and Tile Finishers covered by this Trade Agreement are working in locations outside of the jurisdiction of the Union, for Employers signatory to this Agreement, they must observe holidays in the locality.

## ARTICLE XIII
## Foremen

Section 1.

There shall be a foreman on all jobs within the jurisdiction of the Union. The foreman shall be a Journeyman Tile Setter.

(A) On jobs where five (5) or more Journeyman Tile Setters are employed, the foreman shall receive an amount at least ten dollars ($10.00) per day above the daily wage of a Journeyman Tile Setter.

(B) On jobs where more than ten (10) Journeyman Tile Setters are employed, the foreman shall not handle the tools and shall receive an amount at least ten dollars ($10.00) per day above the daily wage of a Journeyman Tile Setter.

(C) Any Journeyman Tile Setter who has invested in, retained stocks or has any financial interest in any tile contracting firm under no circumstances shall be installed as foreman on any operation or installation of tile work.

23

## ARTICLE XIV
### Shop Stewards

Section 1.

The Union may designate working Shop Stewards on any job where two (2) or more Tile Finishers/Setters are employed. The Employer shall not discriminate against any Shop Steward in the hire or tenure of their employment for the performance of their duties.

Section 2.

The Shop Steward shall enforce the conditions of this Agreement and methods of employment herein established. It is his duty to see that no work is performed between the hours of 12:00 noon and 12:30 P.M. and that no Tile Setters/Tile Finisher continues to work after 3:30 P.M. or quits before 3:30 P.M., except as provided for by this Agreement. The Shop Steward shall notify the foreman when lockers are inadequate to protect the Tile Setters/Tile Finishers clothes and tools.

Section 3.

The Shop Steward shall perform his duties with the least possible inconvenience to his Employer. He is to work as a Tile Setter/Tile Finisher and is not to use his position as an excuse to avoid the performance of his duties as a Tile Setter/Tile Finisher.

## ARTICLE XV
### Apprentices

There shall be a Joint Apprenticeship and Training Committee consisting of three (3) members designated by The Greater New York and New Jersey Tile Contractors Association, Inc. and three (3) members designated by the Union to administer the Apprenticeship Training Program which shall meet at least semi-annually.

An apprentice shall be defined as a "Local 7 Apprentice" in the Apprenticeship Training Program.  The Apprenticeship Training Program shall be a four (4) year program for all Local 7 Tile Setters. The program for Tile Finisher apprentices shall be a three (3) year program. The Apprenticeship Training Program shall provide for mandatory cross-training and upgrading for all Local 7 apprentices.

If, at the Union's discretion, the pre-apprentice who is going through the twelve (12) week training program is not qualified to become an apprentice at that time, that pre-apprentice shall be subject to mandatory testing prior to a final decision. At the apprentice's two (2) year mark in the apprenticeship program, the Committee, at its discretion, will decide if the apprentice shall continue on a Tile Setter or Tile Finisher apprenticeship track.

The wage rates of the Apprentices under the four (4) year program of this Agreement shall be as follows:

| Hours of Experience | Wage Rate |
|---|---|
| 1 - 750 Hours of Work | 50% of Tile Setters Rate |
| 751 - 1,500 Hours of Work | 55% of Tile Setters Rate |
| 1,501 - 2,250 Hours of Work | 65% of Tile Setters Rate |
| 2,251 - 3,000 Hours of Work | 70% of Tile Setters Rate |
| 3,001 - 3,750 Hours of Work | 75% of Tile Setters Rate |
| 3,751 - 4,500 Hours of Work | 85% of Tile Setters Rate |
| 4,500 - 5250 Hours of Work | 90% of Tile Setters Rate |
| 5,251 - 6,000 Hours of Work | 95% of Tile Setters Rate |
| 6,000 Hours of Work | 100% of Tile Setters Rate |

The wage rates of the Apprentices under the three (3) year program of this Agreement shall be as follows:

| Hours of Experience | Wage Rate |
|---|---|
| 1 - 750 Hours of Work | 50% of Tile Finishers Rate |
| 751 - 1,500 Hours of Work | 55% of Tile Finishers Rate |
| 1,501 - 2,250 Hours of Work | 65% of Tile Finishers Rate |
| 2,251 - 3,000 Hours of Work | 75% of Tile Finishers Rate |
| 3,001 - 3,750 Hours of Work | 85% of Tile Finishers Rate |
| 3,751 - 4,500 Hours of Work | 95% of Tile Finishers Rate |
| 4,500 Hours of Work | 100% of Tile Finishers Rate |

Effective January 1, 2005, the three (3) year program will terminate and the four (4) year program will commence.

The parties are subject to and bound by the "Standards of Apprenticeship for Greater New York and New Jersey Tile Setters/Tile Finishers Joint Apprenticeship Committee," which shall apply to all Apprentices employed under this Agreement. The "Standards of Apprenticeship for Greater New York and New Jersey Tile Setters/Tile Finishers Joint Apprenticeship Committee" are incorporated in this Agreement by reference as if fully set forth herein.

## ARTICLE XVI
### Notice of Execution of Contract

Section 1.

The Employer must, within a reasonable time of entering into a contract requiring the performance of labor covered by this Agreement, give written notice of such contract to the Union.

## Section 2.

The Employer shall mail such required initial notice to the Secretary of the Union stating:

(A) The name of the party with whom the contract was made.

(B) The place where the contract is to be performed.

(C) The approximate time when the Employer will commence performance of work under such contract.

(D) Whether this is to be a mortar job and the appropriate number of working days by the Tile Setters/Tile Finishers required to carry out such a contract.

(E) The Secretary of the Union shall promptly acknowledge to the Employer the receipt of such communication.

## Section 3.

No Tile Setters/Tile Finishers shall perform any work for any Employer who fails to give all notices as provided for in this Article, prior to the commencement of any work.

## ARTICLE XVII
### Assignment of Contract/Subcontracting

No Employer, having a contract requiring the performance in connection therewith of labor within the classification set forth in this Agreement, shall subcontract, sell, sublet and/or assign to any other person, firm, corporation or entity who is not signatory or bound by this Agreement, the performance of such contracts including the portland cement float coat or any other portion of the contract so far as the labor is required to be performed thereunder. The Employer shall not be responsible for payment of fringe benefits of a signatory subcontractor.

## ARTICLE XVIII
### Contract or Piece Work

No Employer and Tile Setter/Tile Finisher shall bargain or contract with each other to lay a designated number of feet of tile for the day's work nor shall they bargain or contract that a Tile Setter/Tile Finisher do a certain piece of work in a designated time. This bargaining or contracting shall be looked upon as piece work, which is not countenanced by the parties bound by this Agreement.

# ARTICLE XIX
## Strikes and Lockouts

The Union or any member of the Union shall not engage in or authorize any strike, walkout, or slowdown, picketing, stoppage of work or boycott, or concerted refusal to work, or any other interruption of work against the Employer. Furthermore, it is understood that no Union Officer, representative or Agent may authorize, encourage or assist in any strike or concerted work stoppage in the shop or any premises of the Employer or at the jobsite, nor will the Union or its officers participate in, counsel or induce any concerted interruption of work. This clause also specifically prohibits any Union member from refusing to work due to the existence of a picket line, unless sanctioned by the Building Trades Council. No Employer shall lockout any members of the Union working under the jurisdiction of this Agreement prior to filing a complaint, dispute or grievance, or pending the resolution thereof as provided in Article XX hereof.

## Section 1.

No member of the Union shall leave the work of the Employer and no Employer shall lockout any member of the Union working under the jurisdiction of this Agreement, prior to filing a complaint, dispute or grievance, or pending the resolution thereof, as provided in Article XX hereof. There is no bar to picket lines or other concerted activity, including sympathy strikes, sanctioned by the Building Trades Council.

## Section 2.

The Union may call or sanction a strike for: (A) the Employer's refusal to submit a matter to the Joint Arbitration Board as defined in Article XX herein, pursuant to the arbitration Article of this Agreement, (B) the Employer's failure to comply with any decision of the Joint Arbitration Board established hereunder within five (5) working days after such decision, (C) the Employer's failure to resolve a claim, dispute or demand arising out of the Employer's fringe benefit contribution and audit obligations set forth in Article IX of the Agreement, (D) the Employer's failure to post and maintain a Payment Bond as provided by Article XXIV of this Agreement, and (E) any other reason provided for in this Agreement.

## Section 3.

When the Union, upon investigation, finds that the Tile Setters/Tile Finishers on any job are being paid less than the rate of wages prescribed in this Agreement, they shall, provided that three (3) days notice of the intention to remove the Tile Setters/Tile Finishers from a job is given to the Employer by the Union by certified mail, return receipt requested, be entitled to withdraw the Tile Setters/Tile Finishers from such job without first submitting the complaint to arbitration.

Thereafter, the Union shall resolve the complaint as provided for in Article XX of this Agreement. No damages of any kind or nature shall be awarded or allowed against the Union, or any officer or member thereof by reason of the withdrawal of members of the Union from a job for which a complaint has been filed as aforesaid provided the complaint is filed in good faith and has a reasonable basis in fact.

## ARTICLE XX
## Grievance-Arbitration

Section 1.

(A)  There shall be a Joint Arbitration Board consisting of four (4) members of the Union and four (4) members of the applicable Association. A quorum shall consist of three (3) members from either side. Each member of the Joint Arbitration Board present at a meeting shall have a single vote, provided, however, that if either the Union or the Association has only three members present, then the other side shall have no more than three (3) votes on that occasion.

(B)  With the express exception of fringe benefit contribution and payroll audit obligations, in the event a dispute arises in connection with the meaning, interpretation, or application of this Agreement, including but not limited to disputes regarding work rules, overtime, etc., such dispute shall be submitted for final and binding determination to the Joint Arbitration Board. If for any reason the Joint Arbitration Board is unable to act expeditiously they shall designate a substitute. The Joint Arbitration Board shall have all the powers granted to arbitrators pursuant to the Civil Practice Law and Rules of the State of New York and shall be authorized to compel the production of books and records involved in a dispute.

(C)  The Joint Arbitration Board shall proceed to hear and determine all charges and/or complaints referred by the Employer or Union provided no party to this Agreement shall be brought to trial before the Joint Arbitration Board unless in the first instance, a written charge and/or complaint be filed with the Secretary of the Greater New York and New Jersey Tile Contractors Association, Inc. or the Building Contractors Association of Atlantic County, Inc., if against the Employer, or with the Secretary of Local 7 if against the Union, and a copy thereof to be delivered in person or sent by certified mail, return receipt requested, to the Defendant. Unless for good cause shown, a hearing on such complaint or charge shall be held no earlier than forty-eight hours or no later than one (1) calendar week after receipt of such written charge or complaint.

(D)  If a charge is sustained by the Joint Arbitration Board against the Union or the Employer, the penalty imposed shall be determined solely by a majority vote of the Joint Arbitration Board. Should the Joint Arbitration Board fail to reach a

decision or deadlock, the matter shall be submitted, in writing, by either party to the American Arbitration Association in New York City for hearing and decision pursuant to its Labor Arbitration rules. The decision of the Impartial Arbitrator shall be final and binding upon all parties. Costs of the arbitration shall be borne equally by the parties.

(E) An Arbitrator selected to hear and determine any dispute arising under this Agreement shall have authority and jurisdiction only to interpret or apply the terms and conditions of this Agreement and shall be prohibited from adding to, subtracting from, or otherwise modifying or changing any term or condition thereof.

Section 2.

(A) The Union reserves the right to submit to arbitration any dispute regarding fringe benefit contributions and payroll audit obligations. However, neither this right, nor resort to arbitration over any such dispute, shall be deemed a waiver of the Union's right to resort to any other remedy provided by law, including the right to strike, or the right of the Union or the Funds to seek available remedies in Court. Resort to one (1) remedy at one (1) time shall not be deemed a waiver of the right to resort to others at a future or subsequent time. In the event an arbitration award favorable to the Union or fringe benefit Funds is rendered regarding delinquent fringe benefit contributions or payroll audit obligations, such decision and award shall contain a directive that the Employer pay damages, including but not limited to interest, back pay, injunctive relief, reasonable fees and penalties, arbitration fees per day for arbitration costs and expenses, plus reasonable attorneys' fees. In any proceeding to confirm an award of the Joint Arbitration Board, service may be made by registered or certified mail, return receipt requested within or without the State of New York, as the case may be.

(B) Any decision or award of the Joint Arbitration Board shall not be open to review, except upon presentation of new evidence mutually accepted as such by the Joint Arbitration Board, as justifying a re-opening of the case before the Joint Arbitration Board. A final award of the Joint Arbitration Board or the Arbitrator, if required, may be confirmed in a court of competent jurisdiction.

(C) Should an accused party fail to appear before a meeting of the Joint Arbitration Board, after being summoned by certified mail, return receipt requested without an excuse satisfactory to such Board, the charges presented shall then be considered as sustained upon a showing of a prima facie case by the charging party. In the event of a default, this shall not be a precedent with regard to any other contractor with regard to the interpretation or application of the Agreement.

Section 3.

Any member of the Associations or Union against whom a charge has been sustained for violating any of the Articles of this Agreement, and who fails to

comply with a decision of the Joint Arbitration Board, shall immediately be deprived of all privileges and benefits of this Agreement. Article XIX, Section 2 with respect to the notice provisions shall apply.

## Section 4.

Any Union member or member of any of the Associations, who preside on the Joint Arbitration Board and is directly involved in any case brought before the Joint Arbitration Board, shall withdraw from the Joint Arbitration Board until the case is settled and an alternate shall fill the temporary vacancy.

## ARTICLE XXI
## Clothing and Tools

## Section 1.

The Employer shall be responsible for supplying Tile Setters and Tile Finishers with hard hats, safety goggles, and ear protection which shall be considered part of a Tile Setters/Tile Finishers tools. The Employer shall be responsible for supplying Tile Setters only with Makita saws. Thereafter, the Tile Setters/Tile Finishers shall be responsible for their own gear.

## Section 2.

Tile Setters will be given their first (1st) Makita saw. Replacement saws will be supplied by the employee. The Employer will supply replacement blades.

## Section 3.

The Employer shall reimburse Tile Setters/Tile Finishers and Apprentices for the loss of clothing or tools or both, at the site of any operation where he is not able to collect the value of same from the Owner or Contractor, or due to fire or the forcible entry to the locker area and/or tool house. The Employer shall attempt to have a locker space made available on all job sites on every three (3) floors.

## Section 4.

All disputes regarding loss of clothing and/or tools by a Tile Setters /Tile Finishers or Apprentice, where the Tile Setter/Tile Finishers or Apprentice is not reimbursed by the Employer, shall be taken up by and considered by the Joint Arbitration Board.

## ARTICLE XXII
### International Masonry Institute

Section 1.

(A) The Masonry Industry in the United States and Canada has great and definable needs in the fields of apprenticeship and training, advertising and promotion, research and development, and labor/management relations which must be met if the industry is to grow and prosper. The parties to this Agreement believe that the International Masonry Institute (IMI) is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in these program areas in an effective manner and coordinating them through a single regional/international system.

(B) As contributions from this geographical area increase, IMI will be able to devote a portion of those monies to advertising and promotion, research and development, apprenticeship and training and labor/management relations programs directed specifically to this area.

(C) In this Agreement, the parties intend to take a step toward the overall objective by establishing a realistic level of support of the IMI.

## ARTICLE XXIII
### BACPAC and Local PAC Check-off

The Employer agrees to deduct an amount from the pay of each Employee who is a Union member and who executes a voluntary check-off authorization form for the Bricklayers and Allied Craftworkers Political Action Committee (BACPAC) and/or the Local PAC. Deductions shall be in the amount and at the intervals specified on the check-off form. The Employer agrees to transmit BACPAC deductions to the Treasurer of BACPAC in care of the Union or to the administrator of the local funds and to transmit Local PAC deductions to the Treasurer of Local PAC in care of the Union or to the administrator of the local funds.

The deduction shall continue for the life of this Agreement for those Employees who sign BACPAC and Local PAC forms unless they are revoked individually and in writing.

The Union shall submit to the Employer a fully executed BACPAC and Local PAC authorization form signed by Employee. Said authorization shall be accurately prepared showing the Employee's full name and social security number. The remittance to the Union shall be accompanied by a statement showing the name of each Employee and the number of hours each Employee has been paid. The Union shall defend, indemnify and save the Employer harmless against any and all

claims, demands, suits, disputes, grievances, or other forms of liability (including attorney's fees incurred by the Employer) that shall arise out of or by reason of the operation of this check-off clause or by reason of actions taken by the Employer pursuant to this clause.

## ARTICLE XXIV
## Payment Bonds

Section 1.

All Employer's shall post and maintain a payment bond, letter of credit or cash equivalent in the amount of twenty-five thousand dollars ($25,000.00) to insure payment of contributions to the fringe benefit Funds. The payment bond shall be provided upon execution of the Agreement. A bond shall be maintained for a reasonable period after termination of this Agreement to insure recovery of any delinquencies found by a close-out Employer.

Section 2.

All new Employer's and Out of Town Employer's without payment bonds must pay and maintain a security deposit of two (2) weeks in fringe benefit contributions for each worker on the job in advance *via* certified check and/or money order until such time as a new bond is obtained.

Section 3.

The Union will be responsible to monitor the payment bond requirements and present quarterly reports as to who has been signed as an independent Employer and that payment bonds naming the fringe benefit Funds are in place. The Trustees of the Funds will establish the terms of the payment bond, letter of credit or cash equivalent. The Associations' members will not be required to post more than twenty-five thousand dollars ($25,000.00) in payment bonds. Once it has been determined that an Employer cannot secure the requisite bond within a reasonable period of time, the Employer must pay weekly fringe benefit funds up front until such time as they become bondable to a limit of twenty-five thousand dollars ($25,000.00).

## ARTICLE XXV
## Work and Safety Methods

The Union shall be responsible to make sure that all Tile employees have been OSHA trained and certified and that they maintain that status current before they are assigned to work. All expenses pertaining to OSHA training shall be the responsibility of the Associations of New York and New Jersey.

Safety regulations as adopted by OSHA shall be adhered to by both parties to this Agreement.

### ARTICLE XXVI
### Promotion Fund

Each employer shall pay approximately five cents ($0.05) for each straight time hour of work to each of the Associations to promote the Tile Industry, to encourage and increase the use of tile by Architects, owners, general contractors, and the building industry in general and to foster the common interest and welfare of Employers and Employees engaged in the Tile Industry. The Industry Fund shall be administered by a Board of Trustees designated by the Greater New York and New Jersey Tile Contractors Association, Inc. The Board of Trustees shall have the authority to adopt such rules and regulations as may be necessary to the proper supervision and administration of the said Fund. Such rules and regulations shall be binding on each Employer. Of the approximate sum of five cents ($0.05) paid to the Fund, approximately one cent ($0.01) shall be allocated and paid over to the National Tile Contractors' Promotional Fund and approximately four cents ($0.04) shall be used for such other purposes, local or otherwise, as the Board of Trustees may decide upon, consistent with the objectives for which the Fund has been established. Tile Setters' Local Union No. 7 shall have the privilege of appointing a representative to attend meetings of the Board of Trustees at the invitation of the Board.

### ARTICLE XXVII
### Taft Hartley Benefit Funds

1. The Employer shall pay timely and proper contributions based on hours paid for covered work as per the current wage and benefit schedules, and also provide contribution receipts or records in accordance with this Agreement to all current benefit funds as well as their successors and assigns.

Failure to comply with these terms shall constitute a breach of this Agreement by the defaulting Employer, and the Union, on notice, reserves the right to forthwith withdraw its members from jobs of the Employer, or take such other action as it deems necessary, any terms of this Agreement to the contrary notwithstanding.

2. Payments to each Vacation Fund shall be deducted from each covered employee's wages after all taxes have been deducted by the Employer and shall be forwarded to the Vacation Fund as hereinafter provided. Vacation payments under this Article, or any other deduction from an employees pay, shall be considered the same as wage payments under the Agreement. Vacation Fund contributions shall be accrued to each covered employees' account.

3. The Employer shall pay for and provide all disability benefits coverage ("DBL") in accordance with the laws of the State of New York and New Jersey.

## ARTICLE XXVIII
## Employer Principals

No proprietor or partner of a firm, partnership or corporation who is the Employer herein, nor any person who is a stockholder, officer or director of a corporation or is in any way directly or indirectly (such as through a spouse or family member) financially interested in the Employer's business enterprise, or exercises either directly or indirectly any degree of ownership, management or control over the Employers, shall be permitted to work as a Tile Setter/Tile Finisher on any job. The job must be more than ten (10) team days.

## ARTICLE XXIX
## Validity

**Section 1.**

The Employers and the Union hereto shall be held by and subject to all provisions of this Agreement while it continues in force. It is further agreed by and between the parties hereto that if any Federal or State Court shall at any time decide that any clause or clauses of this Agreement is or are void or illegal, such decisions shall not invalidate the other portions of this Agreement, but such clause or clauses shall be stricken out and the remaining portion of this Agreement shall be considered binding between the parties hereto. Nothing contained in this Agreement shall be construed to prevent any one (1) or more individual Tile Setters/Tile Finishers from pursuing whatever civil or criminal remedies that they may have under the law for the collection of their wages, or any part thereof.

**Section 2.**

Any provisions of this Agreement hereinabove mentioned which provide for Union security or employment in a manner or to an extent prohibited by any law or the determination of any Governmental Board or Agency, shall be and hereby are of no force or effect during the term of any such prohibition. It is understood and agreed, however, that if any of the provisions of this Agreement which are hereby declared to be of no force or effect because of restrictions imposed by law is or are determined either by Act of Congress or other legislative enactment or by a decision of the Court of highest recourse to be legal or permissible, then any such provision of this Agreement shall immediately become and remain effective during the remainder of the term of this Agreement. The Union reserves the right to re-negotiate any of the provisions of this Agreement which may be of no force or effect.

## Section 3.

Any laws and rules of the International Union or the mandates of the Executive Board or any rules or regulations of the Tile Contractors Association of America which may be in conflict with the provisions contained in this Collective Bargaining Agreement shall be subordinated to this Agreement and the terms and conditions of this Agreement shall govern.

## ARTICLE XXX
### Most Favorable Employer

The Union agrees that in the event it enters into any contract with an Employer within the territorial jurisdiction of this Agreement, which shall provide more favorable terms to such Employer, including rates of pay or conditions of employment than are provided in this Agreement, it will and hereby does authorize each of the Associations to adopt such more favorable terms at its option. Upon exercise of such option by each of the Associations upon at least ten (10) day's written notice thereof to the Union, such more favorable terms and conditions will immediately and automatically become a part of this Agreement.

## ARTICLE XXXI
### Renewal

## Section 1.

Notice of any contemplated changes by either side shall be given in writing by the party contemplating such change or changes at least three (3) months prior to the expiration of this Agreement, and unless such notice is received within the time herein specified, this Agreement shall be considered binding until a new Agreement is signed.

## Section 2.

All notices, requests, demands and other communications which are required to be or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when delivered in person or after dispatch to certified mail, postage prepaid, return receipt requested, to the party to whom the same is so given or made, at the addresses set forth below, or at such other address as any party may specify by notice to all parties given as aforesaid.

ARTICLE XXXII
Retroactivity

It is mutually agreed that all wages, fringe benefit contributions, terms and conditions provided for in this Agreement shall be retroactive to June 2, 2003.

ARTICLE XXXIII
Term of Agreement

This Agreement shall be effective for the period of June 2, 2003 to June 5, 2006 between Local 7 and the Greater New York and New Jersey Tile Contractor's Association, Inc. This Agreement shall be effective for the period June 2, 2003 to June 5, 2008 between Local 7 and the Building Contractor's Association of Atlantic County, Inc.

ARTICLE XXXIV
Complete Arrangement

Section 1.

There are no representations, agreements, arrangements or understandings, oral or written, between the parties relating to the subject matter of this Agreement which are not fully expressed in this Agreement.

Section 2.

This Agreement supersedes all prior agreements and understandings between the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 3.

No provision of this Agreement shall be modified, amended or terminated, except by a writing specifically referring to this Agreement and signed by all of the parties hereto.

Section 4.

This Agreement constitutes the entire agreement between both parties and concludes all collective bargaining negotiations for the full term hereof and any automatic extensions and renewals thereof. It is agreed that all matters desired by any of the parties have been presented, discussed and incorporated herein or rejected.

## ARTICLE XXXV
### Benefit

This Agreement shall be binding upon and shall inure to the benefit to each party hereto, and any successor thereto resulting from a merger, consolidation or other reorganization or restructuring.

## ARTICLE XXXVI
### Effectuating Clause

The person signing on behalf of each Association and its affiliates hereby acknowledges by their signature receipt of copies of the Agreements and Declarations of Trust of the Tile Setters/Tile Finishers Funds. The person signing on behalf of each Association and its affiliates warrants and represents that they are duly authorized to bind the Associations and its affiliates to the terms and conditions of this collective bargaining agreement. Annexed and made a part hereof (as Attachment "B") is a listing of current affiliates as of the effective date indicated on the document for each of the Associations who are bound to these Agreements.

Form **W-9**
(Rev. January 2003)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

Give form to the
requester. Do not
send to the IRS.

See Specific Instructions on page 2.
Print or type

Name

Business name, if different from above

Check appropriate box:  ☐ Individual/ Sole proprietor   ☐ Corporation   ☐ Partnership   ☐ Other ▶ ................   ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note: *If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.*

Social security number

or

Employer identification number

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

Sign Here | Signature of U.S. person ▶

Date ▶

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

**Note:** *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**Foreign person.** If you are a foreign person, use the appropriate Form W-8 (see **Pub. 515,** Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

Cat. No. 10231X

Form **W-9** (Rev. 1-2003)

Effective Date: June 2, 2003

The Associations bind their affiliates herein now and thereafter during the term of this Agreement. Any Employer who performs work within the jurisdiction of both Employer Associations, must sign both sections indicated below. In addition, all Employers must provide their Federal Identification number as provided under IRS Form W-9, "Request for Taxpayer Identification Number and Certification" as annexed hereto.

GREATER NEW YORK
AND NEW JERSEY TILE
CONTRACTORS
ASSOCIATION, INC.:

Title/
Print name: Scott W. ERA?A
President

Title: Matthew A Messing
Print name/ treasurer

LOCAL UNION NO. 7:

CHARLES HILL,
President

JAMES BARTALONE,
Secretary/Treasurer

**************************************************************************

BUILDING CONTRACTORS
ASSOCIATION OF ATLANTIC
COUNTY, INC.:

Title:
Print name:

Title:
Print name:

LOCAL UNION NO.7:

CHARLES HILL,
President

JAMES BARTALONE,
Secretary/Treasurer

38

# EXHIBIT A

# TILE, MARBLE & TERRAZZO
## BAC LOCAL UNION No. 7
### OF
## NEW YORK & NEW JERSEY
45-34 Court Square
Long Island City, New York 11101
Phone: (718) 786-7648 Fax: (718) 472-2370

Charles Hill
President

James Bartalone
Secretary/Treasurer

WAGE ALLOCATIONS FOR COLLECTIVE BARGAINING AGREEMENT
JUNE 1, 2003 – JUNE 1, 2006
TILE SETTERS LOCAL #52NY
(FORMER LOCAL 52NY)

B∅

*NORTH OF RTE 33 NJ, 5 BOROUGHS OF N.Y.C., LONG ISLAND, WESTCHESTER, PUTNAM AND ORANGE COUNTIES

| EFFECTIVE DATE: | 6/1/2003 | 12/1/2003 | 6/1/2004 | 12/1/2004 | 6/1/2005 | 12/1/2005 |
|---|---|---|---|---|---|---|
| INCREASE DUE | 0.75 | 1.75 | 1.64 | 1.66 | 1.46 | 1.46 |
| HOURLY WAGES | 35.46 | 37.21 | 38.85 | 39.85 | 41.31 | 42.27 |
| VACATION | 1.14 | 1.84 | 2.43 | 2.43 | 2.43 | 2.43 |
| LOCAL DUES CHECK OFF | 1.22 | 1.25 | 1.28 | 1.30 | 1.33 | 1.36 |
| INT'L DUES CHECK OFF | 0.54 | 0.55 | 0.56 | 0.57 | 0.58 | 0.59 |
| B.A.C. P.A.C. | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 |
| LOCAL P.A.C. | 0.02 | 0.02 | 0.07 | 0.07 | 0.07 | 0.07 |
| DEFENSE FUND | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| BUILDING FUND | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |

THE DUES CHECK OFF, DEFENSE FUND, B.A.C. P.A.C., LOCAL P.A.C. BUILDING FUND AND VACATION ARE INCLUDED IN THE HOURLY WAGES. PLEASE DEDUCT AFTER TAXES

| FRINGE BENEFITS: | | | | | | |
|---|---|---|---|---|---|---|
| LOCAL PENSION | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 |
| INT'L PENSION | 1.50 | 1.50 | 1.50 | 1.50 | 1.50 | 2.00 |
| ANNUITY | 6.34 | 6.34 | 6.34 | 7.00 | 7.00 | 7.00 |
| WELFARE | 5.68 | 5.68 | 5.68 | 5.68 | 5.68 | 5.68 |
| PROMOTION | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| IMI | 0.35 | 0.35 | 0.35 | 0.35 | 0.35 | 0.35 |
| SUPPLEMENTAL | 2.00 | 2.00 | 2.00 | 2.00 | 2.00 | 2.00 |
| TOTAL FRINGE BENEFITS | 18.17 | 18.17 | 18.17 | 18.83 | 18.83 | 19.33 |
| TOTAL PACKAGE | 53.63 | 55.38 | 57.02 | 58.68 | 60.14 | 61.60 |

SATURDAYS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE.
SUNDAY AND HOLIDAYS ARE TO BE PAID AT THE DOUBLE TIME RATE.
MONDAY THROUGH FRIDAY AFTER 7 HOURS ARE TO BE PAID AT THE TIME AND ONE HALF RATE
SHIFT TIME IS TO BE PAID AT THE TIME AND ONE QUARTER RATE.
THE ANNUITY, VACATION, WELFARE, DEFENSE FUND, BAC PAC, LOCAL PAC AND SUPPLEMENTAL
UNEMPLOYMENT ARE BASED ON HOURS PAID.
THE PENSION, IMI AND PROMOTION ARE BASED ON HOURS WORKED.

PLEASE REMIT: VACATION, ANNUITY, WELFARE, LOCAL PAC, PROMOTION, DEFENSE FUND, BUILDING FUND AND
SUPPLEMENTAL UNEMPLOYMENT TO: DANIEL H. COOK ASSOC., INC., 253 WEST 35th STREET, 12th FLOOR, N.Y., N.Y.
10001.

PLEASE REMIT: IMI, INT'L PENSION AND BAC PAC BENEFITS TO:
INT'L UNION OF BRICKLAYERS PENSION FUND 815 FIFTEENTH STREET NW, DEPT. 0714, WASHINGTON, DC 20005.

# TILE, MARBLE & TERRAZZO
## BAC LOCAL UNION No. 7
### OF
## NEW YORK & NEW JERSEY
45-34 Court Square
Long Island City, New York 11101
Phone: (718) 786-7648 Fax: (718) 472-2370

Charles Hill
President

James Bartalone
Secretary/Treasurer

WAGE ALLOCATIONS FOR COLLECTIVE BARGAINING AGREEMENT
JUNE 1, 2003 – JUNE 1, 2006
TILE FINISHERS LOCAL #7
(FORMER LOCAL 88NY)

| EFFECTIVE DATE: | 6/1/2003 | 12/1/2003 | 6/1/2004 | 12/1/2004 | 6/1/2005 | 12/1/2005 |
|---|---|---|---|---|---|---|
| INCREASE DUE | 0.75 | 1.50 | 1.07 | 1.10 | 1.10 | 1.11 |
| HOURLY WAGES | 30.12 | 31.12 | 32.19 | 33.29 | 33.39 | 34.00 |
| VACATION | 2.19 | 2.19 | 2.19 | 2.19 | 2.19 | 2.19 |
| LOCAL DUES CHECK OFF | 1.02 | 1.04 | 1.06 | 1.08 | 1.10 | 1.12 |
| INT'L DUES CHECK OFF | 0.45 | 0.46 | 0.47 | 0.48 | 0.49 | 0.50 |
| B.A.C. P.A.C. | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 |
| LOCAL P.A.C. | 0.02 | 0.02 | 0.07 | 0.07 | 0.07 | 0.07 |
| DEFENSE FUND | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| BUILDING FUND | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |

* THE DUES CHECK OFF, DEFENSE FUND, B.A.C. P.A.C., LOCAL P.A.C. AND BUILDING FUND
ARE INCLUDED IN THE HOURLY WAGES. PLEASE DEDUCT AFTER TAXES

| FRINGE BENEFITS: | | | | | | |
|---|---|---|---|---|---|---|
| INT'L PENSION | 1.50 | 1.50 | 1.50 | 1.50 | 1.50 | 2.00 |
| ANNUITY | 6.00 | 6.00 | 6.00 | 6.00 | 7.00 | 7.00 |
| WELFARE | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 |
| PROMOTION | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| IMI | 0.35 | 0.35 | 0.35 | 0.35 | 0.35 | 0.35 |
| SUPPLEMENTAL | 2.00 | 2.00 | 2.00 | 2.00 | 2.00 | 2.00 |
| TOTAL FRINGE BENEFITS | 14.90 | 15.40 | 15.40 | 15.40 | 16.40 | 16.90 |
| TOTAL PACKAGE | 45.02 | 46.52 | 47.59 | 48.69 | 49.79 | 50.90 |

PLEASE NOTE:
SATURDAYS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE.
SUNDAY AND HOLIDAYS ARE TO BE PAID AT THE DOUBLE TIME RATE.
MONDAY THROUGH FRIDAY AFTER 7 HOURS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE
SHIFT TIME IS TO BE PAID AT THE TIME AND ONE QUARTER RATE.
THE ANNUITY, VACATION, WELFARE, DEFENSE FUND, BAC PAC, LOCAL PAC AND SUPPLEMENTAL
UNEMPLOYMENT ARE BASED ON HOURS PAID.
THE PENSION, IMI AND PROMOTION ARE BASED ON HOURS WORKED.

PLEASE REMIT: VACATION, ANNUITY, WELFARE, LOCAL PAC, PROMOTION, DEFENSE FUND, BUILDING FUND AND
SUPPLEMENTAL UNEMPLOYMENT TO: DANIEL H. COOK ASSOC., INC., 253 WEST 35th STREET, 12th FLOOR, N.Y., N.Y.
10001

PLEASE REMIT: IMI, INT'L PENSION AND BAC PAC BENEFITS TO:
INT'L UNION OF BRICKLAYERS PENSION FUND, 815 FIFTEENTH STREET NW, DEPT. 0714, WASHINGTON, DC 20005.

TILE, MARBLE & TERRAZZO
BAC LOCAL UNION No. 7
OF
NEW YORK & NEW JERSEY
45-34 Court Square
Long Island City, New York 11101
Phone: (718) 786-7648 Fax: (718) 472-2370

Charles Hill
President

James Bartalone
Secretary/Treasurer

WAGE ALLOCATIONS FOR COLLECTIVE BARGAINING AGREEMENT
JUNE 1, 2003 – JUNE 1, 2006
TILE FINISHERS LOCAL #7
(FORMER LOCAL 77NJ)

C1

NORTH OF RTE 33 N.J.

| EFFECTIVE DATE: | 6/1/2003 | 12/1/2003 | 6/1/2004 | 12/1/2004 | 6/1/2005 | 12/1/2005 |
|---|---|---|---|---|---|---|
| INCREASE DUE | 0.75 | 1.50 | 1.07 | 1.10 | 1.10 | 1.11 |
| HOURLY WAGES | 29.77 | 31.02 | 32.09 | 33.19 | 33.29 | 33.90 |
| VACATION | 1.50 | 1.50 | 2.00 | 2.00 | 2.00 | 2.00 |
| LOCAL DUES CHECK OFF | 1.01 | 1.05 | 1.07 | 1.10 | 1.12 | 1.15 |
| INT'L DUES CHECK OFF | 0.45 | 0.47 | 0.48 | 0.49 | 0.50 | 0.51 |
| B.A.C. P.A.C. | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 |
| LOCAL P.A.C. | 0.02 | 0.02 | 0.07 | 0.07 | 0.07 | 0.07 |
| DEFENSE FUND | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| BUILDING FUND | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |

THE DUES CHECK OFF, DEFENSE FUND, B.A.C. P.A.C., LOCAL P.A.C. BUILDING FUND ARE INCLUDED IN THE HOURLY
WAGES. PLEASE DEDUCT AFTER TAXES

| FRINGE BENEFITS. | | | | | | |
|---|---|---|---|---|---|---|
| LOCAL PENSION | 6.00 | 6.00 | 6.00 | 6.00 | 6.00 | 6.00 |
| INT'L PENSION | 1.50 | 1.50 | 1.50 | 1.50 | 1.50 | 2.00 |
| ANNUITY | 0.00 | 0.00 | 0.00 | 0.00 | 1.00 | 1.00 |
| WELFARE | 5.25 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 |
| PROMOTION | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| IMI | 0.45 | 0.45 | 0.45 | 0.45 | 0.45 | 0.45 |
| SUPPLEMENTAL | 2.00 | 2.00 | 2.00 | 2.00 | 2.00 | 2.00 |
| TOTAL FRINGE BENEFITS | 15.25 | 15.50 | 15.50 | 15.50 | 16.50 | 17.00 |
| TOTAL PACKAGE | 45.02 | 46.52 | 47.59 | 48.69 | 49.79 | 50.90 |

PLEASE NOTE:
SATURDAYS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE.
SUNDAY AND HOLIDAYS ARE TO BE PAID AT THE DOUBLE TIME RATE.
MONDAY THROUGH FRIDAY AFTER 7 HOURS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE
THE ANNUITY, VACATION, WELFARE, DEFENSE FUND, BAC PAC, LOCAL PAC AND SUPPLEMENTAL
UNEMPLOYMENT ARE BASED ON HOURS PAID.
THE PENSION, IMI AND PROMOTION ARE BASED ON HOURS WORKED.

PLEASE REMIT: VACATION, ANNUITY, WELFARE, LOCAL PAC, PROMOTION, DEFENSE FUND, BUILDING FUND AND
SUPPLEMENTAL UNEMPLOYMENT TO: DANIEL H. COOK ASSOC., INC., 253 WEST 35th STREET, 12th FLOOR, N.Y., N.Y.
10001

PLEASE REMIT: IMI, INT'L PENSION AND BAC PAC BENEFITS TO:
INT'L UNION OF BRICKLAYERS PENSION FUND 815 FIFTEENTH STREET NW, DEPT. 0714, WASHINGTON, DC 20005.

Local 52 Article X -Residential and Other Reduced Rates     B3

| EFFECTIVE DATES | 6/1/2003 | 12/1/2003 | 6/1/2004 | 12/1/2004 | 6/1/2005 | 12/1/20005 |
|---|---|---|---|---|---|---|
| INCREASE DUE | 0.49 | 1.14 | 1.07 | 1.08 | 0.95 | 0.95 |
| HOURLY RAGES | 23.05 | 24.19 | 25.25 | 25.90 | 26.85 | 27.48 |
| VACATION | 0.74 | 1.20 | 1.58 | 1.58 | 1.58 | 1.58 |
| LOCAL DUES CHECK OFF | 0.79 | 0.81 | 0.83 | 0.85 | 0.86 | 0.88 |
| INT'L DUES CHECK OFF | 0.35 | 0.36 | 0.36 | 0.37 | 0.38 | 0.38 |
| B.A.C.P.A.C. | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 |
| LOCAL P.A.C. | 0.01 | 0.01 | 0.05 | 0.05 | 0.05 | 0.05 |
| DEFENSE FUND | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 |
| BUILDING FUND | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |

THE DUES CHECK OFF, DEFENSE FUND, B.A.C.P.A.C., LOCAL P.A.C., BUILDING FUND AND
VACATION ARE TO BE INCLUDED IN THE HOURLY WAGES, PLEASE DEDUCT AFTER TAXES

| FRINGE BENEFITS: | | | | | | |
|---|---|---|---|---|---|---|
| LOCAL PENSION | 1.46 | 1.46 | 1.46 | 1.46 | 1.46 | 1.46 |
| INT'L PENSION | 0.98 | 0.98 | 0.98 | 0.98 | 0.98 | 1.30 |
| ANNUITY | 4.12 | 4.12 | 4.12 | 4.55 | 4.55 | 4.55 |
| WELFARE | 5.68 | 5.68 | 5.68 | 5.68 | 5.68 | 5.68 |
| PROMOTION | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| IMI | 0.23 | 0.23 | 0.23 | 0.23 | 0.23 | 0.23 |
| SUPPLEMENTAL | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 | 1.30 |
| TOTAL FRINGE BENEFITS | 13.82 | 13.82 | 13.82 | 14.25 | 14.25 | 14.57 |
| TOTAL PACKAGE | 36.87 | 38.00 | 39.07 | 40.15 | 41.10 | 42.05 |

PLEASE NOTE:
SATURDAYS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE.
SUNDAY AND HOLIDAYS ARE TO BE PAID AT THE DOUBLE TIME RATE.
MONDAY THROUGH FRIDAY AFTER 7 HOURS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE.
SHIFT TIME IS TO BE PAID AT THE TIME AND ONE QUARTER RATE.
THE ANNUITY, VACATION, WELFARE, DEFENSE FUND, B.A.C.P.A.C., LOCAL P.A.C. AND SUPPLEMENTAL
UNEMPLOYMENT ARE BASED ON HOURS PAID.
THE PENSION, IMI AND PROMOTION ARE BASED ON HOURS WORKED.

PLEASE REMIT: VACATION, ANNUITY, WELFARE, LOCAL P.A.C., PROMOTION, DEFENSE FUND,
BUILDING FUND AND SUPPLEMENTAL UNEMPLOYMENT TO: DANIEL H. COOK & ASSOC. INC.,
253 WEST 35TH STREET, 12TH FLOOR, NEW YORK, NY 10001.

PLEASE REMIT: IMI, INT'L PENSION AND B.A.C. P.A.C. BENEFITS TO:
INT'L UNION OF BRICKLAYERS PENSION FUND, 815 FIFTEENTH STREET NW,
DEPT. 0714, WASHINGTON, DC 20005.

Local 88 Article X-Residential and Other Reduced Rates    C3

| EFFECTIVE DATES | 6/1/2003 | 12/1/2003 | 6/1/2004 | 12/1/2004 | 6/1/2005 | 12/1/20005 |
|---|---|---|---|---|---|---|
| INCREASE DUE | 0.38 | 0.75 | 0.535 | 0.55 | 0.55 | 0.56 |
| HOURLY RAGES | 14.89 | 15.51 | 16.095 | 16.65 | 16.70 | 17.00 |
| VACATION | 0.75 | 0.75 | 1.085 | 1.09 | 1.09 | 1.09 |
| LOCAL DUES CHECK OFF | 0.51 | 0.53 | 0.530 | 0.54 | 0.55 | 0.56 |
| INT'L DUES CHECK OFF | 0.23 | 0.24 | 0.235 | 0.24 | 0.25 | 0.25 |
| B.A.C.P.A.C. | 0.02 | 0.02 | 0.015 | 0.02 | 0.02 | 0.02 |
| LOCAL P.A.C. | 0.01 | 0.01 | 0.035 | 0.04 | 0.04 | 0.04 |
| DEFENSE FUND | 0.03 | 0.03 | 0.025 | 0.03 | 0.03 | 0.03 |
| BUILDING FUND | 0.10 | 0.10 | 0.100 | 0.10 | 0.10 | 0.10 |

THE DUES CHECK OFF, DEFENSE FUND, B.A.C.P.A.C., LOCAL P.A.C., BUILDING FUND AND
VACATION ARE TO BE INCLUDED IN THE HOURLY WAGES, PLEASE DEDUCT AFTER TAXES

| FRINGE BENEFITS: | | | | | | |
|---|---|---|---|---|---|---|
| INT'L PENSION | 0.75 | 0.75 | 0.75 | 0.75 | 0.75 | 1.00 |
| ANNUITY | 3.00 | 3.00 | 3.00 | 3.00 | 3.50 | 3.50 |
| WELFARE | 5.00 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 |
| PROMOTION | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| IMI | 0.18 | 0.18 | 0.18 | 0.18 | 0.18 | 0.18 |
| SUPPLEMENTAL | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| TOTAL FRINGE BENEFITS | 9.98 | 10.48 | 10.48 | 10.48 | 10.98 | 11.23 |
| TOTAL PACKAGE | 25.04 | 26.04 | 26.57 | 27.12 | 27.67 | 28.23 |

PLEASE NOTE:
SATURDAYS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE.
SUNDAY AND HOLIDAYS ARE TO BE PAID AT THE DOUBLE TIME RATE.
MONDAY THROUGH FRIDAY AFTER 7 HOURS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE.
SHIFT TIME IS TO BE PAID AT THE TIME AND ONE QUARTER RATE.
THE ANNUITY, VACATION, WELFARE, DEFENSE FUND, B.A.C.P.A.C., LOCAL P.A.C. AND
SUPPLEMENTAL
UNEMPLOYMENT ARE BASED ON HOURS PAID.
THE PENSION, IMI AND PROMOTION ARE BASED ON HOURS WORKED.

PLEASE REMIT: VACATION, ANNUITY, WELFARE, LOCAL P.A.C., PROMOTION, DEFENSE FUND,
BUILDING FUND AND SUPPLEMENTAL UNEMPLOYMENT TO: DANIEL H. COOK & ASSOC. INC.,
253 WEST 35TH STREET, 12TH FLOOR, NEW YORK, NY 10001.

PLEASE REMIT: IMI, INT'L PENSION AND B.A.C. P.A.C. BENEFITS TO:
INT'L UNION OF BRICKLAYERS PENSION FUND, 815 FIFTEENTH STREET NW,
DEPT. 0714, WASHINGTON, DC 20005.

Local 77 North of Rt. 33 Article X-Residential and Other Reduced Rates    C+

| EFFECTIVE DATES | 6/1/2003 | 12/1/2003 | 6/1/2004 | 12/1/2004 | 6/1/2005 | 12/1/20005 |
|---|---|---|---|---|---|---|
| INCREASE DUE | 0.38 | 0.75 | 0.54 | 0.55 | 0.55 | 0.56 |
| HOURLY RAGES | 14.89 | 15.51 | 16.05 | 16.60 | 16.65 | 16.95 |
| VACATION | 0.75 | 0.75 | 1.00 | 1.00 | 1.00 | 1.00 |
| LOCAL DUES CHECK OFF | 0.51 | 0.53 | 0.54 | 0.55 | 0.56 | 0.58 |
| INT'L DUES CHECK OFF | 0.23 | 0.24 | 0.24 | 0.25 | 0.25 | 0.26 |
| B.A.C.P.A.C. | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 |
| LOCAL P.A.C. | 0.01 | 0.01 | 0.04 | 0.04 | 0.04 | 0.04 |
| DEFENSE FUND | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 |
| BUILDING FUND | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |

THE DUES CHECK OFF, DEFENSE FUND, B.A.C.P.A.C., LOCAL P.A.C., BUILDING FUND AND VACATION ARE TO BE INCLUDED IN THE HOURLY WAGES, PLEASE DEDUCT AFTER TAXES

| FRINGE BENEFITS: | | | | | | |
|---|---|---|---|---|---|---|
| LOCAL PENSION | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 |
| INT'L PENSION | 0.75 | 0.75 | 0.75 | 0.75 | 0.75 | 1.00 |
| ANNUITY | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.50 |
| WELFARE | 5.25 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 |
| PROMOTION | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| IMI | 0.23 | 0.23 | 0.23 | 0.23 | 0.23 | 0.23 |
| SUPPLEMENTAL | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| TOTAL FRINGE BENEFITS | 10.28 | 10.53 | 10.53 | 10.53 | 11.03 | 11.28 |
| TOTAL PACKAGE | 25.16 | 26.04 | 26.57 | 27.12 | 27.67 | 28.23 |

PLEASE NOTE:
SATURDAYS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE.
SUNDAY AND HOLIDAYS ARE TO BE PAID AT THE DOUBLE TIME RATE.
MONDAY THROUGH FRIDAY AFTER 7 HOURS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE.
SHIFT TIME IS TO BE PAID AT THE TIME AND ONE QUARTER RATE.
THE ANNUITY, VACATION, WELFARE, DEFENSE FUND, B.A.C.P.A.C., LOCAL P.A.C. AND SUPPLEMENTAL
UNEMPLOYMENT ARE BASED ON HOURS PAID.
THE PENSION, IMI AND PROMOTION ARE BASED ON HOURS WORKED.

PLEASE REMIT: VACATION, ANNUITY, WELFARE, LOCAL P.A.C., PROMOTION, DEFENSE FUND, BUILDING FUND AND SUPPLEMENTAL UNEMPLOYMENT TO: DANIEL H. COOK & ASSOC. INC., 253 WEST 35TH STREET, 12TH FLOOR, NEW YORK, NY 10001.

PLEASE REMIT: IMI, INT'L PENSION AND B.A.C. P.A.C. BENEFITS TO: INT'L UNION OF BRICKLAYERS PENSION FUND, 815 FIFTEENTH STREET NW, DEPT. 0714, WASHINGTON, DC 20005.

TILE, MARBLE & TERRAZZO BAC LOCAL UNION NO. 7 OF NEW YORK & NEW JERSEY
45-34 COURT SQUARE
LONG ISLAND CITY, NEW YORK 11101

WAGE ALLOCATIONS FOR COLLECTIVE BARGAINING AGREEMENT
NOVEMBER 1, 2004 – NOVEMBER 1, 2007
SOUTHERN N.J. TILE SETTER LOCAL #52

*INCLUDES COUNTIES SOUTH OF ROUTE 33 N.J. COUNTIES OF OCEAN, BURLINGTON, ATLANTIC CITY, CAPE MAY, CUMBERLAND, CAMDEN, GLOUSTER, SALEM, AND MONMOUTH.

| EFFECTIVE DATE | 5/15/2003 | 11/1/2003 | 5/1/2004 | 11/1/2004 | 5/1/2005 | 11/1/2005 | 5/1/2006 | 11/1/2006 | 5/1/2007 | 11/1/2007 |
|---|---|---|---|---|---|---|---|---|---|---|
| HOURLY WAGES | 31.61 | 32.74 | 33.87 | 33.91 | 35.04 | 35.67 | 36.80 | 37.43 | 38.00 | 39.13 |
| LOCAL DUES CHECK OFF | 1.05 | 1.08 | 1.11 | 1.14 | 1.17 | 1.20 | 1.23 | 1.26 | 1.29 | 1.32 |
| INT'L DUES CHECK OFF | 0.46 | 0.47 | 0.48 | 0.49 | 0.5 | 0.51 | 0.52 | 0.53 | 0.54 | 0.55 |
| DEFENSE FUND | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| VACATION | 0.00 | 1.09 | 1.09 | 1.09 | 1.09 | 1.09 | 1.09 | 1.68 | 1.68 | 1.68 |
| B.A.C. P.A.C. | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 |
| LOCAL P.A.C. | 0.02 | 0.02 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| BUILDING FUND | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |

LOCAL PAC + VACATION

* THE DUES CHECK OFF, DEFENSE FUND, B.A.C. P.A.C. AND BUILDING FUND ARE INCLUDED
IN THE HOURLY WAGES. PLEASE DEDUCT AFTER TAXES

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| LOCAL PENSION | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 |
| INT'L PENSION | 1.50 | 1.50 | 1.50 | 1.50 | 1.50 | 2.00 | 2.00 | 2.00 | 2.00 | 2.00 |
| ANNUITY | 5.00 | 5.00 | 5.00 | 6.09 | 6.09 | 6.09 | 6.09 | 6.59 | 7.15 | 7.15 |
| WELFARE | 5.68 | 5.68 | 5.68 | 5.68 | 5.68 | 5.68 | 5.68 | 5.68 | 5.68 | 5.68 |
| PROMOTION | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| IMI | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 | 0.40 |
| TOTAL FRINGE BENEFITS | 14.88 | 14.88 | 14.88 | 15.97 | 15.97 | 16.47 | 16.47 | 16.97 | 17.53 | 17.53 |
| TOTAL PACKAGE | 46.49 | 47.62 | 48.75 | 49.88 | 51.01 | 52.14 | 53.27 | 54.4 | 55.53 | 56.66 |

PLEASE NOTE:
SATURDAYS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE.
SUNDAY AND HOLIDAYS ARE TO BE PAID AT THE DOUBLE TIME RATE.
MONDAY THROUGH FRIDAY AFTER 7 HOURS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE
THE ANNUITY, VACATION, WELFARE, DEFENSE FUND, BAC PAC, LOCAL PAC AND SUPPLEMENTAL UNEMPLOYMENT ARE BASED ON HOURS PAID.
THE PENSION, IMI AND PROMOTION ARE BASED ON HOURS WORKED.
PLEASE REMIT: VACATION, ANNUITY, WELFARE, LOCAL PAC, PROMOTION, DEFENSE FUND, BUILDING FUND AND SUPPLEMENTAL UNEMPLOYMENT
TO: DANIEL H. COOK ASSOC., INC., 253 WEST 35th STREET, 12th FLOOR, N.Y., N.Y. 10001
PLEASE REMIT: IMI, INT'L PENSION AND BAC PAC BENEFITS TO:
INT'L UNION OF BRICKLAYERS PENSION FUND, 815 FIFTEENTH STREET NW, DEPT. 0714, WASHINGTON, DC 20005.

**TILE, MARBLE & TERRAZZO BAC LOCAL UNION NO. 7 OF NEW YORK & NEW JERSEY**
**45-34 COURT SQUARE**
**LONG ISLAND CITY, NEW YORK 11101**

CHARLES HILL
PRESIDENT

JAMES BARTALONE
SECRETARY/TREASURER

WAGE ALLOCATIONS FOR COLLECTIVE BARGAINING AGREEMENT
MAY 15, 2003 - NOVEMBER 1, 2007
SOUTHERN N.J. TILE FINISHERS
(FORMER LOCAL 77 N.J.)

COUNTIES OF BURLINGTON, ATLANTIC CITY, CAPE MAY, CUMBERLAND, CAMDEN, GLOUSTER, SALEM AND SOUTH OF ROUTE 33 IN MONMOUTH.

| EFFECTIVE DATE | 5/15/2003 | 11/1/2003 | 5/1/2004 | 11/1/2004 | 5/1/2005 | 11/1/2005 | 5/1/2006 | 11/1/2006 | 5/1/2007 | 11/1/2007 |
|---|---|---|---|---|---|---|---|---|---|---|
| HOURLY WAGES | 28.93 | 28.96 | 29.91 | 29.99 | 30.99 | 31.99 | 32.99 | 33.49 | 34.49 | 35.49 |
| VACATION | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.50 | 1.50 | 1.50 | 2.00 |
| LOCAL DUES CHECK OFF | 0.92 | 0.94 | 0.96 | 0.98 | 1.00 | 1.02 | 1.04 | 1.06 | 1.08 | 1.10 |
| INT'L DUES CHECK OFF | 0.41 | 0.42 | 0.43 | 0.44 | 0.45 | 0.46 | 0.47 | 0.48 | 0.49 | 0.50 |
| B.A.C. P.A.C. | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 | 0.03 |
| LOCAL P.A.C. | 0.02 | 0.02 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 | 0.07 |
| DEFENSE FUND | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| BUILDING FUND | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |

THE DUES CHECK OFF, DEFENSE FUND, B.A.C. P.A.C., LOCAL P.A.C. AND BUILDING FUND
ARE INCLUDED IN THE HOURLY WAGES. PLEASE DEDUCT AFTER TAXES

| INT'L PENSION | 1.50 | 1.50 | 1.50 | 2.00 | 2.00 | 2.00 | 2.00 | 2.50 | 2.50 | 2.50 |
|---|---|---|---|---|---|---|---|---|---|---|
| LOCAL PENSION | 4.99 | 4.99 | 4.99 | 4.99 | 4.99 | 4.99 | 4.99 | 4.99 | 4.99 | 4.99 |
| ANNUITY | 0.00 | 0.72 | 0.72 | 1.19 | 1.19 | 1.19 | 1.19 | 1.19 | 1.19 | 1.19 |
| WELFARE | 5.25 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 |
| PROMOTION | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| IMI | 0.45 | 0.45 | 0.45 | 0.45 | 0.45 | 0.45 | 0.45 | 0.45 | 0.45 | 0.45 |
| TOTAL FRINGE BENEFITS | 12.24 | 13.21 | 13.21 | 14.18 | 14.18 | 14.18 | 14.18 | 14.68 | 14.68 | 14.68 |
| TOTAL PACKAGE | 41.17 | 42.17 | 43.12 | 44.17 | 45.17 | 46.17 | 47.17 | 48.17 | 49.17 | 50.17 |

PLEASE NOTE:
SATURDAYS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE
SUNDAY AND HOLIDAYS ARE TO BE PAID AT THE DOUBLE TIME RATE.
MONDAY THROUGH FRIDAY AFTER 7 HOURS ARE TO BE PAID AT THE TIME AND ONE-HALF RATE
THE ANNUITY, VACATION, WELFARE, DEFENSE FUND, BAC PAC, LOCAL PAC AND SUPPLEMENTAL
UNEMPLOYMENT ARE BASED ON HOURS PAID.
THE PENSION, IMI AND PROMOTION ARE BASED ON HOURS WORKED.
PLEASE REMIT: VACATION, ANNUITY, WELFARE, LOCAL PAC, PROMOTION, DEFENSE FUND, BUILDING FUND AND
SUPPLEMENTAL UNEMPLOYMENT TO: DANIEL H. COOK ASSOC., INC., 253 WEST 35th STREET, 12th FLOOR, N.Y., N.Y. 10001
PLEASE REMIT IMI, INT'L PENSION AND BAC PAC BENEFITS TO:
INT'L UNION OF BRICKLAYERS PENSION FUND, 815 FIFTEENTH STREET NW, DEPT 0714, WASHINGTON, DC 20005

# EXHIBIT B

# LIST OF CURRENT

# AFFILIATES    OF

# THE ASSOCIATIONS

**New York**

Amarko Marble & Granite
60-14 60th Place
Maspeth, New York 11373
Mark England
Office:(718) 821-0323
Fax: (718) 821-0447

Astro Tile Co., Inc.
780 Broadway Avenue, Suite 3
Holbrook, New York 11741-4906
Matthew Messina
Office: (631) 218-0400
Fax: (631) 213-3718

Baybrant Tile Corp.
1637 Sycamore Avenue
Bohemia, New York 11716
Richard Hoshino
Office:  (631) 563-4500
Fax:  (631) 563-1764

G.M. Crocetti, Inc.
3960 Merrit Avenue
Bronx, New York 10456
Jim Anastasi
Arthur Cavazzi
Office: (718) 994-0900
Fax: (718) 904-0036

Goal Enterprises, Inc.
38-21 54th Street
Woodside, New York 11377
Mary Zinnard
Albert Luisa
Office: (718) 335-4625
Fax: (718) 899-7238

Interior Design Flooring Corp.
251 East 137th Street
Bronx, New York 10451
Ben Cohen
Office:(718) 665-0753
Fax: (718) 665-5652

Navillus Tile, Inc.
53-18 11th Street
Long Island City, NY 11101
Kevin O'Sullivan
Office: (718) 784-0500
Fax: (718) 784-7354

Port Morris Tile & Marble Corp.
1285 Oak Point Avenue
Bronx, New York 10174
Vincent P. Delazzero II
Office: (718) 378-6100
Fax: (718) 328-1074

W.M. Erath & Son, Inc.
4 Reith Street
Copiague, New York 11726
Scott W. Erath
Office: (631) 842-2244
Fax: (631) 842-0998

**New Jersey**
Artisian Tile & Marble Co. of NJ, Inc.
468 Elizabeth Avenue
Somerset, New Jersey 08873-5200
John Sekora
Matthew Sekora
Office: (732) 764-6700
Fax: (732) 764-6767

Joseph W. Curvino, Inc.
431 Center Street
Fort Lee, New Jersey 07024
Joseph Curvino, Jr.
Office: (201) 944-9262
Fax: (201) 461-0383

Del Turco Brothers, Inc.
25 Verona Avenue
Newark, New Jersey 07104
Bruce Del Turco
Office: (973) 483-5770
Fax: (973) 483-5773

Giacomelli Tile, Inc.
213 7th Street
Fairview, Jew Jersey 07022
Warren Giacomelli
Office: (201) 945-7689
Fax: (201) 767-1864

KrisStone, LLC
472 E. Westfield Ave
Roselle Park, New Jersey 07204
Michael Kriss
Office: (908) 620-9700
Fax: (908) 620-9764

Sesso Custom Tile, Inc.
P.O. Box 2067
West Paterson, New Jersey 07024
Ernie Sesso
Office: (973) 278-5270
Fax: (973) 523-2016

A.C. Flooring, Inc.
P.O. Box 386
Ramsey, New Jersey 07446
Angelo Carapezza
Office: (201) 512-9229
Fax: (201) 512-1150

Thorobred Flooring, Inc.
25 S. Cedarbrook Rd.
P.O. Box 286
Cedarbrook, New Jersey 08018
Steven Furglone
David Falcone
Office: (609) 567-6440
Fax:  (609) 567-6447

V.A.L. Floors, Inc.
4200 West Side Ave.
North Bergen, New Jersey 08918
Philip Luppino
Vito Luppino
Office: (201) 617-7900
Fax: (201) 617-0508

**Connecticut**
Tiffany Marble & Ceramic Co., Inc.
48 Andwood Road
Stanford, CT 06902
Nathaniel J. Recikles
Office: (203) 325-2706
Fax: (203) 323-9262

**Effective Date:  4/1/04**

# EXHIBIT C

# RIDER TO AGREEMENT

## For South Jersey Only-South of Route 33:
### (Effective June 2, 2003 through June 5, 2008)

1. The undersigned independent employer acknowledges that they have read the Agreement between the Greater New York and New Jersey Tile Contractors Association, Inc. and the Building Contractors Association of Atlantic County, Inc. (hereinafter the "Association") and the Tile Setters and Tile Finishers Union of New York and New Jersey of the International Union of Bricklayers and Allied Craftsmen, Local Union No. 7 (hereinafter the "Union"). The jurisdiction of this Agreement covers New York City, the State of New Jersey, Long Island, and the following upstate counties in the State of New York: Westchester, Rockland, Putnam, Orange, Sullivan, Dutchess and Ulster as set forth in the foregoing pages of said Collective Bargaining Agreement of which the independent employer acknowledges they have received. The independent employer agrees to abide and be absolutely bound by such Agreement or any modifications or amendments that may be executed between the above parties during the term of said Agreement. The undersigned is affixing their signature in a dual capacity both on behalf of themselves and on behalf of the independent employer and represents by their signature their authority to bind the firm, the principals and members thereof, as well as themselves.

2. This Agreement shall be effective for the period June 2, 2003 to June 5, 2006 for the Greater New York and New Jersey Tile Contractors Association, Inc. and for the period June 2, 2003 to June 5, 2008 for the Building Contractor's Association of Atlantic County, Inc. This Agreement and any amendments hereto shall automatically renew itself and continue in full force and effect from year to year unless written notice of election to terminate or modify any provision of this Agreement is given by one party by registered or certified mail, return receipt requested, and received by the other not later than March 30, 2006 or March 31st of any succeeding year. The Union shall maintain a list of Employer signatories to the collective bargaining agreement and agrees to supply the Associations with a copy of the current list of Employer signatories to the collective bargaining agreement on signing of the contract and as additional signatories are added.

3. Eight (8) hours will constitute a regular day's work. For those employees governed by an eight (8) hour day, the following rules shall apply:

   (A) Regular working hours are Monday through Friday from 8:00 A.M. to 12:00 noon and from 12:30 P.M. to 4:30 P.M. When a specific job requires a 9:00 A.M. starting time, the regular eight (8) hours are Monday through Friday from 9:00 A.M. to 1:00 P.M., and from 1:30 P.M. to 5:30 P.M.

   (B) No work is to be done or paid for between the hours of 7:00 A.M. and 8:00 A.M. or 3:30 P.M. to 4:30 P.M. except in an emergency. When no emergency is

involved, a starting time of 7:00 A.M. and ending at 3:30 p.m. for the normal workday for a specific job will be approved by the Union based on the Employer providing evidence of this requirement.

(C) Should a Tile Setter/Tile Finisher leave a job by his own volition before 12:00 noon or before 4:30 P.M., his pay for that day shall be proportionately reduced. The Employer must deduct the proportioned hourly amount from such employee's pay for that day.

(D) Tile Setter/Tile Finishers may be laid off as of 12:00 noon or 4:30 P.M. When laid off, a Tile Setter/ Tile Finisher shall be notified of such action no later than one (1) hour before the time of such lay off and paid in full not later than one-half (1/2) hour before quitting time. Failure of the Employer to notify the Tile Setter/Tile Finisher of lay off and to pay wages in full as herein prescribed, will obligate the Employer to continue the Tile Setter/Tile Finishers in his employ another one-half (1/2) day or to pay the equivalent in waiting time be it 12:00 noon or 4:30 P.M.

(E) Any Finisher who is sent to a job to work and is not ready solely because of the Employer's fault shall be paid one-half (1/2) day's pay.

(F) No Tile Setter/Tile Finisher shall be required to report to the Shop after regular working hours or before 7:30 A.M.

4. Instead of the Holidays specified in Article XII, Section 1, of the general agreement, Holidays shall be: New Year's Day, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, Christmas Day.

5. Shift work at time and one-half (1½) times the wage rate will be available to contractors for work that must be performed off hours (such as malls and stores).

6. Starting time will be at 7:00 A.M., 8:00 A.M or 9:00 A.M., as required by job conditions.

7. The Joint Arbitration Board will consist of two (2) representatives of the Association and two (2) representatives of the Union.

8. The jurisdiction of the Tile Setters and Tile Finishers will encompass the jurisdiction of the Tile, Marble and Terrazzo Union and South Jersey.

9. With respect to staffing, the ratio of Setters to Finishers shall be one (1) Setter to one (1) Finisher on all work.

10. Working Conditions specified in Article III: With respect to the grouting of all epoxy, the Tile Finishers and Setters who do the grouting shall be paid ten

dollars ($10.00) additional for each day's work for such grouting. There will be no restrictions on production for such work.

11.    Employment and Hiring Procedures:

Section 1.
(A)    As to the Tile Setters, with the exception of thin set and mastic jobs, it is agreed that on all jobs the Employer shall elect (exclusive of any non-working foreman) the first two (2) Tile Setters required and the Union shall designate, the next two (2) Tile Setters. Thereafter, if more Tile Setters are required, the distribution shall be one (1) from the Employer and one (1) Tile Setter referred by the Union, making the total number of days work equal as the job progresses. On thin set and mastic jobs, the Employer shall select the first (1st) Tile Setter required exclusive of non-working foremen and the Union shall select the second (2nd) Tile Setter. The Employer shall select the third (3rd) Tile Setter and the Union shall select the forth (4th) Tile Setter on such jobs. The selection of all additional Tile Setters required thereafter shall alternate on a one-to-one basis between the Employer and the Union. Both parties agree that the Employer shall have the right to determine the number of Tile Mechanics to be employed on any job. Both parties further agree it is the right of any Employer to discharge any Tile Setter that in his opinion is unsatisfactory.

(B) The above is interpreted to mean that, when any job is fifty percent (50%) completed, Tile Setters referred through the Union shall have an equal number of days with the Tile Setters selected by the Employer; and if not, the Union shall have the right to stop the job in question until such time as the Employer makes arrangements to the Union's satisfaction, to complete the job with an equal number of days for both sides.

(C) This interpretation does not apply to one (1) employee jobs. To settle any dispute or difference of opinion as to a one (1) employee job, the Employer, when sending notice of execution of contract, as provided for herein, shall state on such notice that such job will only require one (1) Tile Setter to complete the work. This will give the Business Agent time to visit the job before the work is started, and, if the Business Agent disagrees with the Employer, the Business Agent shall so advise the Employer, and if they cannot agree, the matter is to be referred to the Joint Arbitration Board.

(D) If the Employer's principal place of business is located outside the geographic jurisdiction of the Union, the Employer shall select one (1) foreman on each job within the geographic jurisdiction of the Union and the Union shall select all shop stewards and all Tile Setters.

(E) Employers shall be at liberty to employ and discharge whomsoever they see fit and Tile Setters shall be at liberty to work for whomsoever they shall see fit, subject to the decision of the Joint Arbitration Board when Tile

Setters or Employers are on charges.

(F) In the event the Union fails to refer necessary Tile Setters within three (3) working days after notice in writing by an Employer to the Union and to the Joint Arbitration Board, the Employer may employ Tile Setters from any other source.

12.   Hours, Wages and Fringe Benefits:

For those employees governed by a eight (8) hour day, the following rules shall apply: Any Finisher who is sent to a job to work and is not ready solely because of the Employer's fault shall be paid one-half (1/2) day's pay or two (2) hours if it is not the fault of the Employer.

13.   Benefit:

This Agreement shall be binding upon and shall inure to the benefit to each party hereto, its successors and assigns, and any successor thereto resulting from a merger, consolidation or other reorganization or restructuring.

Dated:

Individual Address of Employer:


Signature and Title

Telephone Number:                              Fax No.:

Federal I.D. No.:

By:

BUILDING CONTRACTORS                    LOCAL UNION NO.7:
ASSOCIATION OF ATLANTIC
COUNTY, INC.:

                                               CHARLES HILL,
Title:                                         President
Print name:


Title:                                         JAMES BARTALONE,
Print name:                                    Secretary/Treasurer

# EXHIBIT D

## RIDER TO AGREEMENT
### For the Independent Employer
### (Effective June 2, 2003 through June 5, 2006)

1. The undersigned independent employer acknowledges that they have read the Agreement between the Greater New York and New Jersey Tile Contractors Association, Inc. and the Building Contractors Association of Atlantic County, Inc. (hereinafter the "Association") and the Tile Setters and Tile Finishers Union of New York and New Jersey of the International Union of Bricklayers and Allied Craftsmen, Local Union No. 7 (hereinafter the "Union"). The jurisdiction of this Agreement covers New York City, the State of New Jersey, Long Island, and the following upstate counties in the State of New York: Westchester, Rockland, Putnam, Orange, Sullivan, Dutchess and Ulster as set forth in the foregoing pages of said Collective Bargaining Agreement of which the independent employer acknowledges they have received. The independent employer agrees to abide and be absolutely bound by such Agreement or any modifications or amendments that may be executed between the above parties during the term of said Agreement. The undersigned is affixing their signature in a dual capacity both on behalf of themselves and on behalf of the independent employer and represents by their signature their authority to bind the firm, the principals and members thereof, as well as themselves.

2. This Agreement shall be effective for the period June 2, 2003 to June 5, 2006 for the Greater New York and New Jersey Tile Contractors Association, Inc. and for the period June 2, 2003 to June 5, 2008 for the Building Contractor's Association of Atlantic County, Inc. This Agreement and any amendments hereto shall automatically renew itself and continue in full force and effect from year to year unless written notice of election to terminate or modify any provision of this Agreement is given by one party by registered or certified mail, return receipt requested, and received by the other not later than March 30, 2006 or March 31st of any succeeding year. The Union shall maintain a list of Employer signatories to the collective bargaining agreement and agrees to supply the Associations with a copy of the current list of Employer signatories to the collective bargaining agreement on signing of the contract and as additional signatories are added.

3. Working Conditions specified in Article III:

   With respect to the grouting of all epoxy, the Tile Finishers and Setters who do the grouting shall be paid ten dollars ($10.00) additional for each day's work for such grouting. There will be no restrictions on production for such work.

4. Employment and Hiring Procedures as specified in Article VI:

   Section 1.
   (A) As to the Tile Setters, with the exception of thin set and mastic jobs, it is

agreed that on all jobs the Employer shall elect (exclusive of any non-working foreman) the first two (2) Tile Setters required and the Union shall designate, the next two (2) Tile Setters. Thereafter, if more Tile Setters are required, the distribution shall be one (1) from the Employer and one (1) Tile Setter referred by the Union, making the total number of days work equal as the job progresses. On thin set and mastic jobs, the Employer shall select the first (1st) Tile Setter required exclusive of non-working foremen and the Union shall select the second (2nd) Tile Setter. The Employer shall select the third (3rd) Tile Setter and the Union shall select the forth (4th) Tile Setter on such jobs. The selection of all additional Tile Setters required thereafter shall alternate on a one-to-one basis between the Employer and the Union. Both parties agree that the Employer shall have the right to determine the number of Tile Mechanics to be employed on any job. Both parties further agree it is the right of any Employer to discharge any Tile Setter that in his opinion is unsatisfactory.

(B) The above is interpreted to mean that, when any job is fifty percent (50%) completed, Tile Setters referred through the Union shall have an equal number of days with the Tile Setters selected by the Employer; and if not, the Union shall have the right to stop the job in question until such time as the Employer makes arrangements to the Union's satisfaction, to complete the job with an equal number of days for both sides.

(C) This interpretation does not apply to one (1) employee jobs. To settle any dispute or difference of opinion as to a one (1) employee job, the Employer, when sending notice of execution of contract, as provided for herein, shall state on such notice that such job will only require one (1) Tile Setter to complete the work. This will give the Business Agent time to visit the job before the work is started, and, if the Business Agent disagrees with the Employer, the Business Agent shall so advise the Employer, and if they cannot agree, the matter is to be referred to the Joint Arbitration Board.

(D) If the Employer's principal place of business is located outside the geographic jurisdiction of the Union, the Employer shall select one (1) foreman on each job within the geographic jurisdiction of the Union and the Union shall select all shop stewards and all Tile Setters.

(E) Employers shall be at liberty to employ and discharge whomsoever they see fit and Tile Setters shall be at liberty to work for whomsoever they shall see fit, subject to the decision of the Joint Arbitration Board when Tile Setters or Employers are on charges.

(F) In the event the Union fails to refer necessary Tile Setters within three (3) working days after notice in writing by an Employer to the Union and to the Joint Arbitration Board, the Employer may employ Tile Setters from any other source.

5.   Hours, Wages and Fringe Benefits:
     (A)    For those employees governed by a seven (7) hour day, the following rules shall apply: Any Finisher who is sent to a job to work and is not ready solely because of the Employer's fault shall be paid one-half (1/2) day's pay or two (2) hours if it is not the fault of the Employer.

     (B)    For those employees governed by a eight (8) hour day, the following rules shall apply: Any Finisher who is sent to a job to work and is not ready solely because of the Employer's fault shall be paid one-half (1/2) day's pay or two (2) hours if it is not the fault of the Employer.

6.   Taft Hartley Benefit Funds:

     1. The Employer shall pay timely and proper contributions based on hours paid for covered work as per the current wage and benefit schedules, and also provide contribution receipts or records in accordance with this Agreement to all current benefit funds as well as their successors and assigns. Failure to comply with these terms shall constitute a breach of this Agreement by the defaulting Employer, and the Union, on notice, reserves the right to forthwith withdraw its members from jobs of the Employer, or take such other action as it deems necessary, any terms of this Agreement to the contrary notwithstanding. The defaulting Employer must pay to each employee two (2) days pay at the straight time rate for the number of regular working hours of employment which the employees who are withdrawn from the Employer lose as a result of such withdrawal.

     2. Payments to each Vacation Fund shall be deducted from each covered employee's wages after all taxes have been deducted by the Employer and shall be forwarded to the Vacation Fund as hereinafter provided. Vacation payments under this Article, or any other deduction from an employees pay, shall be considered the same as wage payments under the Agreement. Vacation Fund contributions shall be accrued to each covered employees' account.

     3. The Employer shall pay for and provide all disability benefits coverage ("DBL") in accordance with the laws of the State of New York and New Jersey.

7.   The Employer shall retain, for a minimum period of six (6) years, payroll and related records necessary for the conduct of a proper audit in order that a designated representative of the Trustees may make periodic review to confirm that contributions, owed pursuant to this Agreement are paid in full. In the event, after the Trustees have made a request, the Employer fails to produce its books and records necessary for a proper audit, the Trustees of the Funds in their sole discretion, may determine that the Employer's

monthly hours subject to contributions for each month of the requested audit period are the highest number of Tile Setter/Tile Finisher hours for any month during the twelve (12) preceding months audited, or during the last twelve (12) months for which reports were filed, whichever monthly number of hours is greater. Such determination by the Trustees shall constitute presumptive evidence of delinquency. Prior to making such determination, the Trustees shall mail a final seven (7) day written notice to the Employer advising him that such determination shall be made if the Employer does not schedule a prompt audit. Nothing herein shall mean that the Funds relinquish their right to commence legal proceedings to compel an examination of the Employer's books and records for audit.

8.  Where payment is made or an audit is conducted pursuant to a judgment or court order, the Employer recognizes the right of the Trustees of the Funds to seek an Order enjoining the Employer and its agents, representatives, directors, officers, stockholders, successors and assigns, for the remaining term of this Agreement from failing, refusing or neglecting to submit the required contribution receipts and/or to pay the required contributions to the Funds, and requiring the Employer to cooperate in an audit in accordance with the provisions of this Agreement. In consideration of this Agreement, the Employer represents and warrants that it will not raise any defense, counterclaim or offset to the Trustees' application for this Order.

9.  Payment Bonds: All Employer's shall post and maintain a payment bond, letter of credit or cash equivalent in the amount of twenty-five thousand dollars ($25,000.00) to insure payment of contributions to the fringe benefit Funds. The payment bond shall be provided upon execution of the Agreement. A bond shall be maintained for a reasonable period after termination of this Agreement to insure recovery of any delinquencies found by a close-out Employer. All new Employer's and Out of Town Employer's without payment bonds must pay and maintain a security deposit of two (2) weeks in fringe benefit contributions for each worker on the job in advance *via* certified check and/or money order until such time as a new bond is obtained. The Union will be responsible to monitor the payment bond requirements and present quarterly reports as to who has been signed as an independent Employer and that payment bonds naming the fringe benefit Funds are in place. The Trustees of the Funds will establish the terms of the payment bond, letter of credit or cash equivalent. Once it has been determined that an Employer cannot secure the requisite bond within a reasonable period of time, the Employer must pay weekly fringe benefit funds up front until such time as they become bondable to a limit of twenty-five thousand dollars ($25,000.00). In the event the independent Employer is in default for non-payment of contributions to the fringe benefit Funds and/or draws on the bond, letter of credit or cash equivalent, that independent Employer will be required to obtain and post a bond in the amount of fifty

thousand dollars ($50,000.00) going forward.

10. Benefit: This Agreement shall be binding upon and shall inure to the benefit to each party hereto, its successors and assigns, and any successor thereto resulting from a merger, consolidation or other reorganization or restructuring.

11. Most Favorable Employer: The terms and conditions contained in Article XXX of the Collective Bargaining Agreement between the Greater New York and New Jersey Tile Contractors Association, Inc. and the Building Contractors Association of Atlantic County, Inc. and the Tile Setters and Tile Finishers Union of New York and New Jersey of the International Union of Bricklayers and Allied Craftsmen, Local Union No. 7 shall not apply to the Employer identified below.

Date:

Federal I.D. No.:

Employer:

Signature and Title:

**Individually Signed:**

Address:

Telephone No.:

Fax No.:

Accepted by: TILE SETTERS and TILE FINISHERS UNION OF NEW YORK and NEW JERSEY, LOCAL UNION NO. 7

BY:

Local Union No. 7 Union Representative

Title:

NY 0658

MEMORANDUM OF AGREEMENT between The Greater New York and New Jersey Tile Contractors Association, Inc. ("Association") and the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craft workers ("Union"), this 23rd day of May, 2006:

WHEREAS, the Association and the Union are parties to a collective bargaining agreement that expires by its terms on June 5, 2006 ("Agreement"); and

WHEREAS, the parties have bargained in good faith to reach a successor to that Agreement; and

WHEREAS, the negotiating committees for each of the parties has agreed to recommend this Memorandum of Agreement for ratification by its membership;

NOW, THEREFORE, in exchange for the mutual promises contained herein, it is hereby STIPULATED AND AGREED AS FOLLOWS:

1.    The collective bargaining agreement between the parties that expires on June 5, 2006 shall be extended for an additional term of three years, from June 5, 2006 through May 31, 2009, except as expressly modified below.  All changes shall be effective as of June 6, 2006 unless otherwise specifically provided below.

2.    During the term of the contract, wages and fringe benefits shall be increased as set forth below:

| Effective Date | Mechanics (former L. 52) | Helpers (former L. 88 & 77) |
| --- | --- | --- |
| 6/5/06 | $1.00 | $0.90 |
| 12/4/06 | $1.32 | $1.00 |
| 6/4/07 | $1.70 | $1.40 |
| 12/3/07 | $1.70 | $1.41 |
| 6/2/08 | $2.00 | $1.66 |
| 12/1/08 | $2.01 | $1.66 |



RECEIVED
OCT 11 2006
COLLECTIVE BARGAINING
SERVICES

NY 0658

3.    (a) Article XIII, Section 1 par. (A) shall be revised to provide that the mechanic foreman shall receive at least $20 per day, regardless of the length of the day.

(b) The forepersons helper shall receive $10 a day for coordinating the job.

4.    Article IX, Section 1, Hours shall be revised to provide that it shall be an employer's option, after notifying the Union, to work a 7-hour or 8-hour day at straight time.  The 7 or 8 hour day selected must start on the first day of the job and shall continue for the duration of the job.  The Article shall be further revised to provide that an employer, after notifying the Union, may elect to assign work on the basis of four 10-hour days at straight time.  If this option is selected, it must begin on the first day of the job and shall continue for the duration of the job..

5.    Article XV, Apprentices, shall be revised effective June 5, 2006 as follows:

(a)    All apprentice wage percentages will be based on the tile setters (mechanics) rate, not the finishers (helpers) rate.

(b)    Allocation of the wages and fringe benefits will be at the discretion of the Union, provided, however, that employers are not required to make contributions to any benefit funds on behalf of apprentices for their first three (3) months (375 hours) of employment.  The total package (wages and fringes) shall not exceed the apprentice's percentage category.  It is agreed that it shall not be considered to have been a violation of he contract if, prior to June 5, 2006 an Association employer did not make contributions to the welfare plan, or any other plan, on behalf of the apprentices at the rate of 100%.

(c)    The contract shall be modified to provide that the minimum number of apprentices on a job shall be one for every four mechanics on a public works, and one for every three journeymen on all other jobs.

6.    Article IX, Section 2 shall be amended to provide that work on Saturdays in excess of ten (10) hours shall be at double time.

7.    (a)    Article III, Section 3 (m), Working Conditions, with respect to grouting with epoxy, including Spectra lock, the finishers who do the grouting will be paid ten dollars ($10.00) additional for each day's work with such grout.

(b)    Tile setters who set with epoxy shall be paid $10.00 additional for each day's work for such setting.

8.    Vouchers:  Article XXVII, Taft Hartley Benefit Funds, shall be revised to provide that a voucher system may be implemented for payment of fringe benefits, provided it is implemented on or before January 1, 2007.  If not implemented by such

date, it shall not be requested for the duration of the 2006-09 contract.    The Union and the Funds each reserve the right to demand that non-association employers contribute twice monthly, on the 15th and the 30th of the month.  Vouchers shall be provided by the administrator's online system. In the event of a layoff the employer may mail the required voucher to the employee at the required payment date.

*Associated employers will make payments for benefits on or before the 15th of each month (EX. May benefits will be paid no later than June 15) In the pay period that immediately follows the 15th the employer will enclose a voucher with the employee's paycheck.
*Independent contractors will pay benefits on a bi- monthly basis. Payments for benefits will be due on the 15th and 30th of each month. These payments will include all benefits that are owed for the prior pay periods. A voucher will be distributed to the employee on the pay period that follows the 15th and 30th of the month.

    9.    Article III, Sections 1, D and E (Working Conditions, marble & other stone) shall be revised to provide that tile mechanics jurisdiction will include marble and granite floors that are ¾ inch or thinner and total 3 square feet or less.   The jurisdiction on the walls will include stone or marble that measures less than ¾ inch. The miscellaneous items shall include window sills and entrance saddles. During the first year of the Agreement, marble men employed by the tile contractor to install kitchen tops can be paid at either the marble or tile wages. Effective June 2007 the kitchen tops will be considered the jurisdiction of the marble mechanic and the bathroom tops will be considered the jurisdiction of the tile mechanic. Notwithstanding the above, a tile contractor may continue to do any small job, involving 6 team days or less of marble work, with tile men at tile wages. The contractor can not break a job up into phases in order to satisfy this agreement. A "rule of reason" shall apply to the implementation and enforcement of these changes.

    (D) Flooring:
        All jobs involving marble and granite and /or natural and man made, stone- type floor tiles of less than two centimeters or 3/4" thickness shall be assigned to and performed by tile setters and/or finishers.
        All jobs involving marble and granite and /or natural and man made, stone- type floor tiles of more than two centimeters or 3/4" thickness and total more than 3 square feet shall be assigned to and performed by marble setters and/or helpers
    Walls:
        All jobs involving marble and granite and /or natural and man made, stone- type wall tile of less than two centimeters or 3/4" thickness shall be assigned to and performed by tile setters and/or tile finishers

NY 0658

All jobs involving marble and granite and /or natural and man made, stone- type wall tiles of two centimeters or 3/4" thickness or more shall be assigned to and performed by marble setters and/or helpers

Tops:

All jobs involving marble and granite and /or natural and man made, stone- type tops or miscellaneous pieces in bathrooms and toilets shall be assigned to and performed by tile setters and/or tile finishers. Window sills and saddles will be considered the jurisdiction of the tile mechanic and finisher.

All jobs involving marble and granite and /or natural and man made, stone- type tops or miscellaneous pieces (excluding window sills and saddles) outside of the bathrooms and toilets shall be assigned to and performed by marble setters and/or marble helpers. Prior to June 2007 this work can be paid at either tile or marble wages. Beginning June 2007 this work will be considered the jurisdiction of the marble setter and/or helper

Not withstanding the above, a tile contractor may do any small job, involving 6 team days or less of marble work, with tile men at tile wages. The tile contractor can not break a job up into phases in order to satisfy this agreement. A "rule of reason" shall apply to the implementation and enforcement of these changes

10.    Article IX Section 1, Hours, shall be amended as follows:

(a)    It is agreed that the Union and the employers have to address the problem of employees leaving the job early. It is agreed that if this happens without a legitimate excuse, or on a second occasion, the employer can mail the employee's layoff check to the Union Hall.

(b)    To provide for a flexible start time:  The employer shall have discretion to start the work day at any time between 6 am and 9 am, provided that employees are given reasonable advance notice of any change in the hours.  If a job starts at 7 a.m. or earlier, lunch hour shall occur at or about 11 a.m.  Employees are required to take lunch period.

(c) To add that both the union and the employers have to address the problem of employees working overtime on the weekend and than not working on Monday, or replacing themselves. It is agreed that if this problem happens without

a legitimate excuse, or on a second occasion, the employer shall mail the employee's paycheck to the Union on behalf of the employee, and deprive the employee of overtime assignment(s)

11.     Article IX, Section 2, Wages, shall be amended to provide that a new employee who does not go through the apprenticeship program may be paid at the helper rate during his first year of employment.  The Union shall cooperate in providing information to the employers regarding the date an employee was first employed or the number of hours an apprentice has worked.

FOR THE UNION:

FOR THE ASSOCIATION:

. 11/08/2006 21:56 FAX  7184722370          TNT LOCAL 7                          ☑007/008

Nov-03-06   05:28pm   From-Colleran O'Hara & Mills          +15167421765        T-296   P.002/003   F-751    NY ○658

## AMENDMENT TO AGREEMENTS BETWEEN THE GREATER NEW YORK AND NEW JERSEY TILE CONTRACTORS ASSOCIATION, INC. AND THE BUILDING CONTRACTORS ASSOCIATION OF ATLANTIC COUNTY, INC. AND THE TILE SETTERS AND TILE FINISHERS UNION OF NEW YORK and NEW JERSEY, LOCAL UNION NO. 7 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS

**WHEREAS**, the Greater New York and New Jersey Tile Contractors Association, Inc. ("Association") and the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers ("Union") entered into a Memorandum of Understanding on or about May 23, 2006 extending the existing collective bargaining agreement ("CBA) for the period June 5, 2006 to May 31, 2009; and

**WHEREAS**, the Union and the Building Contractors Association of Atlantic County, Inc. entered into a collective bargaining agreement on or about June 2, 2003 covering the period June 2, 2003 to June 5, 2008; and

**WHEREAS**, the parties desire to amend the CBAs to permit signatory Employers to make payment of fringe benefit contributions to the Tile Industry Benefit Funds via electronic means;

**NOW, THEREFORE**, it is agreed by and between the undersigned that:

(1)    Effective January 1, 2007, Article XXVII of the CBAs regarding the Tile Industry Benefit Funds shall be modified to provide that payment of all fringe benefit contributions from any signatory Employer shall be tendered through the purchase of contribution receipts via electronic means under the Contribution Receipt System ("CRS") to the Tile Setters and Tile Finishers Fringe Benefit Funds. Contribution receipts are due no later than the 15th of each month for Employers who are members of the Association and the Building Contractors Association of Atlantic County, Inc. Contribution receipts are due on bi-weekly commencing on the 1st and 15th of each month for Independent Employers.  All Employers will be assigned a password for the CRS in order to remit payment of contribution receipts.

1

11/06/2006 21:56 FAX  7184722370          TMT LOCAL 7                    008/008

Nov-03-06   05:26pm   From-Colleran O'Hara & Mills          +15167421765        T-296  P.003/003  F-751

NY  0658

(2)  The purchase of contribution receipts shall be administered by the Fund Administrator, Daniel H. Cook Associates, Inc. located at 253 West 35th Street, 12th Floor, New York, New York 10001;

(3)  In the event the Employer fails to purchase contribution receipts in the manner provided for herein, a penalty reflecting the cost to the Funds of having the Administrator's office perform such task of $_____ shall be imposed for the first (1st) offense; thereafter, a penalty of $_____ shall be imposed for the second (2nd) offense; and a penalty of $_____ shall be imposed for the third (3rd) offense accordingly. There shall be a minimum penalty of $250.00 for the first offense, $350.00 for the second offense, and $500.00 for each offense thereafter;

(4)  The defaulting Employer has the right to object to the imposition of said fines by notification to the Joint Trade Board within ten (10) days from the date the fine was imposed upon it;

(5)  Failure of signatory Employers to comply with these terms shall constitute a breach of the Agreements by the defaulting Employer;

(6)  All of the other terms and conditions of the CBAs shall continue in full force and effect.

Dated: November_____, 2006.

THE TILE SETTERS AND TILE FINISHERS UNION of NEW YORK and NEW JERSEY, LOCAL UNION NO. 7 of the INTERNATIONAL UNION of BRICKLAYERS AND ALLIED CRAFTSWORKERS

By: _____
       Charles Hill

Ite: _____
        President

THE BUILDING CONTRACTORS ASSOCIATION of ATLANTIC COUNTY, INC.

By: _____
       Michael Peterson

Its: _____
        President

THE GREATER NEW YORK AND NEW JERSEY TILE CONTRACTORS ASSOCIATION, INC.

By: _____
       Scott Erath

2

08/19/2005 FRI 14:17 FAX 7183920743    TILE-HELPERS-LOCAL-8...

**EXTREME FLOORING**
**410044 0052 NY 2**

**EMPLOYER**

thousand dollars ($50,000.00) going forward.

**Penalty:** This Agreement shall be binding upon and shall inure to the benefit to each party hereto, its successors and assigns, and any successor thereto resulting from a merger, consolidation or other reorganization or restructuring.

**Most Favorable Employer:** The terms and conditions contained in Articles XXX of the Collective Bargaining Agreement between the Greater New York and New Jersey Tile Contractors Association, Inc. and the Building Contractors Association of Atlantic County, Inc. and the Tile Setters and Tile Finishers Union of New York and New Jersey of the International Union of Bricklayers and Allied Craftsmen, Local Union No. 7 shall not apply to the Employer identified below.

Fed I.D. No.: 30-0061209

Employer: Extreme Flooring

Signature and Title: [signature] U.P.

Individually Signed: Randal Luoet

Address: 6203 Kirby Rd Clinton MD 20735

Telephone No.: 240-832-3007

Fax No.: 301-297-7700

BY: [signature]
Title: [signature]

Accepted by: TILE SETTERS and TILE FINISHERS UNION OF NEW YORK and NEW JERSEY, LOCAL UNION NO. 7

BY: [signature]

Local Union No. 7 Union Representative

10/11/04

# Exhibit B

**EXH 0364**

# B.A.C. LOCAL NO. 32
## TILE, MARBLE and TERRAZZO
## AND
## INDEPENDENT CONTRACTORS
## COLLECTIVE BARGAINNG AGREEMENT




### June 1, 2003 – May 31, 2008



RECEIVED
FEB 4 2004
COLLECTIVE BARGAINING SERVICES

B.A.C. LOCAL NO. 32
TILE, MARBLE and TERRAZZO
AND
INDEPENDENT CONTRACTORS
COLLECTIVE BARGAINING AGREEMENT
June 1, 2003 - May 31, 2008

INDEX

ARTICLE I
JURISDICTION

| | | |
|---|---|---|
| 1.1. | Geographic Jurisdiction | 1 |
| 1.2. | Tile Layers' Craft Jurisdiction | 1 |
| 1.3. | Tile Finishers' Craft Jurisdiction | 2 |
| 1.4. | Marble Masons' Craft Jurisdiction | 3 |
| 1.5. | Marble Finishers' Craft Jurisdiction | 3 |
| 1.6 | Terrazzo Workers' Craft Jurisdiction | 4 |
| 1.7. | Terrazzo Finishers' Craft Jurisdiction | 4 |

ARTICLE II
UNION SECURITY

| | | |
|---|---|---|
| 2.1. | Recognition | 5 |
| 2.2. | Future Recognition | 5 |
| 2.3 | Union Security | 6 |

ARTICLE III
WORKING CONDITIONS

| | | |
|---|---|---|
| 3.1. | Equal Employment Opportunity | 6 |
| 3.2. | MESC | 6 |
| 3.3. | Workmen's' Compensation | 6 |
| 3.4. | Hiring | 6 |
| 3.5. | Safety | 6 |
| 3.6. | Production | 7 |
| 3.7. | Layoff | 7 |
| 3.8. | Work Quality | 7 |
| 3.9. | Subcontracting | 7 |
| 3.10. | Piece Work | 7 |
| 3.11. | Foremen | 7 |
| 3.12. | Ratio | 8 |
| 3.13. | Special Shift | 8 |
| 3.14. | Scaffold Work/Swing Stage | 8 |
| 3.15. | Travel and Parking Expense | 8 |
| 3.16. | Tools | 9 |
| 3.17. | Referral | 9 |
| 3.18 | Workday | 9 |

3.19   Apprentices..................................................................10
3.20   Stewards.....................................................................10
3.21   General Understanding...............................................10
3.22   Drug Test....................................................................10

ARTICLE IV
WAGES AND FRINGE BENEFITS

4.1.   Payment of Wages ....................................................... 10
4.2.   Wage and Fringe Benefit Rates .................................. 11
4.3.   Advancement................................................................ 44
4.4.   Overtime, Holiday Pay and Work Hours ...................... 45
4.5.   Maintenance Work........................................................ 46
4.6.   Fringe Benefits............................................................. 46
4.7.   Delinquency.................................................................. 51
4.8.   Audit.............................................................................. 52
4.9.   Contributions................................................................ 52

ARTICLE V
WORK OUTSIDE OF UNION JURISDICTION

5.1.   Traveling Contractors................................................... 52

ARTICLE VI
LEGALITY OF AGREEMENT ..................................................... 53

ARTICLE VII
INDUSTRY STANDARDS

7.1.   Industry Standards........................................................ 53

ARTICLE VIII
GRIEVANCE AND ARBITRATION

8.1.   Grievance and Arbitration ............................................ 54

ARTICLE IX
IMPERFECT WORK

9.1.   Imperfect Work ............................................................. 54

ARTICLE X
RIGHTS OF PARTIES

10.1.   Rights of Parties ......................................................... 55
10.2.   Preservation of Work .................................................. 55

ARTICLE XI
EMPLOYMENT

11.1.   Employment ................................................................ 56

ARTICLE XII
TERMINATION............................................................................ 57

**B.A.C. LOCAL NO. 32**
**TILE, MARBLE and TERRAZZO**
**And**
**INDEPENDENT CONTRACTORS**
**COLLECTIVE BARGAINING AGREEMENT**
**June 1, 2003 - May 31, 2008**

This Agreement entered into between B.A.C. Local No. 32 of Michigan, an affiliate of the Union of Bricklayers and Allied Craftworkers, AFL-CIO, (hereinafter the Union) and the entity named hereinafter, (referred to hereinafter as "Employer").

**ARTICLE I**
**JURISDICTION**

1.1.    Geographic Jurisdiction.  This Agreement covers the counties of Monroe, Wayne, Macomb, Oakland, St. Clair, Sanilac, Washtenaw, Lenawee and Livingston in the State of Michigan.

1.2.    Tile Layers' Craft Jurisdiction.
A.        The laying, cutting or setting of all tile where used for floors, walls, ceilings, walks, promenade roofs, stair treads, stair risers, facings, hearths, fireplaces, and decorative inserts, together with any marble plinths thresholds or window stools used in connection with any tile work; also to prepare and set all concrete, cement, brickwork or other foundation or materials that may be required to properly set and complete such work; the setting or bedding all tiling, stone, marble, composition, glass mosaic, or other materials forming the facing, hearth, fireplace of a mantel, or the mantel, complete, together with the setting of all cement, brickwork, or other material required in connection with the above work; also the slabbing and fabrication of tile mantels, counters and tile panels of every description and the erection and installation of same.  The building, shaping, forming construction or repairing of all fireplace work, whether in connection with a mantel hearth facing or not, and the setting and preparing of all material such as cement, plaster, mortar, brickwork, iron work or other materials necessary for the proper and safe construction and completion of such work, except, that a mantel made exclusively of brick, marble or stone, shall be conceded to be bricklayers, marble setters' or stonemasons' work respectively.

B.        It will be understood that the word "Tile" refers to all burned clay products, as used in the tile industry, either glazed or unglazed, and to all composition materials made in single units and mixtures in the form of cement, plastics, and metals that are made for and intended for use as a finished floor surface, whether upon interior or exterior floors, stair treads, promenade roofs, garden walks, interior walls, ceilings, swimming pools, and all places where tile may be used to form a finished surface for practical use, sanitary finish or decorative purposes, for setting all accessories in connection therewith, or for

1

decorative inserts in other materials.

C.    All terra cotta style unit tile regardless of method of installation and split brick, quarry tile or similar material where the bed is floated or screeded and the joints grouted.   Where the work is installed by Tile Layers, the bedding, jointing, and pointing of the above materials shall be the work of the craft installing the same.

D.    All clay products known as terra cotta tile, unit tile, ceramic veneer and machine made terra cotta, regardless of the method of installation. Where the preponderance of materials  to be installed comes within the provisions of this section and when there is also some material in excess of the sizes provided for in this section, the tile layer shall install all such materials.

E.    All work described above, as it may be supplemented or modified by the Constitution and By-laws of the Union, will be performed only by the Tile Layers, Apprentices and Improvers working under this Agreement.

1.3.    Tile Finishers' Craft Jurisdiction

A.    The Finishers shall do all cleaning of tile and all grouting of tile, and shall handle all materials such as sand, cement, lime, tile, all types of tile panels, prefabricated tile units including the unpacking of all tile and any other form of tile or material that may be used by the Tile Layer, after being delivered on the job site.

B.    Cleaning of tile shall be part of the tile contract of the Employer and shall be the exclusive work of Tile Finishers hereunder.  Cleaning of tile shall include all washing of every kind and removal of all scum and residue of every nature.  All packages will be unloaded by said Tile Finishers regardless of number.

C.    The Tile Finisher shall do all the grouting of tile work installed by the Tile Layers.  All materials must be placed within a reasonable distance from the place it is to be installed regardless of what floor.  All power equipment such as power buggies, mortar mixers, forklifts, etc., required to be used at the job site by the Tile Finishers in conjunction with tile laying operations shall be operated by same.

D.    The Employer on all jobs shall furnish to the Tile Finisher pails, sponges, rags, and mixing boxes, also wheelbarrows where necessary, hoes, shovels, and all other materials that a Tile Finisher needs on the job.  All the above mentioned equipment will be cleaned daily.

1.4.    Marble Masons' Craft Jurisdiction

A.    The carving, cutting and setting of all marble, slate, including slate blackboards, stone, albereen, carrara, sanionyz, marbelithic, and all artificial, imitation or cast marble including but not limited too Zodiac Stone, Ceaser Stone, Sile Stone, Cambria, Tetrastone, Pep Stone, Techno Stone, River Stone, Techni Stone, Retro 2000 Stone and Bergamo Stone SRL of of whatever thickness or dimension.  This shall apply to all interior work, such as sanitary, decorative and other purposes inside of buildings of every description wherever required, including all polish, hones or sand finish; also the cutting and fitting of above accessories in connection with such work, and the laying of all marble tile, slate tile and terrazzo tile.  Furthermore, the installation of stone products 12" x 12" x 1/2" or greater in size and thickness shall be the work jurisdiction of the Marble Masons and Marble Finishers as in accordance with past practice.

B.    All work described above, as it may be supplemented or modified by the Constitution and By-laws of the Union, will be performed only by Journeymen, Apprentices and Improvers working under this Agreement.

1.5.    Marble Finishers' Craft Jurisdiction

A.    The Employer shall have the right to determine the competency and qualifications of Employees referred by the Union and the right to hire accordingly.

B.    Marble Finishers should accompany Marble Masons on jobs where it is clearly in the interest of economy and at the discretion of the Employer.

C.    The Marble Finisher is to properly perform all duties that usage has established in various locations as being the work of the Marble Finisher and to carry out all orders as may be issued by the Marble Mason under whose supervision he is to be working.

D.    Marble Finishers shall clean, fill grout, grind, sand, and polish as well as handle plaster, sand, cement and marble.  Marble Finishers shall load and unload trucks of all materials that shall be used by the Marble Mason after being delivered on the job site.  The Marble Finisher shall also work with the Marble Mason, marble truck driver or marble shopmen to execute the above tasks then in interest of economy and good judgment.

E.    All power equipment such as power buggies, mortar mixers, forklifts, trucks, cranes, etc., required to be used at the job site by the Marble Finisher, in conjunction with marble laying operations, shall be operated by the Marble Finisher.  •

F.    Each Marble Finisher is to equip himself with the following minimum tools: putty knife, 6' or better measuring rule, pencil, pointing trowel, and he is

2

3

to wear shoes suitable to conditions of construction work at all times. These tools are to be furnished by the Marble Finisher, for his use, despite the inclusion of these identical tools in the Marble Mason's toolbox.

1.6.   Terrazzo Workers' Craft Jurisdiction

A.     Terrazzo Workers' craft jurisdiction shall include the installation of terrazzo, casting and rolling of terrazzo in shops and on jobs and other related work as defined by the Constitution and By-laws of the Union.

1.7.   Terrazzo Finishers' Craft Jurisdiction

A.     Terrazzo Finishers shall do all handling of sand, cement, marble chips dividing strips and all other materials required to perform the terrazzo work, after being delivered on the job site.

B.     The Terrazzo Finishers shall wheel or carry into the building all materials necessary in the construction of terrazzo floors or similar heavy duty floors and they shall do all mixing of aggregates used in the installation of terrazzo or similar floor. Terrazzo Finishers shall do all placing of wire mesh reinforcing and isolation membranes necessary for the construction of terrazzo or similar floors such as, Dex-o-tex, Latex, Magnesite, Monolithic, Epoxy, Neoptex, Matrix, Polyester, and all new types of terrazzo floors as a result of research and development, new materials and processing being introduced in the terrazzo industry that use marble chips. Decorative rustic terrazzo is to be included as terrazzo work. Terrazzo Finishers shall do all grinding and polishing whether done by hand or machine on terrazzo and all similar floors as specified above. All wax treatment, whether done by hand or machine, must be done by Terrazzo Finishers.

C.     The Employer, on all jobs, shall furnish to the Terrazzo Finisher: pails, sponges rags and mixing boxes, also wheelbarrows where necessary, hoes, shovels and all other materials that a Terrazzo Finisher needs on the job. All the above-mentioned equipment will be cleaned daily, by Terrazzo Finishers.

D.     The Employer shall furnish the Employee with the necessary special clothing items and proper ventilation in working with epoxies.

E.     All electric extension chords connecting machines shall have plugs on each end consisting of one male plug on one end and a female plug on the other, and shall not be spliced more than once and shall be maintained with rubber friction tape of insulating type to avoid any shorting of electric power. All 220 volt machines shall be grounded and meet all OSHA and MIOSHA safety specifications.

F.     All power equipment such as power buggies, mortar mixers, forklifts, Trucks, cranes, etc., required to be used on the job site by the Terrazzo Finisher, in conjunction with the installation of Terrazzo, shall be operated by the Terrazzo Finisher.

All machines should have a connecting plug attached to a fuse box so the cord can be attached safely.

All equipment shall be cleaned and greased as directed by employer. All floor machines shall have grips of wood, rubber or other non-conducting material.

No worker shall work in a building alone unless all electrical cables are suspended above the floor.

### ARTICLE II
### UNION SECURITY

2.1   RECOGNITION.   Inasmuch as (1) the Union has requested recognition as the majority, section 9(a), representative of the Employees in the bargaining unit described herein and (2) has submitted or offered to show proof of its majority support by those Employees, and (3) the Employer is satisfied that the Union represents a majority of the bargaining unit Employees, the Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all Employees within that bargaining unit, on all present and future jobsites within the jurisdiction of the Union.

2.2   FUTURE RECOGNITION. The Employer agrees that if it has not previously done so, at any time during this agreement it will, upon the Union's request for recognition as the Section 9(a) representative of the Employees in the bargaining unit described herein, and upon the Union's submission of proof of majority support by such Employees, voluntarily recognize the Union as the exclusive representative, as defined in Section 9(a) of the National Labor Relations Act, of all Employees within the bargaining unit on all present and future jobsites within the jurisdiction of the Union, when the Union has requested recognition as majority representative, the Employer's recognition will be based on the Union's proof or offer to submit proof, the Employer expressly agrees that it will not condition its recognition upon the results of an election conducted under the rules and regulations of the National Labor Relations Board.

4

5

2.3 UNION SECURITY. All present Employees who are members of the Union at the effective date of this Agreement shall remain members of the Union in good standing as a condition of employment. A member in good standing is an individual who has met all obligations of Union membership, including the obligation to pay only such fees and dues which are necessary to support the Union's representational activities - such as collective bargaining, grievance adjustment and administration of this Agreement. All present Employees who are not members of the Union and all Employees who are hired hereafter shall become and remain members in good standing of the Union on and after the eighth day following the date of their hire or the effective date of this Agreement, whichever is later. The eight-day period within which an Employee shall join the Union shall be computed from the first day such Employee enters the employment of the Employer with whom the Union has an Agreement.

2.4    Access.    International Union Representatives and the officer primarily responsible for day to day affairs of the Union or said officer's representatives shall have access to the employer's jobsites at reasonable times in compliance with any special rules and regulations adopted by the owner to ensure that provisions of this Agreement are observed, provided however, that such representatives shall not unduly interfere with job progress.

## ARTICLE III
## WORKING CONDITIONS

3.1.    Equal Employment Opportunity. The Employer and the Union agree that there will be no discrimination in employment based on race, color, creed, national origin, gender or age and that nothing elsewhere in this Agreement shall be construed as requiring or permitting such discrimination. The Employer and the Union further agree that each will cooperate with the other in taking such actions by either or both as are proper and necessary to insure equality of opportunity in all aspects of employment.

3.2    MESC. In order to avoid any differential between Employers when obtaining labor, it is hereby agreed that the Employer party to this Agreement shall provide unemployment compensation insurance for all Employees. All Employers shall furnish the Union with the MESC number when requested.

3.3    Workmens' Compensation.  All Employers shall maintain Workmens' Compensation Insurance and shall comply with the Michigan laws governing tile, marble and terrazzo contractors, as applicable. All Employers shall furnish the Union with a copy of their Workmens' Compensation Insurance Certificate when requested.

3.4    Hiring.  In hiring and retention of Employees, the Employer shall give preference to Employees regularly employed in the area, except that an out-of-town contractor may bring in one Employee not regularly employed in the area.

6

3.5    Safety. Whenever a particular job may require the possible use of any special safety equipment, the Employer shall furnish to the Employees any such special safety equipment which is necessary to maintain safe work standards required on the job, such as rubber boots, or other special clothing or equipment commonly used in the Employer's trade. Each Employee shall be responsible for his own safety equipment that is issued to him by the Employer. All equipment shall be returned to the Employer by the Employee in good condition upon completion of his employment on said job. The Employer shall also furnish the Employee with the necessary clothing and proper ventilation in working with epoxies and furnaces.    All electric extension cords connecting machines shall have plugs on each end consisting of one male plug on one end and a female plug on the other, and shall not be spliced more than once and shall be maintained with rubber or friction tape and insulating tape to avoid any shorting of electric power.  All 220 volt machines shall be grounded and meet all OSHA and MIOSHA safety specifications. All machines should have a connecting plug attached to a fuse box so that the cord can be attached safely. Operators of floor machines shall be entitled, during working hours, to clean their machines, as directed by employer. All floor machines shall be cleaned and greased during working hours either before leaving the job or before a new job is commenced. All floor machines shall have grips of wood, rubber or other non-conducting material. No man shall work in a building alone unless all electrical cables are suspended above the floor.

3.6.    Production. There shall be no limitations by the Union on the amount of work an Employee shall perform during a working day; neither shall the Employer be permitted to specify or insist upon a certain amount of work to be performed.

3.7.    Layoff. Employees to be laid off whenever possible shall receive twenty-four (24) hours notice before layoff.

3.8.    Work Quality.  The Union agrees that any Employees with properly supplied materials failing to produce a standard grade of workmanship through negligence, carelessness or lack of sobriety shall not be entitled to compensation for same.

3.9.    Subcontracting.  The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the Subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement, the Employer shall:

    A.    Provide in the subcontract for compliance by the sub-contractor with the terms and conditions of this Agreement.

    B.    Sub-contractor shall sign this Agreement and the sub-contractor shall be responsible for all wages and fringe benefit contributions due hereunder.

3.10.    Piece Work.  No Employee shall be allowed to contract or subcontract work which would come under the terms of this Agreement if done by the Employer, if the effect of such contracting or subcontracting is to subvert the wages and working conditions required hereunder or to work for any person contracting work by the square foot, or lump-sum work of any character.

7

3.11.  Foremen. When the Employer employs more than the number of Employees from a particular craft on a job, as provided in the following schedule, or as in special instances, an Employee may be designated by the Employer. A foreman shall be designated from that craft and paid the foreman premium as follows:

| CRAFT | RATIO | COMPENSATION |
|---|---|---|
| Tile Layer | 3 or more Tile Layers | $2.75 per hour premium |
| Tile Finisher | 10 or more Tile Finishers | $1.25 per hour premium |
| Marble Mason | 3 or more Marble Masons | $2.75 per hour premium |
| Marble Finisher | 10 or more Marble Finishers | $1.25 per hour premium |
| Terrazzo Worker | 3 or more Terrazzo Workers | $2.75 per hour premium |
| Terrazzo Finisher | 10 or more Terrazzo Finishers | $1.25 per hour premium |

Foreman:  On all work where as foreman is required, he is to be the agent of the Employer and shall be a practical Tile Layer/ Tile Finisher (Helper), Marble Mason/Marble Finisher (Helper), Terrazzo Worker/Terrazzo Finisher (Helper).

3.12   Ratio. All signatory Employers will employ a minimum of one Finisher per every two Mechanics; this ratio excludes trainees, apprentices and improvers.  No Employer shall allow or permit other than an appropriate journeyman or an indentured apprentice to do the work of the appropriate craft.

3.13.   Special Shift.  When conditions make it impractical to work a shift wholly during regular working hours and when only one shift per day is employed on the job by the Employer, a single eight-hour shift per day, known as a special shift - any time before 6:00 a.m. and after 9:00 a.m. - may be worked by the Employer. Pay for the special shift shall be $3.50 per hour above the applicable base rate. The Union will be notified of special shift work to be performed. For safety purposes, not less than two Employees shall be allowed to work on second or third shift, depending on job conditions.

3.14.   Scaffold Work/Swing Stage.  Pay for work on scaffolding over 15 feet, defined as the working platform shall be at or above 15 feet from the ground or base of scaffold, compensation shall be $1.75 per hour above the applicable base rate for all hours worked. Swing stage and all mechanical lift platform work shall be compensated $2.00 per hour above the applicable base rate for all hours worked.

3.15.   Travel and Parking Expense.  Expenses to cover transit and transportation shall be reimbursed to each Employee per day outside of the 35-mile radius from the Detroit City Hall at the following zone rates, in accordance with the current published zone map.

8

| Distance | REIMBURSEMENT AMOUNT |
|---|---|
| 35 miles to 45 mile | $7.00 |
| 45 miles to 55 miles | $8.00 |
| 55 miles to 65 miles | $9.00 |
| 65 miles to 75 miles | $10.00 |
| 75 miles to 85 miles | $11.00 |

Over 85 miles, $65.00 per day expense allowance will be paid, plus transit and transportation expenses, once to and from the job site at the rate of $.38 per mile for each mile in excess of the stated 45-mile radius.

Any toll bridge or toll charges incurred by an employee traveling to and from work will be paid by the Employer in the State of Michigan.

Parking:  A parking reimbursement will be paid to driver according to receipt turned in. The Employer will be responsible to give the employee a written receipt.

3.16.   Tools.  Employer shall supply Employee all cutting wheels, saws, saw blades, straight edges over eight feet, wheel barrows, mortar boxes, mortar hoes, shovels, sponges, rags  and any power tools as are necessary to perform work covered by this Agreement All of the aforementioned equipment will be cleaned daily and are to be returned to employer in working condition.
Employees must have their own normal day-to-day hand tools as required for their respective crafts.

3.17.   Referral. The Union agrees to refer qualified workers, as defined by the J.A.T.C. for their respective crafts, to the extent that they are available, upon notification to the Union.  The Union will not refer workers to any Employer not having a collective bargaining agreement with the Union.

3.18   Work Day: Employees shall work a full eight hours and receive eight hours pay for same; shall be all territories within the jurisdiction of this contract and any job site where a per diem and expenses are being paid.

If employee is asked to come to shop to pick up materials, the workday shall start at the time employee commences work (loading, etc.) at the shop. Any time worked over eight (8) hours including delivery of materials and supplies shall be paid at applicable overtime rate.

Whenever Employer requests Employee to use Employee's personal vehicle to move Employer's materials, as in the case of making deliveries and or pickups from jobsites, distributors and the Employer's shop when said material meets or exceeds 500 pounds, Employee shall be compensated his normal hours plus .38 per mile driven.

9

3.19 <u>Apprentices</u>: In order to train sufficient skilled mechanics for the industry, the necessity for employment of apprentices and/or Improver apprentices is recognized and encouraged by the parties to this Agreement. It is agreed that the Employer shall abide by the Tile, Marble and Terrazzo J.A.T.C. B.A.T. approved standards.

3.20 <u>Stewards.</u> The Employer shall hire a steward appointed by the officer primarily responsible for the day to day affairs of the Union, or said officer's designee, on all jobs. The steward shall be a working employee and shall, when appropriate, be granted reasonable time to conduct union business. The steward shall be first employee on jobsite and last one to be laid off.

3.21 <u>GENERAL UNDERSTANDING.</u> The Union agrees to cooperate with the Employer in meeting conditions peculiar to the job in which it may be engaged. It will at all times meet and confer with the Employer, similarly, the Employer will at all times meet with the Union respecting any questions or misunderstandings that may arise under the performance of this Agreement.

3.22 <u>DRUG TEST</u>. Should the (Associations) and (Union) mutually agree on a drug and alcohol testing program, during the term of this Agreement, such program shall be reduced to writing, dated and signed by both parties and attached to this Agreement in the form of an Addendum.

### ARTICLE IV
### <u>WAGES AND FRINGE BENEFITS</u>

4.1. <u>Payment of Wages</u>. All wages paid by the Employer to its Employees shall be paid in currency or negotiable check with itemized statement showing Employee's name, hours worked and deductions, on each Friday, not later than 4:30 p.m. and shall include all time up to and including the Tuesday or Wednesday of previous week, by hand delivery, unless Employee and Employer agree by mutual consent to have wages sent by mail or direct deposit. This agreement shall be in writing. In case of a holiday on Friday, payment shall be made on the preceding Thursday. Any Employee failing to receive his money on regular payday, or at the time of discharge, shall receive additional waiting time pay not to exceed two days. When any Employee leaves work of his own accord, the Employer shall not be obligated to pay him before the regular payday. Any Employee who is discharged or laid off by the Employer shall be paid in full at once. In case of any dispute of wages due Employees, the Employer shall pay under protest pending settlement of dispute by the Joint Board of Arbitration. The paycheck will be deposited with the office of the Union.

4.2. <u>Wage and Fringe Benefit Rates</u>. The Employer agrees to timely pay the appropriate wages and make the required fringe benefit contributions for each Employee, for every hour worked, in accordance with such Employee's classification, as herein provided.

Wages for 2005, 2006 & 2007 have been negotiated and shall be allocated by Local 32 on or before January 1st of each of the three years.

All advancements and placement of Apprentices, Improver Apprentices, Trainees, Finishers and or other covered Employees shall be done by the J.A.T.C. per the Standards as recognized by the Department of Labor, (B.A.T.).

10

| Effective Date: | Jan 1, 2004 | June 1,2004 |
|---|---|---|
| Base Rate | $ 23.93 | $ |
| Vacation | 2.00 | |
| Dues Check-off | 1.60 | |
| | | |
| Taxable | $ 27.53 | |
| Health & Welfare | 5.10 | |
| Pension | 3.00 | |
| Int. Pension | 1.50 | |
| IMI Training Fund | .54 | |
| Promotion | .15 | |
| Local Training Fund | .07 | |
| Annuity/DC | 1.45 | |
| TOTAL | $ 39.34 | $ 40.84 |

TILE SETTERS WAGES/FRINGES (allocated at later date)

| Effective Date: | June 1, 2005 | June 1, 2006 | June 1, 2007 |
|---|---|---|---|
| Base Rate | $ | $ | $ |
| Vacation | | | |
| Dues Check-off | | | |
| Taxable | | | |
| Health & Welfare | | | |
| Pension | | | |
| Int. Pension | | | |
| IMI Training Fund | | | |
| Promotion | | | |
| Local Training Fund | | | |
| Annuity/DC | | | |
| TOTAL | $ 42.34 | $ 43.84 | $45.34 |

B.    TILE FINISHERS (HELPERS) WAGES/FRINGES

| Effective Date: | Jan 1, 2004 | June 1, 2004 |
|---|---|---|
| Base Rate | $ 19.03 | $ |
| Vacation & Holiday | 2.00 | |
| Dues Check-off | 1.60 | |
| Taxable | $ 22.63 | |
| Health & Welfare | 5.10 | |
| Pension | 3.00 | |
| Int. Pension | 1.50 | |
| SUB | .50 | |
| IMI Training Fund | .54 | |
| Promotion | .15 | |
| Local Training Fund | .07 | |
| Annuity | 1.45 | |
| TOTAL | $ 34.94 | $ 36.14 |

11

**TILE FINISHERS (HELPERS) WAGES/FRINGES** (allocated at later date)

| Effective Date: | June 1, 2005 | June 1, 2006 | June 1, 2007 |
|---|---|---|---|
| Base Rate | $ | $ | $ |
| Vacation & Holiday | | | |
| Dues Check-off | | | |
| Taxable | | | |
| Health & Welfare | | | |
| Pension | | | |
| Int. Pension | | | |
| SUB | | | |
| IMI Training Fund | | | |
| Promotion | | | |
| Local Training Fund | | | |
| Annuity | | | |
| **TOTAL** | **$ 37.34** | **$ 38.54** | **$ 39.74** |

Tile Improver Wages and Fringes (2005,2006,2007 allocated at later date)

| | 1-1-04 | | | 6-1-04 | | | 6-1-05 | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 1 | 2 | 3 | 1 | 2 | 3 |
| Base rate | 19.83 | 20.33 | 21.08 | | | | | | |
| Vac. | 2.00 | 2.00 | 2.00 | | | | | | |
| Dues ckoff | 1.60 | 1.60 | 1.60 | | | | | | |
| Taxable | 23.43 | 23.93 | 24.68 | | | | | | |
| H & W | 5.10 | 5.10 | 5.10 | | | | | | |
| Pension | 3.00 | 3.00 | 3.00 | | | | | | |
| Int. Pen | 1.50 | 1.50 | 1.50 | | | | | | |
| IMI | 0.54 | 0.54 | 0.54 | | | | | | |
| Prom. | 0.15 | 0.15 | 0.15 | | | | | | |
| Loc Train | 0.07 | 0.07 | 0.07 | | | | | | |
| D.C. | 1.45 | 1.45 | 1.45 | | | | | | |
| **Total** | **35.24** | **35.74** | **36.49** | **36.74** | **37.24** | **37.99** | **38.24** | **38.74** | **39.49** |

Tile Imp.

| | 6-1-06 | | | 6-1-07 | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 1 | 2 | 3 |

| **Total** | 39.74 | 40.24 | 40.99 | 41.24 | 41.74 | 42.49 |

**C.    TILE TRAINEE WAGES/FRINGES**

Effective Dates June 1, 2003 through May 31, 2008, all Tile Trainee Finishers are to be paid as follows: The columns set forth below represent six-month periods during which an Employee will be expected to work a minimum of 850 hours.

**Tile Trainee Rates Effective June 1, 2003**

TILE TRAINEE WAGES AND FRINGES    JAN 1, 2004

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | 9.11 | 10.05 | 11.40 | 12.58 | 13.19 | 13.90 | 14.19 | 14.64 | 15.07 | 16.11 |
| Vac. | 0 | 0 | .50 | .50 | .75 | 1.00 | 1.00 | 1.50 | 1.75 | 1.75 |
| Dues Chkoff | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 |
| Taxable | 10.71 | 11.65 | 13.50 | 14.68 | 15.54 | 16.50 | 16.79 | 17.74 | 18.42 | 19.46 |
| H&W | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 |
| Pension | 0 | 0 | .60 | .60 | .85 | 1.20 | 1.50 | 1.75 | 2.10 | 2.10 |
| Int Pension | 0 | 0 | 1.30 | 1.30 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 |
| Sub Fund | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 |
| IMI Training | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 |
| Promotion | .15 | .15 | .15 | .15 | .15 | .15 | .15 | .15 | .15 | .15 |
| Local Training | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 |
| ANNUITY/D.C. | 0 | 0 | 0 | 0 | 0 | 0 | .75 | .75 | .75 | .75 |
| **Total** | 17.07 | 18.01 | 21.76 | 22.94 | 24.15 | 25.46 | 26.80 | 28.00 | 29.03 | 30.07 |

12

13

**Tile Trainee** — June 1, 2004

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8 | @9 | @10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | | | | | | | | | | |
| Vac. | | | | | | | | | | |
| Dues Chkoff | | | | | | | | | | |
| **Taxable** | | | | | | | | | | |
| | | | | | | | | | | |
| H&W | | | | | | | | | | |
| Pension | | | | | | | | | | |
| Int Pension | | | | | | | | | | |
| Sub Fund | | | | | | | | | | |
| IMI Training | | | | | | | | | | |
| Promotion | | | | | | | | | | |
| Local Training | | | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | | | |
| **Total** | 17.64 | 18.62 | 22.50 | 23.72 | 24.97 | 26.32 | 27.71 | 28.95 | 30.01 | 31.09 |

**Tile Trainee** — June 1, 2005 (allocated at later date)

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | | | | | | | | | | |
| Vac. | | | | | | | | | | |
| Dues Chkoff | | | | | | | | | | |
| **Taxable** | | | | | | | | | | |
| | | | | | | | | | | |
| H&W | | | | | | | | | | |
| Pension | | | | | | | | | | |
| Int Pension | | | | | | | | | | |
| Sub Fund | | | | | | | | | | |
| IMI Training | | | | | | | | | | |
| Promotion | | | | | | | | | | |
| Local Training | | | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | | | |
| **Total** | 18.21 | 19.23 | 23.24 | 24.50 | 25.79 | 27.18 | 28.62 | 29.90 | 30.99 | 32.11 |

**Tile Trainee** — June 1, 2006 (allocated at later date)

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | | | | | | | | | | |
| Vac. | | | | | | | | | | |
| Dues Chkoff | | | | | | | | | | |
| **Taxable** | | | | | | | | | | |
| | | | | | | | | | | |
| H&W | | | | | | | | | | |
| Pension | | | | | | | | | | |
| Int Pension | | | | | | | | | | |
| Sub Fund | | | | | | | | | | |
| IMI Training | | | | | | | | | | |
| Promotion | | | | | | | | | | |
| Local Training | | | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | | | |
| **Total** | 18.78 | 19.84 | 23.98 | 25.28 | 26.61 | 28.04 | 29.53 | 30.85 | 31.97 | 33.13 |

**Tile Trainee** — June 1, 2007 (allocated at later date)

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | | | | | | | | | | |
| Vac. | | | | | | | | | | |
| Dues Chkoff | | | | | | | | | | |
| **Taxable** | | | | | | | | | | |
| | | | | | | | | | | |
| H&W | | | | | | | | | | |
| Pension | | | | | | | | | | |
| Int Pension | | | | | | | | | | |
| Sub Fund | | | | | | | | | | |
| IMI Training | | | | | | | | | | |
| Promotion | | | | | | | | | | |
| Local Training | | | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | | | |
| **Total** | 19.35 | 20.45 | 24.72 | 26.06 | 27.43 | 28.90 | 30.44 | 31.80 | 32.95 | 34.15 |

**Advancement to Tile Improver to be approved by the Joint Apprenticeship & Training Committee.

@Levels #9,#10 prior to 6/1/03 protected by J.A.T.C.

Level #8 shall be top level trainee after 6/1/03

D.    APPRENTICE TILE SETTERS and TILE FINISHERS/ HELPERS WAGE RATES -- Indentured After March 1998

The Joint Apprenticeship and Training Committee shall advance all Apprentices per the Standards.

APPRENTICE TILE SETTERS
Effective June 1st, 2003 - Each period is equal to 6 months
APPRENTICE TILE LAYER
INDENTURED AFTER MARCH 98

| WAGES AND FRINGES | JAN 1 2004 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | 12.45 | 13.86 | 14.49 | 15.99 | 16.81 | 19.73 | 20.25 | 21.02 |
| Vac. | .50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 | 2.00 |
| Dues Chkoff | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 |
| **Taxable** | 14.55 | 16.46 | 17.59 | 19.34 | 20.41 | 23.33 | 23.85 | 24.62 |
| | | | | | | | | |
| H&W | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 |
| Pension | .60 | 1.20 | 1.75 | 2.10 | 2.50 | 2.60 | 2.60 | 2.60 |
| Int Pension | 1.30 | 1.30 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 |
| IMI Training | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 |
| Promotion | .15 | .15 | .15 | .15 | .15 | .15 | .15 | .15 |
| Local Training | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 |
| ANNUITY/D.C. | 0 | 0 | .75 | .75 | 1.25 | 1.25 | 1.25 | 1.25 |
| **Total** | 22.31 | 24.82 | 27.35 | 29.45 | 31.42 | 34.44 | 34.96 | 35.73 |

16

| App. Tile Layer | JUNE 1 2004 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Promotion | | | | | | | | |
| Local Training | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | |
| **Total** | 22.96 | 25.54 | 28.15 | 30.35 | 32.34 | 35.44 | 35.98 | 36.77 |

| App. Tile Layer | JUNE 1 2005 (allocated at later date) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Promotion | | | | | | | | |
| Local Training | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | |
| **Total** | 23.61 | 26.26 | 28.95 | 31.25 | 33.26 | 36.44 | 37.00 | 37.81 |

17

| App. Tile Layer | JUNE 1 2006 (allocated at later date) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| Taxable | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Promotion | | | | | | | | |
| Local Training | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | |
| Total | 24.26 | 26.98 | 29.75 | 32.15 | 34.18 | 37.44 | 38.02 | 38.85 |

| App. Tile Layer | JUNE 1 2007 (allocated at later date) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| Taxable | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Promotion | | | | | | | | |
| Local Training | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | |
| Total | 24.91 | 27.70 | 30.55 | 33.05 | 35.10 | 38.44 | 39.04 | 39.89 |

18

## APPRENTICE TILE FINISHERS

**Effective June 1st 2003 - Each period Equals 6 months**

TILE Finisher (Helper) Apprentice

| WAGES AND FRINGES | JAN 1, 2004 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | 9.11 | 10.05 | 11.40 | 12.58 | 13.19 | 13.90 | 14.19 | 14.64 |
| Vac. | 0 | 0 | .50 | .50 | .75 | 1.00 | 1.00 | 1.50 |
| Dues Chkoff | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 |
| Taxable | 10.71 | 11.65 | 13.50 | 14.68 | 15.54 | 16.50 | 16.79 | 17.74 |
| H&W | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 |
| Pension | 0 | 0 | .60 | .60 | .85 | 1.20 | 1.50 | 1.75 |
| Int Pension | 0 | 0 | 1.30 | 1.30 | 1.40 | 1.40 | 1.40 | 1.40 |
| Sub Fund | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 |
| IMI Trng | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 |
| Promotion | .15 | .15 | .15 | .15 | .15 | .15 | .15 | .15 |
| Local Trng | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 |
| D.C. | 0 | 0 | 0 | 0 | 0 | 0 | .75 | .75 |
| Total | 17.07 | 18.01 | 21.76 | 22.94 | 24.15 | 25.46 | 26.80 | 28.00 |

| Tile Fin. App. | June 1, 2004 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| Taxable | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| Sub Fund | | | | | | | | |
| IMI Trng | | | | | | | | |
| Promotion | | | | | | | | |
| Local Trng | | | | | | | | |
| D.C. | | | | | | | | |
| Total | 17.64 | 18.62 | 22.50 | 23.72 | 24.97 | 26.32 | 27.71 | 28.95 |

19

| Tile Fin.App. | June 1,2005 (allocated at later date) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| Sub Fund | | | | | | | | |
| IMI Trng | | | | | | | | |
| Promotion | | | | | | | | |
| Local Trng | | | | | | | | |
| D.C. | | | | | | | | |
| **Total** | 18.21 | 19.23 | 23.24 | 24.50 | 25.79 | 27.18 | 28.62 | 29.90 |

| Tile Fin.App. | June 1,2006 (allocated at later date) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| Sub Fund | | | | | | | | |
| IMI Trng | | | | | | | | |
| Promotion | | | | | | | | |
| Local Trng | | | | | | | | |
| D.C. | | | | | | | | |
| **Total** | 18.78 | 19.84 | 23.98 | 25.28 | 26.61 | 28.04 | 29.53 | 30.85 |

| Tile Fin.App. | June 1,2007 (allocated at later date) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| Sub Fund | | | | | | | | |
| IMI Trng | | | | | | | | |
| Promotion | | | | | | | | |
| Local Trng | | | | | | | | |
| D.C. | | | | | | | | |
| **Total** | 19.35 | 20.45 | 24.72 | 26.06 | 27.43 | 28.90 | 30.44 | 31.80 |

All apprentices shall advance per the J.A.T.C. (standards)

E.   **MARBLE MASON (MM)**
WAGES AND FRINGES

| | JAN 1 2004 | JUNE 1 2004 |
|---|---|---|
| | MM | MM |
| Base Rate | $ 24.50 | |
| Vac. | 2.00 | |
| Dues Chkoff | 1.60 | |
| **Taxable** | **$ 28.10** | |
| H&W | 5.10 | |
| Pension | 3.00 | |
| Int. Pension | 1.50 | |
| IMI Training | .54 | |
| Local Training | .07 | |
| Ann/D.C. | 1.45 | |
| **Total** | **$ 39.76** | **$ 41.26** |

20

21

E.   MARBLE MASON (MM)
WAGES AND FRINGES
(allocated at later date)

| | JUNE 1 2005 MM | JUNE 1 2006 MM | JUNE 1 2007 MM |
|---|---|---|---|
| Base Rate | | | |
| Vac. | | | |
| Dues Chkoff | | | |
| **Taxable** | | | |
| H&W | | | |
| Pension | | | |
| Int. Pension | | | |
| IMI Training | | | |
| Local Training | | | |
| Ann./D.C. | | | |
| **Total** | $ 42.76 | $ 44.26 | $ 45.76 |

Marble Finisher (Helper)
Wage Rates Effective:

| | JAN 1 2004 FN | JUNE 1 2004 FN |
|---|---|---|
| Base Rate | $ 19.01 | |
| Vac. | 2.00 | |
| Dues Chkoff | 1.60 | |
| **Taxable** | $ 22.61 | |
| H&W | 5.10 | |
| Pension | 3.00 | |
| Int. Pension | 1.50 | |
| Sub Fund | .50 | |
| IMI Training | .54 | |
| Local Training | .07 | |
| Ann./D.C. | 1.45 | |
| **Total** | $ 34.77 | $ 35.97 |

22

Marble Finisher (Helper) Wage Rates Effective: (allocated at later date)

| | JUNE 1 2005 FN | JUNE 1 2006 FN | JUNE 1 2007 FN |
|---|---|---|---|
| Base Rate | | | |
| Vac. | | | |
| Dues Chkoff | | | |
| **Taxable** | | | |
| H&W | | | |
| Pension | | | |
| Int. Pension | | | |
| Sub Fund | | | |
| IMI Training | | | |
| Local Training | | | |
| Ann./D.C. | | | |
| **Total** | $ 37.17 | $ 38.37 | $ 39.57 |

23

Case 1:07-cv-02304-RBW     Document 5-5     Filed 04/11/2008     Page 101 of 119

Marble Mason Improver
(2005,2006,2007 allocated at later date)

| | | 1-1-04 | | | 6-1-04 | | | 6-1-05 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 1 | 2 | 3 | 1 | 2 | 3 |
| Base rate | | $ 19.81 | $ 20.31 | $ 21.06 | | | | | | |
| Vac. | | $ 2.00 | $ 2.00 | $ 2.00 | | | | | | |
| Dues Ckoff | | $ 1.60 | $ 1.60 | $ 1.60 | | | | | | |
| Taxable | | $ 23.41 | $ 23.91 | $ 24.66 | | | | | | |
| | | | | | | | | | | |
| H & W | | $ 5.10 | $ 5.10 | $ 5.10 | | | | | | |
| Pension | | $ 3.00 | $ 3.00 | $ 3.00 | | | | | | |
| Int. Pen | | $ 1.50 | $ 1.50 | $ 1.50 | | | | | | |
| IMI | | $ 0.54 | $ 0.54 | $ 0.54 | | | | | | |
| Loc Train | | $ 0.07 | $ 0.07 | $ 0.07 | | | | | | |
| D.C. | | $ 1.45 | $ 1.45 | $ 1.45 | | | | | | |
| | | | | | | | | | | |
| Total | | 35.07 | 35.57 | 36.32 | 36.57 | 37.07 | 37.82 | 38.07 | 38.57 | 39.32 |

| | | 6-1-06 | | | 6-1-07 | | |
|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 1 | 2 | 3 |
| Total | | 39.57 | 40.07 | 40.82 | 41.07 | 41.57 | 42.32 |

24

**G.**   **MARBLE TRAINEE WAGES/FRINGES**
Effective Dates June 1st, 2003 through May 31, 2008, all Marble Trainee Finishers are to be paid as follows: the columns set forth below represent six-month periods during which an Employee will be expected to work a minimum of 850 hours. Effective June 1, 2003

MARBLE TRAINEE WAGES   JAN 1 2004

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | 9.21 | 10.15 | 11.50 | 12.68 | 13.29 | 14.00 | 14.29 | 14.74 | 15.17 | 16.21 |
| Vac. | 0 | 0 | .50 | .50 | .75 | 1.00 | 1.00 | 1.50 | 1.75 | 1.75 |
| Dues Chkoff | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 |
| Taxable | 10.81 | 11.75 | 13.60 | 14.78 | 15.64 | 16.60 | 16.89 | 17.84 | 18.52 | 19.56 |
| H&W | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 |
| Pension | 0 | 0 | .60 | .60 | .85 | 1.20 | 1.50 | 1.75 | 2.10 | 2.10 |
| Int Pension | 0 | 0 | 1.30 | 1.30 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 |
| Sub Fund | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 |
| IMI Trng | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 |
| Local Trng | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 |
| D.C. | 0 | 0 | 0 | 0 | 0 | 0 | .75 | .75 | .75 | .75 |
| Total | 17.02 | 17.96 | 21.71 | 22.89 | 24.10 | 25.41 | 26.75 | 27.95 | 28.98 | 30.02 |

Marble Trainee   June 1, 2004

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @#10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | | | | | | | | | | |
| Vac. | | | | | | | | | | |
| Dues Chkoff | | | | | | | | | | |
| Taxable | | | | | | | | | | |
| H&W | | | | | | | | | | |
| Pension | | | | | | | | | | |
| Int Pension | | | | | | | | | | |
| Sub Fund | | | | | | | | | | |
| IMI Training | | | | | | | | | | |
| Local Trng | | | | | | | | | | |
| D.C. | | | | | | | | | | |
| Total | 17.59 | 18.57 | 22.45 | 23.67 | 24.92 | 26.27 | 27.66 | 28.90 | 29.96 | 31.04 |

25

| Marble Trainee | June 1, 2005 (allocated at later date) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
| Base Rate | | | | | | | | | | |
| Vac. | | | | | | | | | | |
| Dues Ckoff | | | | | | | | | | |
| Taxable | | | | | | | | | | |
| H&W | | | | | | | | | | |
| Pension | | | | | | | | | | |
| Int Pension | | | | | | | | | | |
| Sub Fund | | | | | | | | | | |
| IMI Training | | | | | | | | | | |
| Local Trng | | | | | | | | | | |
| D.C. | | | | | | | | | | |
| Total | 18.16 | 19.18 | 23.19 | 24.45 | 25.74 | 27.13 | 28.57 | 29.85 | 30.94 | 32.06 |

| Marble Trainee | June 1, 2006 (allocated at later date) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
| Base Rate | | | | | | | | | | |
| Vac. | | | | | | | | | | |
| Dues Ckoff | | | | | | | | | | |
| Taxable | | | | | | | | | | |
| H&W | | | | | | | | | | |
| Pension | | | | | | | | | | |
| Int Pension | | | | | | | | | | |
| Sub Fund | | | | | | | | | | |
| IMI Training | | | | | | | | | | |
| Local Trng | | | | | | | | | | |
| D.C. | | | | | | | | | | |
| Total | 18.73 | 19.79 | 23.93 | 25.23 | 26.56 | 27.99 | 29.48 | 30.80 | 31.92 | 33.08 |

| Marble Trainee | June 1, 2007 (allocated at later date) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
| Base Rate | | | | | | | | | | |
| Vac. | | | | | | | | | | |
| Dues Ckoff | | | | | | | | | | |
| Taxable | | | | | | | | | | |
| H&W | | | | | | | | | | |
| Pension | | | | | | | | | | |
| Int Pension | | | | | | | | | | |
| Sub Fund | | | | | | | | | | |
| IMI Training | | | | | | | | | | |
| Local Trng | | | | | | | | | | |
| D.C. | | | | | | | | | | |
| Total | 19.30 | 20.40 | 24.67 | 26.01 | 27.38 | 28.85 | 30.39 | 31.75 | 32.90 | 34.10 |

*The Joint Apprenticeship & Training Committee will decide if the Employee should remain at that level or may be advanced to the next stage.

**Advancement to Marble Improver to be approved by the Joint Apprenticeship & Training Committee.

@ levels # 9, # 10 prior to 6/1/03 protected by the J.A.T.C.

Level #8 shall be top level trainee after 6/1/03

H.    **APPRENTICE MARBLE MASONS' and APPRENTICE FINISHERS/ HELPERS WAGE RATES**

The Joint Apprenticeship and Training Committee shall advance all Apprentices.

26

27

**Effective June 1, 2003 - Each period equals 6 months**

APPRENTICE MARBLE MASON
WAGES AND
FRINGES

JAN 1 2004

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 12.55 | 13.96 | 14.59 | 16.09 | 16.96 | 19.96 | 20.73 | 21.50 |
| Vac | .50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 | 2.00 |
| Dues Ckoff | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 |
| Taxable | 14.65 | 16.56 | 17.69 | 19.44 | 20.56 | 23.56 | 24.33 | 25.10 |
| | | | | | | | | |
| H&W | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 |
| Pension | .60 | 1.20 | 1.75 | 2.10 | 2.50 | 2.60 | 2.60 | 2.60 |
| Int Pension | 1.30 | 1.30 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 |
| IMI Training | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 |
| Local Training | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 |
| D.C. | 0 | 0 | .75 | .75 | 1.25 | 1.25 | 1.25 | 1.25 |
| Total | 22.26 | 24.77 | 27.30 | 29.40 | 31.42 | 34.52 | 35.29 | 36.06 |

App.
MarbleMason

JUNE 1 2004

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Ckoff | | | | | | | | |
| Taxable | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Local Training | | | | | | | | |
| D.C. | | | | | | | | |
| Total | 22.91 | 25.49 | 28.10 | 30.30 | 32.34 | 35.52 | 36.31 | 37.10 |

28

App.
Marble Mason

JUNE 1 2005
(allocated at
later date)

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Ckoff | | | | | | | | |
| Taxable | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Local Trng | | | | | | | | |
| D.C. | | | | | | | | |
| Total | 23.56 | 26.21 | 28.90 | 31.20 | 33.26 | 36.52 | 37.33 | 38.14 |

App.
Marble Mason

JUNE 1 2006
(allocated at
later date)

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Ckoff | | | | | | | | |
| Taxable | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Local Trng | | | | | | | | |
| D.C. | | | | | | | | |
| Total | 24.21 | 26.93 | 29.70 | 32.10 | 34.18 | 37.52 | 38.55 | 39.18 |

29

App.
Marble Mason

**JUNE 1 2007**
(allocated at later date)

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Ckoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Local Trng | | | | | | | | |
| D.C. | | | | | | | | |
| **Total** | 24.86 | 27.65 | 30.50 | 33.00 | 35.10 | 38.52 | 39.37 | 40.22 |

## APPRENTICE MARBLE FINISHERS

### Effective June 1, 2003 - Each period is equal to 6 Months

MARBLE Finisher (Helper) Apprentice

WAGES AND FRINGES    JAN 1 2004

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 9.21 | 10.15 | 11.50 | 12.68 | 13.29 | 14.00 | 14.29 | 14.74 |
| Vac. | 0 | 0 | .50 | .50 | .75 | 1.00 | 1.00 | 1.50 |
| Dues Chkoff | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 |
| **Taxable** | 10.81 | 11.75 | 13.60 | 14.78 | 15.64 | 16.60 | 16.89 | 17.84 |
| H&W | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 |
| Pension | 0 | 0 | .60 | .60 | .85 | 1.20 | 1.50 | 1.75 |
| Int Pension | 0 | 0 | 1.30 | 1.30 | 1.40 | 1.40 | 1.40 | 1.40 |
| Sub Fund | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 |
| IMI Training | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 |
| Local Training | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 |
| ANNUITY/D.C. | 0 | 0 | 0 | 0 | 0 | 0 | .75 | .75 |
| **Total** | 17.02 | 17.96 | 21.71 | 22.89 | 24.10 | 25.41 | 26.75 | 27.95 |

June 1, 2004

| App. Marble Fin. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Ckoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| Sub Fund | | | | | | | | |
| IMI Training | | | | | | | | |
| Local Training | | | | | | | | |
| D.C. | | | | | | | | |
| **Total** | 17.59 | 18.57 | 22.45 | 23.67 | 24.92 | 26.27 | 27.66 | 28.90 |

App. Marble Fin.

**June 1, 2005**
(allocated at later date)

| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* |
|---|---|---|---|---|---|---|---|---|
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| Sub Fund | | | | | | | | |
| IMI Trng | | | | | | | | |
| Local Trng | | | | | | | | |
| D.C. | | | | | | | | |
| **Total** | 18.16 | 19.18 | 23.19 | 24.45 | 25.74 | 27.13 | 28.57 | 29.85 |

| App. Marble Fin. | | | | June 1, 2006 (allocated at later date) | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* |
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| Sub Fund | | | | | | | | |
| IMI Trng | | | | | | | | |
| Local Trng | | | | | | | | |
| D.C. | | | | | | | | |
| **Total** | 18.73 | 19.79 | 23.93 | 25.23 | 26.56 | 27.99 | 29.48 | 30.80 |

| App. Marble Fin. | | | | June 1, 2007 (allocated at later date) | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | 8* |
| Base Rate | | | | | | | | |
| Vac. | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| Sub Fund | | | | | | | | |
| IMI Trng | | | | | | | | |
| Local Trng | | | | | | | | |
| D.C. | | | | | | | | |
| **Total** | 19.30 | 20.40 | 24.67 | 26.01 | 27.38 | 28.85 | 30.39 | 31.75 |

32

I.    **TERRAZZO WORKERS' WAGES/FRINGE**
Effective June 1, 2003
TERRAZZO WORKERS (TW)

| | JAN 1 2004 TW | JUNE 1 2004 TW |
|---|---|---|
| Base Rate | $ 24.03 | |
| Vacation Holiday | 2.00 | |
| Dues Ckoff | 1.60 | |
| **Taxable** | **$ 27.63** | |
| | | |
| H&W | 5.10 | |
| Pension | 3.00 | |
| Int. Pension | 1.50 | |
| IMI Training | .54 | |
| Promotion | .10 | |
| Local Training | .07 | |
| Annuity | 1.45 | |
| **Total** | **$ 39.39** | **$ 40.89** |

II.    **TERRAZZO WORKERS' WAGES/FRINGE**
(allocated at later date)
TERRAZZO WORKERS (TW)

| | JUNE 1 2005 TW | JUNE 1 2006 TW | JUNE 1 2007 TW |
|---|---|---|---|
| Base Rate | | | |
| Vacation Holiday | | | |
| Dues Ckoff | | | |
| **Taxable** | | | |
| | | | |
| H&W | | | |
| Pension | | | |
| Int. Pension | | | |
| IMI Training | | | |
| Promotion | | | |
| Local Training | | | |
| Annuity | | | |
| **Total** | **$ 42.39** | **$ 43.89** | **$ 45.39** |

33

**Terrazzo Finisher (Helper) Wages and Fringes.  Effective June 1, 2003**

| | JAN 1 2004 | JUNE 1 2004 |
|---|---|---|
| | FN | FN |
| Base Rate | $ 19.41 | |
| Vacation Holiday | 2.00 | |
| Dues Checkoff | 1.60 | |
| **Taxable** | **$ 23.01** | |
| Health / Welfare | 5.10 | |
| Pension | 3.00 | |
| Int. Pension | 1.50 | |
| Sub Fund | .50 | |
| IMI Training | .54 | |
| Promotion | .20 | |
| Local Training | .07 | |
| Annuity/D.C. | 1.45 | |
| **Total** | **$ 35.37** | **$ 36.57** |

**Terrazzo Finisher (Helper) Wages and Fringes.  (allocated at later date)**

| | JUNE 1 2005 | JUNE 1 2006 | JUNE 1 2007 |
|---|---|---|---|
| | FN | FN | FN |
| Base Rate | | | |
| Vacation Holiday | | | |
| Dues Checkoff | | | |
| **Taxable** | | | |
| Health / Welfare | | | |
| Pension | | | |
| Int. Pension | | | |
| Sub Fund | | | |
| IMI Training | | | |
| Promotion | | | |
| Local Training | | | |
| Annuity/D.C. | | | |
| **Total** | **$ 37.77** | **$ 38.97** | **$ 40.17** |

34

Terrazzo Improver Wages and Fringes

(2005,2006,2007 allocated at later date)

| | 1-1-04 | | | 6-1-04 | | | 6-1-05 | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 1 | 2 | 3 | 1 | 2 | 3 |
| base rate | $ 20.21 | $20.71 | $21.46 | | | | | | |
| vac. | $ 2.00 | $ 2.00 | $ 2.00 | | | | | | |
| dues ckoff | $ 1.60 | $ 1.60 | $ 1.60 | | | | | | |
| taxable | $ 23.81 | $24.31 | $25.06 | | | | | | |
| H & W | $ 5.10 | $ 5.10 | $ 5.10 | | | | | | |
| pension | $ 3.00 | $ 3.00 | $ 3.00 | | | | | | |
| Int. Pen | $ 1.50 | $ 1.50 | $ 1.50 | | | | | | |
| IMI | $ 0.54 | $ 0.54 | $ 0.54 | | | | | | |
| Prom. | $ 0.10 | $ 0.10 | $ 0.10 | | | | | | |
| Loc Train | $ 0.07 | $ 0.07 | $ 0.07 | | | | | | |
| D.C. | $ 1.45 | $ 1.45 | $ 1.45 | | | | | | |
| **Total** | $ 35.57 | $36.07 | $36.82 | $ 37.07 | $ 37.57 | $ 38.32 | $ 38.57 | $ 39.07 | $ 39.82 |

| | 6-1-06 | | | 6-1-07 | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 1 | 2 | 3 |
| **Total** | $ 40.07 | $40.57 | $41.32 | $ 41.57 | $ 42.07 | $ 42.82 |

35

K.    **TERRAZZO TRAINEE WAGES/FRINGES**

Effective June 1, 2003 through May 31, 2008, all Terrazzo Trainee Finishers are to be paid as follows: The columns set forth below represent six-month periods during which an Employee will be expected to work a minimum of 850 hours.

Effective June 1, 2003

TERRAZZO TRAINEE
WAGES AND
FRINGES

January 1, 2004

|  | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate | 10.16 | 10.73 | 11.43 | 12.61 | 13.22 | 13.93 | 14.22 | 14.67 | 15.10 | 16.14 |
| Vac. | 0 | 0 | .50 | .50 | .75 | 1.00 | 1.00 | 1.50 | 1.75 | 1.75 |
| DuesChkoff | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 |
| Taxable | 11.76 | 12.33 | 13.53 | 14.71 | 15.57 | 16.53 | 16.82 | 17.77 | 18.45 | 19.49 |
|  |  |  |  |  |  |  |  |  |  |  |
| H&W | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 |
| Pension | 0 | 0 | .60 | .60 | .85 | 1.20 | 1.50 | 1.75 | 2.10 | 2.10 |
| Int Pension | 0 | 0 | 1.30 | 1.30 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 |
| Sub Fund | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 |
| IMI Training | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 |
| Promotion | .20 | .20 | .20 | .20 | .20 | .20 | .20 | .20 | .20 | .20 |
| Local Trng | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 |
| D.C. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | .75 | .75 | .75 |
| Total | 18.17 | 18.74 | 21.84 | 23.02 | 24.23 | 25.54 | 26.88 | 28.08 | 29.11 | 30.15 |

36

Terrazzo
Trainee        June 1, 2004

|  | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate |  |  |  |  |  |  |  |  |  |  |
| Vac. |  |  |  |  |  |  |  |  |  |  |
| DuesChkoff |  |  |  |  |  |  |  |  |  |  |
| **Taxable** |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
| H&W |  |  |  |  |  |  |  |  |  |  |
| Pension |  |  |  |  |  |  |  |  |  |  |
| Int Pension |  |  |  |  |  |  |  |  |  |  |
| Sub Fund |  |  |  |  |  |  |  |  |  |  |
| IMI Training |  |  |  |  |  |  |  |  |  |  |
| Promotion |  |  |  |  |  |  |  |  |  |  |
| Local Trng |  |  |  |  |  |  |  |  |  |  |
| D.C. |  |  |  |  |  |  |  |  |  |  |
| **Total** | 18.78 | 19.37 | 22.58 | 23.80 | 25.05 | 26.40 | 27.79 | 29.03 | 30.09 | 31.17 |

Terrazzo         June 1, 2005
Trainee          (allocated at
                 later date)

|  | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
|---|---|---|---|---|---|---|---|---|---|---|
| Base Rate |  |  |  |  |  |  |  |  |  |  |
| Vacation |  |  |  |  |  |  |  |  |  |  |
| Holiday |  |  |  |  |  |  |  |  |  |  |
| Dues |  |  |  |  |  |  |  |  |  |  |
| Checkoff |  |  |  |  |  |  |  |  |  |  |
| **Taxable** |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |
| Health / |  |  |  |  |  |  |  |  |  |  |
| Welfare |  |  |  |  |  |  |  |  |  |  |
| Pension |  |  |  |  |  |  |  |  |  |  |
| Int Pension |  |  |  |  |  |  |  |  |  |  |
| Sub Fund |  |  |  |  |  |  |  |  |  |  |
| IMI Trng |  |  |  |  |  |  |  |  |  |  |
| Promotion |  |  |  |  |  |  |  |  |  |  |
| Local Trng |  |  |  |  |  |  |  |  |  |  |
| D.C. |  |  |  |  |  |  |  |  |  |  |
| **Total** | 19.35 | 19.98 | 23.32 | 24.58 | 25.87 | 27.76 | 28.70 | 29.98 | 31.07 | 32.19 |

37

| Terrazzo Trainee | | June 1, 2006 (allocated at later date) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
| Base Rate | | | | | | | | | | |
| Vacation | | | | | | | | | | |
| Holiday | | | | | | | | | | |
| Dues | | | | | | | | | | |
| Checkoff | | | | | | | | | | |
| Taxable | | | | | | | | | | |
| Health / Welfare | | | | | | | | | | |
| Pension | | | | | | | | | | |
| Int Pension | | | | | | | | | | |
| Sub Fund | | | | | | | | | | |
| IMI Trng | | | | | | | | | | |
| Promotion | | | | | | | | | | |
| Local Trng | | | | | | | | | | |
| D.C. | | | | | | | | | | |
| Total | 19.92 | 20.59 | 24.06 | 25.36 | 26.69 | 28.12 | 29.61 | 30.93 | 32.05 | 33.21 |

| Terrazzo Trainee | | June 1, 2007 (allocated at later date) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2* | 3 | 4* | 5 | 6* | 7 | #8* | @9 | @10** |
| Base Rate | | | | | | | | | | |
| Vacation | | | | | | | | | | |
| Holiday | | | | | | | | | | |
| Dues | | | | | | | | | | |
| Checkoff | | | | | | | | | | |
| Taxable | | | | | | | | | | |
| Health / Welfare | | | | | | | | | | |
| Pension | | | | | | | | | | |
| Int Pension | | | | | | | | | | |
| Sub Fund | | | | | | | | | | |
| IMI Trng | | | | | | | | | | |
| Promotion | | | | | | | | | | |
| Local Trng | | | | | | | | | | |
| D.C. | | | | | | | | | | |
| Total | 20.49 | 21.20 | 24.80 | 26.14 | 27.51 | 29.98 | 30.52 | 31.88 | 33.03 | 34.23 |

*The Joint Apprenticeship & Training Committee will decide if the Employee should remain at that level or may be advanced to the next stage.

**Advancement to Terrazzo Improver to be approved by the Joint Apprenticeship & Training Committee

@ levels #9, # 10 prior to 6/1/03 protected by J.A.T.C.

Level #8 shall be top level trainee after 6/1/03

L.    **APPRENTICE TERRAZZO WORKERS'/FINISHERS WAGE RATES**
Joint Apprenticeship and Training committee shall advance all Apprentices.

**APPRENTICE TERRAZZO WORKERS**
Effective June 1,2003 - Each period below shall equal 6 months

APPRENTICE TERRAZZO WORKER
WAGES AND FRINGES

| | JAN 1 2004 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | 12.45 | 13.86 | 14.49 | 15.99 | 17.11 | 19.78 | 20.80 | 21.57 |
| Vacation Holiday | .50 | 1.00 | 1.50 | 1.75 | 2.00 | 2.00 | 2.00 | 2.00 |
| Dues Checkoff | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 |
| Taxable | 14.55 | 16.46 | 17.59 | 19.34 | 20.71 | 23.38 | 24.40 | 25.17 |
| Health / Welfare | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 |
| Pension | .60 | 1.20 | 1.75 | 2.10 | 2.50 | 2.60 | 2.60 | 2.60 |
| Int Pension | 1.30 | 1.30 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 | 1.40 |
| IMI Training | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 |
| Promotion | .10 | .10 | .10 | .10 | .10 | .10 | .10 | .10 |
| Local Training | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 |
| D.C. | .0 | 0 | .75 | .75 | 1.00 | 1.25 | 1.25 | 1.25 |
| Total | 22.26 | 24.77 | 27.30 | 29.40 | 31.42 | 34.44 | 35.46 | 36.23 |

| App. Terrazzo Worker | JUNE 1 2004 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vac | | | | | | | | |
| Dues Chkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| H&W | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Promotion | | | | | | | | |
| Local Training | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | |
| Total | 22.91 | 25.49 | 28.10 | 30.30 | 32.34 | 35.44 | 36.48 | 37.27 |

| App. Terrazzo Worker | JUNE 1 2005 (allocated at later date) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vacation Holiday | | | | | | | | |
| Dues Checkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| Health / Welfare | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Promotion | | | | | | | | |
| Local Training | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | |
| Total | 23.56 | 26.21 | 28.90 | 31.20 | 33.26 | 36.44 | 37.50 | 38.31 |

40

| App. Terrazzo Worker | JUNE 1 2006 (allocated at later date) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vacation Holiday | | | | | | | | |
| Dues Checkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| Health / Welfare | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Promotion | | | | | | | | |
| Local Training | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | |
| Total | 24.21 | 26.93 | 29.70 | 32.10 | 34.18 | 37.44 | 38.52 | 39.35 |

| App. Terrazzo Worker | JUNE 1 2007 (allocated at later date) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vacation Holiday | | | | | | | | |
| Dues Checkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| Health / Welfare | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| IMI Training | | | | | | | | |
| Promotion | | | | | | | | |
| Local Training | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | |
| Total | 24.86 | 27.65 | 30.50 | 33.00 | 35.10 | 38.44 | 39.54 | 40.39 |

41

## APPRENTICE TERRAZZO FINISHERS

### Each period shall equal 6 Months - Effective June 1, 2003

TERRAZZO Finisher (Helper) Apprentice
WAGES AND FRINGES

JAN 1 2004

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate | 10.16 | 10.73 | 11.43 | 12.61 | 13.22 | 13.93 | 14.22 | 14.67 |
| Vac. | 0 | 0 | .50 | .50 | .75 | 1.00 | 1.00 | 1.50 |
| Dues Chkoff | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 | 1.60 |
| Taxable | 11.76 | 12.33 | 13.53 | 14.71 | 15.57 | 16.53 | 16.82 | 17.77 |
|  |  |  |  |  |  |  |  |  |
| H&W | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 | 5.10 |
| Pension | 0 | 0 | .60 | .60 | .85 | 1.20 | 1.50 | 1.75 |
| Int Pension | 0 | 0 | 1.30 | 1.30 | 1.40 | 1.40 | 1.40 | 1.40 |
| Sub Fund | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 |
| IMI Training | .54 | .54 | .54 | .54 | .54 | .54 | .54 | .54 |
| Promotion | .20 | .20 | .20 | .20 | .20 | .20 | .20 | .20 |
| Local Training | .07 | .07 | .07 | .07 | .07 | .07 | .07 | .07 |
| ANNUITY/D.C. | 0 | 0 | 0 | 0 | 0 | 0 | .75 | .75 |
| Total | 18.17 | 18.74 | 21.84 | 23.02 | 24.23 | 25.54 | 26.88 | 28.08 |

App. Terrazzo Fin.    June 1, 2004

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate |  |  |  |  |  |  |  |  |
| Vacation Holiday |  |  |  |  |  |  |  |  |
| Dues Checkoff |  |  |  |  |  |  |  |  |
| Taxable |  |  |  |  |  |  |  |  |
| Health / Welfare |  |  |  |  |  |  |  |  |
| Pension |  |  |  |  |  |  |  |  |
| Int Pension |  |  |  |  |  |  |  |  |
| Sub Fund |  |  |  |  |  |  |  |  |
| IMI Training |  |  |  |  |  |  |  |  |
| Promotion |  |  |  |  |  |  |  |  |
| Local Training |  |  |  |  |  |  |  |  |
| ANNUITY/D.C. |  |  |  |  |  |  |  |  |
| Total | 18.78 | 19.37 | 22.58 | 23.80 | 25.05 | 26.40 | 27.79 | 29.03 |

42

App. Terrazzo Fin.    June 1, 2005 (allocated at later date)

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate |  |  |  |  |  |  |  |  |
| Vacation Holiday |  |  |  |  |  |  |  |  |
| Dues Checkoff |  |  |  |  |  |  |  |  |
| Taxable |  |  |  |  |  |  |  |  |
| Health / Welfare |  |  |  |  |  |  |  |  |
| Pension |  |  |  |  |  |  |  |  |
| Int Pension |  |  |  |  |  |  |  |  |
| Sub Fund |  |  |  |  |  |  |  |  |
| IMI Training |  |  |  |  |  |  |  |  |
| Promotion |  |  |  |  |  |  |  |  |
| Local Training |  |  |  |  |  |  |  |  |
| ANNUITY/D.C. |  |  |  |  |  |  |  |  |
| Total | 19.35 | 19.98 | 23.32 | 24.58 | 25.87 | 27.76 | 28.70 | 29.98 |

App. Terrazzo Fin.    June 1, 2006 (allocated at later date)

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Base Rate |  |  |  |  |  |  |  |  |
| Vacation Holiday |  |  |  |  |  |  |  |  |
| Dues Checkoff |  |  |  |  |  |  |  |  |
| Taxable |  |  |  |  |  |  |  |  |
| Health / Welfare |  |  |  |  |  |  |  |  |
| Pension |  |  |  |  |  |  |  |  |
| Int Pension |  |  |  |  |  |  |  |  |
| Sub Fund |  |  |  |  |  |  |  |  |
| IMI Training |  |  |  |  |  |  |  |  |
| Promotion |  |  |  |  |  |  |  |  |
| Local Training |  |  |  |  |  |  |  |  |
| ANNUITY/D.C. |  |  |  |  |  |  |  |  |
| Total | 19.92 | 20.59 | 24.06 | 25.36 | 26.69 | 28.12 | 29.61 | 30.93 |

43

| App. Terrazzo<br>Fin. | June 1, 2007<br>(allocated at<br>later date) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Base Rate | | | | | | | | |
| Vacation Holiday | | | | | | | | |
| Dues Checkoff | | | | | | | | |
| **Taxable** | | | | | | | | |
| | | | | | | | | |
| Health / Welfare | | | | | | | | |
| Pension | | | | | | | | |
| Int Pension | | | | | | | | |
| Sub Fund | | | | | | | | |
| IMI Training | | | | | | | | |
| Promotion | | | | | | | | |
| Local Training | | | | | | | | |
| ANNUITY/D.C. | | | | | | | | |
| Total | 20.49 | 21.20 | 24.80 | 26.14 | 27.51 | 29.98 | 30.52 | 31.88 |

### 4.3.    Advancement.

A.    **Improver.** Tile, Marble and Terrazzo Finishers are to be advanced to Improver status based on the Joint Apprenticeship & Training Fund Committee approval. The Joint Apprenticeship & Training Fund Committee shall be comprised of four Union appointees and four Association appointees, provided, however, that the voting strength of both sides shall always be equal. The Committee shall meet quarterly or at such other times as they may designate.

   1.    Improvers

      a.    To be reviewed quarterly during the first year worked and must attend training classes during the year. Employee may be moved to another Employer at the discretion of the Joint Apprenticeship & Training Committee.

      b.    Must attend training classes during the year. Employee may be moved to another Employer at the discretion of the Committee.

44

      c.    Must attend training classes during the year. Employee may be moved to another Employer at the discretion of the Committee.

      d.    After three years Improver to receive Full Tile, Marble or Terrazzo Journeyperson's wages and fringe benefits or return to original status prior to becoming an Improver, at the discretion of the Joint Apprenticeship & Training Committee.

   Present Full Finishers and present Trainee Finishers will be protected by the J.A.T.C. to insure job security.

C.    Certified Terrazzo Grinder. Certified Terrazzo Grinder status shall be determined after said finisher has completed a minimum of 88 hours of specialized training and has been reviewed by the J.A.T.C. A Certified Grinder shall receive .50 over full finisher's base rate.

D.    Terrazzo Finishers/Terrazzo Grinders: Employees grinding vertical work and stairs shall receive an additional $1.75 per hour above their respective base rate.

E.    Journeymen Testing. Employees who have been journeymen less than four years shall be subject to testing once during the term of the contract. The form of the test shall be designed to establish journeymen competency to perform the thick-bed application for installation of material. In the event that such journeyperson fails to qualify under the test given, his base rate will be subject to reduction to not less than the Improvers' wage rate for first year Improver, at the discretion of the Apprenticeship & Training Fund Committee, unless he attends and successfully completes a training course conducted by the Apprenticeship & Training Fund.

### 4.4.    Overtime, Holiday Pay & Work Hours.

A.    Eight consecutive hours, exclusive of an unpaid ½ hour lunch period, shall constitute a regular day's work. The Employer, without the payment of premium time, may modify the starting time of any Employee from the regular starting time of 8:00 A.M., to any time from 6:00 A.M. to 9:00 A.M.

B.    An overtime rate of one and one half times the Employee's regular base rate of pay shall be paid for the first two hours of overtime work Monday through Friday and for the first eight hours of work on Saturday.

   Double time shall be paid for all hours worked in excess of ten hours in any one day, Monday through Friday, for all hours worked in excess of eight hours on Saturday, for all hours worked on Sundays as well as on any of the following holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day.

45

C.      Employees with good attendance records will be given preference for overtime work. Any Employee without an excused absence during any pay period will not be eligible for overtime work assignments during the next pay period.

D.      Employees reporting for work upon order by Employer and not put to work for any reason except weather conditions, fire, accident, or other unavoidable causes shall receive two hours show up pay for lost time.

E.      Any Employer who employs an Employee retired from the Pension Fund will report the same to the Union business agent. All active workers shall be employed before retirees may return to work.

4.5.    **Maintenance Work**. Maintenance work shall consist of all repair and patching of tile, marble or terrazzo, to restore any damaged work to its original condition. All overtime in maintenance work shall be paid at the rate of time and one half. Maintenance work performed on Sundays and holidays shall be paid at the double time rate. The maintenance work provision does not include renovation, remodeling or new work. Should the Employer engage in maintenance work in any building, plant, or facility, the Employer shall contact the Union for its approval of such work at least 48 hours prior to starting. Failure of the Employer to contact the Union within the prescribed time will result in the denial of the maintenance work provision of this Agreement. Maintenance work shall be performed under the provisions of the National Maintenance Agreement providing the projects are approved by the Bricklayers and Allied Craftworkers International Union.

4.6.    **Fringe Benefits**. The Employer shall, on or before the 15th day of each month, make the contributions required hereunder accompanied by such reports as the Trustees may designate. The Employer specifically understands that, in addition to all of the other terms and conditions contained therein, the Agreement and Declaration of Trust of each respective Fringe Benefit Fund empowers the Trustees to require the Employer to post cash as a security deposit in the amount set by the Trustees in specified circumstances and to impose interest, liquidated damages, or such other remedies on a uniform basis for failure of any Employer to make the required contributions in proper amount when due. The terms of each Fringe Benefit Fund's Plan, Trust or any Policies and Procedures, as amended from time to time, are incorporated herein and made a part of this Agreement.

Whenever the Trustees of the Funds believe it to be in the best interest of the Fringe Benefit Funds to require an Employer to pay contributions more frequently than monthly, including weekly, the Trustees shall so advise the Employer of their demand in writing and the Employer shall comply therewith. Circumstances which may give rise to a determination by the Trustees that a more frequent contribution schedule is required due to frequent delinquency, lack of previous payment history with the Employer, or any other facts or circumstances which give rise to a concern by the Trustees that contributions may not be made timely in the future. Any decision rendered under this Section shall be in the sole discretion of the Trustees.

46

A.      **Health and Welfare**. The Associations and the Union, in conjunction with the other unions and Employer representative, have created an Insurance Trust Fund, known as BAC Local 32 Insurance Fund, administered jointly as provided by Federal law. Each Employer shall contribute to the Insurance Fund the hourly contribution rate set forth in Article IV hereof, for each hour worked by each Employee performing work within the trade jurisdiction of the Union. An Employee who has a financial interest as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay to the Insurance Fund on the basis of 160 hours per month.

B.      **Pension**. The Associations and the Union, in conjunction with other unions and Employer representatives, have created a Pension Fund, known as the BAC Local 32 Pension Fund, administered jointly as provided by Federal law. The Employer agrees to contribute the hourly contribution rate set forth in Article IV hereof for each hour worked by each Employee performing work within the trade jurisdiction of the Union. Any person performing work within the trade jurisdiction of the Union who has a financial interest in a company, whether the interest be as sole proprietor, partner, shareholder, officer, or some similar financial interest pay to the Fund on the basis of 160 hours per month.

C.      **Bricklayers and Trowel Trades International Pension Fund and Participation Agreement**.

1.      The Employer agrees to make payments to the Bricklayers and Trowel Trades International Pension Fund for each hour, or portion thereof, worked by an Employee covered by this Agreement, in accordance with the rates set forth in Article IV hereof. An Employee has a financial interest in a company, direct or indirect, which is signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest shall pay to the Fund on the basis of 160 hours per month.

a.      Contributions shall be paid on behalf of any Employee starting with the Employee's first day of employment in a job classification covered by the Collective Bargaining Agreement. This includes, but is not limited to apprentices, finishers, trainees and probationary Employees.

b.      The payments to the International Pension Fund required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust dated June 19, 1972, a copy of which has been signed by the Employer in the space provided at the end of such agreement, or to

47

which the Employer has become bound by the signing of some other written instrument.

c. It is agreed that all contributions shall be made at such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension Fund.

d. If an Employer fails to make contributions to the Pension Fund within 15 days after the date required by the Trustee, the Union shall have the right to take whatever steps are necessary to secure compliance with the Agreement, any provision of the Collective Bargaining Agreement to the contrary notwithstanding and the Employer shall be liable for all costs for collecting the payments due together with attorney's fees and such liquidated damages which may be assessed by the Trustees. The Employer's liability for payment hereunder shall not be subject to the grievance or arbitration procedure nor to any "no strike" clause which may be provided under the Collective Bargaining Agreement.

e. It is agreed that the Pension Plan adopted by the Trustees of the said Pension Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

f. The parties agree that this Participation Agreement shall be considered a part of the Collective Bargaining Agreement between the undersigned parties.

g. Copies of the Collective Bargaining Agreement and all renewal or extension agreements will be furnished promptly to the Pension Fund Office and, if not consistent with the Participation Agreement, can be used by the Trustees as the basis for termination of participation of the Employer.

h. The expiration date of the present Collective Bargaining Agreement between the undersigned parties is herein provided.

48

D.    **Defined Contribution Pension (DC.Annuity)**. The Association and the Union, in conjunction with other unions and employer representatives, have created a Defined Contribution Pension Plan (Annuity), known as the Tile, Terrazzo, Marble Industry Defined Contribution Plan, administered jointly as provided by Federal Law. The Employer agrees to contribute the hourly contribution rate set forth in Article IV hereof for each hour worked by each employee performing work within the trade jurisdiction of the Union. Any person performing work within the trade jurisdiction Union who has a financial interest in a company, whether the interest be a sole proprietor, partner, shareholder, or some similar financial interest, shall pay to the Fund on the basis of 160 hours per month.

E.    **Vacation & Holiday (Vac.)**. The Associations and the Union, have created a Vacation and Holiday Trust Fund administered jointly as provided by Federal Law. The Employer agrees to contribute the hourly contribution rate set forth in Article IV hereof, for each hour worked by each Employee covered hereunder (Trainees refer to Schedule) to the Vacation and Holiday Fund. All amounts contributed to the Vacation and Holiday Fund shall be subject to all applicable State and Federal employment taxes, including the withholding of income taxes. This amount shall be paid to the Trust Fund for distribution to the Employees and identified as Vacation and Holiday pay. The distribution to Employees shall take place during the calendar year, as determined by and based on a formula agreed upon by the Fund Trustees. Any person performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is a signatory to this Agreement whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest, may pay to the Fund on the basis of 160 hours per month.

F.    **Supplemental Unemployment Benefit Funds/Finishers Only**. The parties agree that there shall be created a Supplemental Unemployment Benefit Fund. It shall be administered jointly by an equal number of Employer and Employee Trustees under a written agreement and declaration of trust. The Associations shall designate and appoint Employer Trustees, and the Union shall designate and appoint Employee Trustees. Each Employer shall pay to the Supplemental Unemployment Benefit Fund the hourly contribution rate set forth in Article IV hereof per hour for all hours worked by the appropriate craft Finishers, Trainees and Finisher Apprentices in the bargaining unit covered by the Agreement. Any person performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is a signatory to this Agreement, whether the interest be as sole proprietor, partner, shareholder, officer, or some similar financial interest shall not pay to the Fund. The amount that would otherwise have been paid to this Fund shall be paid monthly to such depository or administrative office as the Union shall designate.

49

G.    **Local Training Fund (Local Trng).** The Employer agrees to pay to the Trustees of the Tile, Terrazzo and Marble Industry Apprenticeship & Training Fund or to such depository as the Trustees shall designate, the hourly contribution rate set forth in this Article IV for all hours worked by all Employees covered by this Agreement (including Trainees). Said money shall be paid and applied in accordance with the Plan and Trust Agreement establishing such Fund, together with any amendments thereto, and such lawful rules and regulations as the Trustees may from time to time establish. The Employer agrees to be bound by said Plan and Trust Agreement, any amendments thereto, and rules and regulations established by the Trustees. Any person subject to this provision performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is signatory to the Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay contributions on the basis of 160 hours per month.

H.    **International Masonry Institute Training Fund.** The Employer agrees to contribute to the International Masonry Institute Training Fund for all hours worked by Employees covered by this Agreement the hourly contribution rates set forth in Article IV hereof. The payments required by this Subsection shall be made to the International Masonry Institute, which was established under an Agreement and Declaration of Trust, March 14, 1961, as the successor trust to the predecessor International Masonry Institute (established under an Agreement and Declaration of Trust, July 22, 1970, as amended November 11, 1988) and/or to the predecessor International Masonry Apprenticeship Trust established under an Agreement and Declaration of Trust, November 6, 1974.    Any person subject to this provision performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is signatory to the Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay contributions on the basis of 160 hours per month.

I.    **Labor Management Fund** A    jointly-administered Labor-Management Trust shall be established by the parties for the purpose of promoting cooperation between the Employers and its Employees. The Employer will pay the sum of $.15 for each hour worked by any Employee doing bargaining unit work under this Contract to the Trust Fund so established, subject to same rules and regulations applicable hereunder with regard to the collection of fringe benefit contributions.

Any person performing work within the trade jurisdiction of the Union who has financial interest in a company, direct or indirect which is signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay to the Fund on the basis of 160 hours per month.

J.    **Union Dues - Check Off.** The Employer shall deduct from the wages of each Employee who has individually authorized such deduction in writing the amount designated as dues or assessments, as set forth in Article IV hereof for each hour worked by each covered Employee, and shall remit the amount so deducted to the Union monthly on or before the fifteenth (15th) day of the month following the month in which the wages were earned. The amount of dues or the manner of its assessment may be changed by the Union from time to time, and the Employer agrees to deduct and transmit same upon notification by the Union. Any such authorization by an Employee to deduct Union dues shall contain a provision required by law for revocation. Copies of any such authorization in the possession of the Union shall be deemed in the Employer's possession.

Any person subject to this provision performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is signatory to the Agreement, whether the interest be as a sole proprietor, partner, shareholder, officer, or some similar financial interest, shall pay Union dues on the basis of 160 hours per month. Amount so deducted shall be paid monthly to such depository or administrative office as the Union shall designate. In addition to the dates calculated on the number of hours worked referred to herein, each Employee who is a member of the Union shall pay monthly base dues as the Union shall establish.

4.7.    **Delinquency:** Should an Employer become delinquent in contributions to the Fringe Benefit Funds:

A.    The Fund Trustees will notify the Employer, Employees and the Union in writing of the delinquency;

B.    If the Employer does not pay all delinquencies when notified, the Union Employees shall contact their Union Business Representatives immediately so that the Union can properly direct the Employees on what action shall be necessary to expedite payment and avoid loss of insurance and other benefits.

C.    Whenever contributions are not received in the Fund office on or before the first day (1st) of the second month following the month during which hours were worked requiring such contributions, the Employer shall pay two percent (2%) of the delinquent amount as liquidated damages.

D.    Whenever contributions are not received in the Fund office by the first (1st) day of the third month following the month during which hours were worked requiring such contributions, the Employer shall pay an additional five percent (5%) of the delinquent amount as liquidated damages.

Also, the attorney will automatically commence legal process for collection of any monies not paid by the first day of the fourth month sixty (60) days late.

E.    Any delinquency outstanding for more than three months shall be subject to additional liquidated damages of one percent (1%) per month, not to exceed 20% total.

F.    Interest shall also accrue on any contributions delinquent more than two months, at the rate of twelve percent (12%) per annum.

Also, the attorney will automatically commence legal process for collection of any monies not paid by the first day of the fourth month sixty (60) days late).

Copies of the Collective Bargaining Agreement and all renewal or extension agreement will be furnished promptly to the Pension Fund office.

4.8.    **Audit.** Each Employer hereby agrees to provide for inspection and audit upon request duly authorized by the Trustee of any of the Joint Funds, such books and records as may be necessary to determine whether the Employee is making all payments and contributions required by this Agreement.  In the event that the audit shall reveal a deficiency in the Employer's payments and contributions, the cost of the audit shall be borne by the Employer, but in no case shall the Employer's cost exceed the amount of the deficiency.  If the Employer's records are so incomplete to render it impossible to complete an audit, the Fringe Benefit Funds shall have the right to estimate the amount of contributions due and the burden of proof shall shift to the Employer to prove the exact amount of such contributions that were actually due.

4.9.    **Contributions.** The Employer shall, on or before the fifteenth (15th) day of each month, make the fringe benefit contributions required hereunder to the respective Trust Funds accompanied by such reports as the Trustees may designate.  The Employers specifically understands that, in addition to all of the other terms and conditions contained herein, the Agreement and Declaration of Trust establishing each of the Fringe Benefit Funds empowers the Trustees to require the Employer to post cash as a security deposit in an amount set by the Trustees in a specified circumstance and to impose liquidated damages for failure of any Employer to make the required contributions in the proper amount when due.  The Employer and the Union have determined that the following provides a reasonable forecast of just compensation for the harm caused to the Fund by late contributions.

### ARTICLE V
### WORK OUTSIDE OF UNION JURISDICTION

5.1.    TRAVELING CONTRACTORS.  When the Employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by a standard collective bargaining agreement of another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the standard Agreement in effect in the jobsite area with respect

52

to all Employees, wherever hired, who perform such work, except as provided in the next sentence of this paragraph. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article IV of this Agreement but in no case less than the established minimum wage scale of the Local Agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite Local Agreement. The Employer shall in all other matters be governed by the provisions established in the jobsite Local Agreement. If Employees are sent to work on a project in an area where there is no Local Agreement covering the work specified in Article I of this Agreement, the full terms and conditions of this Agreement shall apply.

### ARTICLE VI
### LEGALITY OF AGREEMENT

It is further agreed by and between the parties hereto, that if any Federal or State Court shall at any time decide that any clause or clauses of this Agreement is or are void or illegal, such clause or clauses shall be stricken out and the remaining portion of this Agreement shall be considered binding between the parties hereto.

### ARTICLE VII
### INDUSTRY STANDARDS

7.1.    Industry Standards.

A.    Certain conditions now prevailing in the ceramic tile, marble and terrazzo industries are beneficial to the growth of the industry and to maintaining high production and wage standards, with optimum quality of product. Also certain other conditions not now prevailing would likewise be beneficial and the parties hereto pledge to strive to achieve their realization. These conditions are deemed by the parties to be necessary for the maintenance and growth of the ceramic tile, marble and terrazzo industries and are, therefore, made a part of this Agreement.

B.    There shall be a standard and uniform written labor agreement embodying the terms and conditions of employment of the crafts covered herein by all members of the Associations. The Union recognized the Associations as the exclusive bargaining agent for their respective members within the geographic jurisdiction of the Union.

53

## ARTICLE VIII
## GRIEVANCE AND ARBITRATION

8.1.   Grievance and Arbitration.

A.   Should differences of any kind arise between any signatory contractor and the Union as to the interpretation, application or claimed breach of any of the terms of this Agreement, all such differences shall be submitted to the grievance procedure herein provided.

B.   Should any grievance arise, the same shall be taken up within five (5) days of the event giving rise to the grievance between the Business Manager at BAC Local 32 or his designated representative and the President of the appropriate Association or his designated representative.

C.   If any grievance is not settled as provided above, then either the Union or the Association may, within two regular working days, in writing submit the grievance to the Joint Arbitration Board herein provided for.

D.   The Joint Arbitration Board shall consist of three representatives from the appropriate Association and three representatives selected by the Union. Four members of the Board shall constitute a quorum and must be present at all hearings. Both sides shall always have equal voting strength.

E.   The duty of the Joint Arbitration Board shall be to hear all grievances submitted to the Committee within 48 hours of the submission. Decisions of the Joint Arbitration Board shall be reached by a majority vote of the entire committee. The decision of the Joint Arbitration Board shall be final and binding on the Association, the Employer, the Union and the Employee or Employees involved. In the event that the representatives are unable to reach a settlement, the dispute shall be submitted to an impartial third party agreed upon by the appropriate Association and Union Representatives for a final and binding decision.

## ARTICLE IX
## IMPERFECT WORK

9.1.   Imperfect Work.

A.   Tile Layers, Tile Finishers, Marble Masons, Marble Finishers, Terrazzo Workers and Terrazzo Finishers shall be held responsible for all imperfect work pertaining to their respective crafts. The Employer shall notify the Business Agent of Local No. 32 while the job is still in progress and not later than one week after the completion of the job of any claims to imperfect work.

B.   If the Joint Arbitration Board finds the complaint justified, they shall order the Employee involved to repair his work on his own time without delay.

## ARTICLE X
## RIGHTS OF PARTIES

10.1.   Rights of Parties.

A.   It is mutually agreed and understood that the Union will not enter any agreements, oral or written, with any Employer who is not a member of any signatory Association but who is engaged in tile, marble or terrazzo work as done by members of the Association, in which the terms and conditions of such agreement are more favorable to such Employer than the terms and conditions contained in the Agreement with these Associations.

B.   In the event the Union enters into any Agreement with another Employer or Employers containing more favorable terms and/or conditions (including wage rates) than those contained herein, the Union agrees that such more favorable terms and conditions shall automatically be extended to Employers covered by this Agreement.

C.   Any Union member working as an Independent Contractor will execute a copy of this Agreement and an originally signed copy will be filed at the Fund Office. MESC and Workers Compensation account numbers will be written in at the bottom of the signature page upon execution. Each Association will provide the Union with such information with respect to its members within 30 days of execution of this Agreement.

D.   The Union will not permit its members to work for any Employer who fails to pay an amount at least equal to the Gross Wages stated in this Agreement.

10.2.   PRESERVATION OF WORK A) In order to protect and preserve, for the Employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: if and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly ( such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.
B)   All charges of violations of section A of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for handling of grievances and the final binding resolution of disputes, as provided in Article VIII of this Agreement. As a remedy for violations of this section, the Arbitrator (or Arbitration Body) provided in Article VIII is empowered, at the request of the Union, to require an Employer to (1) pay affected Employees covered by this

54

55

Agreement, including registered applicants for employment, the equivalent of wages lost by such Employees as a result of the violations, and (2) pay into the affected Joint Trust Funds established under this Agreement any delinquent contributions to such Funds which have resulted from the violations, including such interest as may be proscribed by the Trustees or by law. Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Union for violations of this section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or Articles of this Agreement.

C) If, as a result of violation of this Article, it is necessary for the Union and/or the Trustees of the Joint Trust Funds to institute court action to enforce an award rendered in accordance with Section B above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the Fund Trustees, plus costs of litigation, which have resulted from the brining of such court action.

## ARTICLE XI
## EMPLOYMENT

11.1.   Employment.

A.   If in the future, there is a National Agreement implemented with any organization representing Tile, Marble or Terrazzo and the Bricklayers, Allied Craftworkers International Union of America on Apprenticeship, it shall be incorporated herein and made an integral part of this Agreement.

B.   The Employers, when requiring additional men, may request same from the Union office. To care for emergency periods, when there are no Employees in a particular craft available, Improvers and/or Trainees respectively may be furnished by the Union during the emergency.

C.   The parties will jointly take the necessary steps to comply with all laws and ordinances to assure, within the scope of this Agreement compliance with equal opportunity, and fair employment practice laws and ordinances and agree that the employment, referral or selection of all employees shall be on the basis of qualification without regard to race, color, sex, religion, national origin or ancestry.

56

## ARTICLE XII
## TERMINATION

This Agreement shall remain in full force and effect through May 31, 2008, and shall continue thereafter unless there has been given not less than sixty (60) days and not more than eighty (80) days advance written notice by Registered or Certified Mail, by either party hereto, of the desire to modify and amend this Agreement through negotiations. In the absence of such notice, this Agreement shall renew from year to year thereafter until the aforesaid advance notice is given. This contract shall renew on the same terms and conditions as are established in the applicable trade by the area-wide negotiated contracts with the Associations and it is agreed that this Agreement shall be extended for the life of such newly negotiated contract.

## AMENDMENT
## TO THE
## B.A.C. LOCAL NO. 32
## TILE, MARBLE and TERRAZZO
## COLLECTIVE BARGAINING AGREEMENT

The parties wish to amend the B.A.C. LOCAL NO. 32 TILE, MARBLE and TERRAZZO COLLECTIVE BARGAINING AGREEMENT dated June 1, 2003, ("Agreement"), as herein provided. Article IV of this Agreement is hereby amended, effective January 1, 2004 to provide as follows: The Base Rate of all classifications, regardless of whether it is a journeyman or apprentice, shall be reduced by $1.00 per hour, with a corresponding $1.00 per hour increase in the Health and Welfare Fund contribution.

Upon execution by the parties, this Amendment shall automatically become a part of the Agreement for the term therein provided. The parties further agree that the terms of this Amendment shall apply to all Employers who are not members of the signatory Associations, but are otherwise a party to the Agreement.

Except as modified herein, the remainder of this Agreement shall remain in full force and effect.

Dated: _12/3/2003_     **B.A.C. LOCAL 32 OF MICHIGAN**

By: _____
     Business Manager

Dated: _12/3/2003_     **DETROIT CERAMIC TILE CONTRACTORS ASSOCIATION**

By: _____
     Its Authorized Representative

Dated: _12/3/2003_     **ASSOCIATION OF MARBLE CONTRACTORS AND FINISHERS**

By: _____
     Its Authorized Representative

Dated: _12/8/2003_     **GREATER DETROIT TERRAZZO CONTRACTORS ASSOCIATION**

By: _____
     Its Authorized Representative

57

**IN WITNESS AN TESTIMONY:** of the provisions and terms mutually agreed upon and specified herein, the duly authorized representatives of the parties, hereby affix their signatures.

BAC LOCAL NO. 32 OF MICHIGAN

Dated_____    By:_____
                        Business Manager

We the undersigned have read and understood the terms and conditions of the foregoing Labor Agreement and hereby agree to be bound thereto.

_____    _____
Signature          Date          Name of Company

_____    _____
M.E.S.C. NO.                      Address

_____    _____
Workers Compensation Policy NO.   City, State, Zip

_____    Principal Officers:
Federal ID NO.
                                  _____

_____    _____

_____    _____
       Phone NO.

_____    _____
       Fax NO.


INDEPENDENT AGREEMENT


58

ML 0309

**IN WITNESS AN TESTIMONY:** of the provisions and terms mutually agreed upon and specified herein, the duly authorized representatives of the parties, hereby affix their signatures.

BAC LOCAL NO. 32 OF MICHIGAN

Dated __3/1/06__     By: _____
                          Business Manager

We the undersigned have read and understood the terms and conditions of the foregoing Labor Agreement and hereby agree to be bound thereto.

_____ 3/1/06     Nationwide Flooring
Signature          Date       Name of Company

                              6203 Kirby Rd
M.E.S.C. NO. _____     Address

6987722RT                     Clinton MD 20735
Workers Compensation Policy NO.   City, State, Zip

20-2752071                    Principal Officers:
Federal ID NO.
                              Randal Linett
301-297-5100                  _____

_____             _____
        Phone NO.

301-297-7700                  _____
        Fax NO.
                              _____

INDEPENDENT AGREEMENT

58

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN FLYNN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2304 (RBW) |
| | ) | |
| EXTREME FLOORING, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## JUDGMENT

The Summons and Complaint in this action having been duly served on Defendants Extreme Flooring and Nationwide Flooring Services, Inc. on January 9, 2008 and January 2, 2008, respectively, and the time for said Defendants to appear and defend herein having expired, and Defendants not having filed an Answer, and the Clerk having entered default, and the Plaintiffs having filed a declaration of a total amount due of $3,931.00, request an Order to enforce their right to conduct an audit of Defendants' books and records in order to determine any additional amounts which may be owed for work covered by the Collective Bargaining Agreements to which Defendants are bound, and to establish that Defendants Extreme Flooring and Nationwide Flooring are alter egos jointly and severally liable for any amounts determined owed the Bricklayers & Allied Trowel Trades International Pension Fund ("IPF"), the International Masonry Institute ("IMI") and/or Local 7 Benefit Funds by Defendants, and Plaintiffs having moved for entry of judgment by default in that amount, it is hereby:

2422227

ORDERED, ADJUDGED, AND DECREED that the final judgment in favor of Plaintiffs and against Defendants is hereby granted and ordered entered as follows:

1.    That Plaintiffs John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano. H. J. Bramlett, Eugene George, Paul Songer, Charles Verlado, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent Delazzero, and Benjamin Capp, are Trustees of, and sue on behalf of, the Bricklayers & Trowel Trades International Pension Fund ("IPF"), 620 F Street N.W., 7th Floor, Washington, DC 20004, and, pursuant to a written Assignment of Claim, also sue on behalf of Scott Erath, Bruce Del Turco, Patricia Wigglesworth, Thomas Lane, James Gahn and David Olivieri, the employer and employee trustees of the Local 7 Tile Industry Welfare Fund and the Local 7 Tile Industry Annuity Fund, and Bruce Del Turco, Patrick Barrett, Thomas Lane and Frank Williams, the employer and employee trustees of the Tile Layers Local Union 52 Pension Fund (collectively, the "Local 7 Benefit Funds"), which includes the Bricklayers and Allied Craftworkers Local 7 Profit Sharing Plan, 45-34 Court Square, Long Island City, NY 11101;

2.    That Plaintiffs Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of, the International Masonry Institute ("IMI");

2

2422227

3.    That the above mentioned Plaintiffs recover from Defendants, Extreme Flooring, 5805 Auth Road, Suitland MD 20746 and Nationwide Flooring Services, Inc., 6203 Kirby Road, Clinton, MD 20735, in the amount due of $3,931.00;

4.    That Defendant Extreme Flooring shall turn over to Plaintiffs' auditor its books and records for the time period October 2004 through the present including, but not limited to, payroll records and the general ledger(s);

5.    That Defendant Nationwide Flooring shall turn over to Plaintiffs' auditor its books and records for the time period March 2006 through the present including, but not limited to, payroll records and the general ledger(s);

6.    That Defendants be directed to submit all monthly reports and contributions that may come due the Plaintiffs subsequent to the filing of this judgment;

7.    That Defendants comply with their obligations to make timely and full contributions to the IPF, IMI and/or Local 7 Benefit Funds;

8.    That Defendants Extreme Flooring and Nationwide Flooring are alter egos and jointly and severally liable for any additional amounts determined owed the IPF, IMI and/or Local 7 Benefit Funds by Defendants, which are not yet ascertainable until an audit is conducted; and

9.    That said judgment is without prejudice to the right of Plaintiffs to seek recovery of any past or future delinquencies, interest, damages and reasonable attorney's fees and costs that may be owing to the Plaintiffs from Defendants.

2422227

ORDERED, ADJUDGED AND DECREED that Plaintiffs have execution therefor.


Dated: April_____, 2008

_____
Reggie B. Walton
United States District Judge

2422227

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN FLYNN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Civil Action No. 07-2304 (RBW) |
| | ) |
| EXTREME FLOORING, et al., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## LOCAL RULE 7(K) STATEMENT

Pursuant to Local Rule 7(k), the following persons are entitled to be served with orders, judgments and stipulations:

> Ira R. Mitzner, Esq.
> Dickstein Shapiro LLP
> 1825 Eye Street, N.W.
> Washington, DC  20006-5403
> Telephone: (202) 340-2200
> Facsimile    (202) 420-2201
>
> Extreme Flooring
> 5813 Middleton Court
> Camp Springs, Maryland 20748
>
> Nationwide Flooring Services, Inc.
> 6203 Kirby Road
> Clinton, Maryland 20735

2424570

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Proposed Judgment, Motion for Entry of Default Judgment and Incorporated memorandum in Support Thereof and Local Rule 7(k) Statement were served by first class mail, postage prepaid, this 11th day of April 2008, upon:

> Extreme Flooring
> 5813 Middleton Court
> Camp Springs, Maryland 20748
>
> Nationwide Flooring Services, Inc.
> 6203 Kirby Road
> Clinton, Maryland 20735

Deborah Payne

2424555